JEREMY J. GRAY (SBN 150075)
  jgray@zuberlaw.com
MICHAEL D. RESNICK (SBN 245215)
  mresnick@zuberlaw.com
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendants,
Hashfast Technologies LLC, Hashfast LLC,
Simon Barber, and Eduardo deCastro

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual,<br><br>    Defendants. | CASE NO. 5:14-cv-00087-HRL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS HASHFAST TECHNOLOGIES LLC, HASHFAST LLC, SIMON BARBER, AND EDUARDO DECASTRO'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) AND 9(b)**<br><br>**HEARING DATE:**<br><br>Date:       April 22, 2014<br>Time:       10:00 a.m.<br>Courtroom: 2<br>                280 South 1st Street<br>                San Jose, CA 95113<br><br>*(Filed Concurrently herewith are: Notice of Motion and Motion; [Proposed] Order)* |

/ / /

/ / /

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT .................................................................. 1

II. STATEMENT OF FACTS ..................................................................... 4

    A. Bitcoin and Bitcoin "Mining". ..................................................... 4

III. THE EQUIPMENT AT ISSUE AND PLAINTIFF'S PRE-ORDER. ............. 5

    A. Delays in Shipping. ..................................................................... 7

    B. Allegations Against Barber. .......................................................... 8

    C. Allegations Against deCastro. ....................................................... 9

    D. Allegations Against HLLC-D. ....................................................... 9

IV. DISCUSSION ...................................................................................... 9

    A. Plaintiff's Second Claim for Relief for Fraud Should Be
        Dismissed Against HashFast. ....................................................... 9

        1. Plaintiff Fails To Plead That HashFast Made Fraudulent
            Statements Regarding The Delivery Date Or "In-Stock"
            Status Of The Baby Jet. ...................................................... 11

        2. Plaintiff Fails To Plead That HashFast Made Fraudulent
            Statements Regarding The Computing Power Of The Baby
            Jet Or Efficacy Of The MPP. ............................................... 14

    B. Plaintiff's Second Claim for Relief for Fraud Should Be
        Dismissed Against HLLC-D. ....................................................... 16

    C. Plaintiff's Second Claim for Relief for Fraud Should Be
        Dismissed Against Barber and deCastro. ........................................ 16

    D. Plaintiff's Claims Against Barber and deCastro for Breach of
        Contract (Claim One), Violation of Cal. Bus. & Prof. Code §§
        17200, et seq. (Claim Three), and Declaratory Relief (Claim
        Four) Should Be Dismissed. ........................................................ 18

    E. Plaintiff's Claims Against HLLC-D for Breach of Contract
        (Claim One), Violation of Cal. Bus. & Prof. Code §§ 17200, et
        seq. (Claim Three), and Declaratory Relief (Claim Four) Should
        Be Dismissed. ........................................................................... 19

V. CONCLUSION .................................................................................. 20

1975-1005 / 362029.1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcraft v. Iqbal*
    129 S.Ct. 1937, 1949 (2009) .........................................................13, 14, 15, 19

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 555, 570 (2007) .....................................................13, 14, 15, 19

*Gibbs v. SLM Corp.*
    336 F. Supp. 2d 1 (D. Mass. 2004) .......................................................... 18

*In re GlenFed, Inc. Sec. Litig.*
    42 F.3d 1541, 1547-48 .............................................................10, 11, 16

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*
    940 F.2d 397, 405 (9th Cir. 1991) ............................................................ 16

*Moore v. Brewster*
    96 F.3d 1240, 1245–46 (9th Cir.1996) ................................................9, 10

*Neubronner v. Milken*
    6 F.3d 666, 671 (9th Cir. 1993) ............................................................... 16

*Papasan v. Allain*
    478 U.S. 265, 286 (1986) ...................................................................... 13

*San Francisco Design Center Associates v. Portman Companies*
    (1995) 41 Cal.App.4th 29, 43-44 ............................................................ 13

*Service by Medallion, Inc. v. Clorox Co.*
    (1996) 44 Cal.App.4th 1807.............................................................9, 10, 11

*Smith v. Allstate Ins. Co.*
    160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ...................................... 10, 11

*Sprewell v. Golden State Warriors*
    266 F.3d 979, 988 (9th Cir. 2001) ........................................................... 13

*Warburton/Buttner v. Superior Court*
    (2002) 103 Cal. App. 4th 1170, 1187-1188 ............................................ 18

*Wilkins v. NBC*
    (1999) 71 Cal.App.4th 1066...............................................................10, 11

## STATUTES

Cal. Bus. & Prof. Code §§ 17200 ...............................................4, 18, 19, 20

Cal. Corp. Code § 17000 et seq. ..................................................................... 18

Fed. R. Civ. P. 9(b) ............................................................................passim

## TREATISES

26 Williston on Contracts § 69:11 (4th ed.) ................................................... 13

9 Witkin, Summary of Cal. Law (2002 supp.) Partnership, § 120, pp. 292-293 ...... 18

# I.     **PRELIMINARY STATEMENT**

Hashfast Technologies LLC ("HashFast") is a limited liability company formed under California law.  Its Chief Executive Officer and Chief Technology Officer, Eduardo de Castro ("deCastro") and Simon Barber ("Barber")[1], are recognized entrepreneurs and technology authorities.  HashFast manufactures computers known as "mining computers", which are specifically designed for the sole purpose of auditing transaction data on the Bitcoin network.[2]  On August 10, 2013, plaintiff Pete Morici ("Plaintiff") *pre-ordered* two (2) "Baby Jet" mining computers from HashFast.  At the time Plaintiff placed his pre-order, the Baby Jet units were expected to begin shipping in the October 20-30, 2013 timeframe, in order of purchase.

Unfortunately, HashFast was forced to push back the expected October 20-30 shipping timeframe due to technical difficulties.  The technical difficulties have since been resolved and HashFast has shipped hundreds of units to its customers.  HashFast shipped Plaintiff the machines he ordered, and also offered him a full refund of his purchase price.  Plaintiff rejected both offers and instead commenced this ill-conceived lawsuit, which purports to accuse HashFast, deCastro and Barber of fraud and other claims.

Plaintiff 's Complaint also names Hashfast LLC, a limited liability company formed under Delaware law, ("HLLC-D") which is an improper party to this action as it has no relationship with the Plaintiff, or any involvement in the development,

---

[1] Barber was previously an engineer and researcher at Palo Alto Research Center, a highly-influential technology think tank behind technologies such as Ethernet, Windows and the mouse. He also served as a technical editor of the IEEE 802.11 standard, and is recognized in the virtual currency community for a seminal paper entitled, "Bitter to Better — How to Make Bitcoin a Better Currency" (http://crypto.stanford.edu/~xb/fc12/bitcoin.pdf).

[2] As of today, HashFast offers the most powerful Application Specific Integrated Circuit semiconductor for mining Bitcoin, and is designed to make the necessary calculations at a speed 70,000 times faster than the fastest Intel CPU.

1975-1005 / 362029.1

manufacturing, and/or sales of the Baby Jet mining computers at issue in Plaintiff's Complaint. In fact, Plaintiff failed to plead *any* facts identifying HLLC-D as a party to *any* of the claims for relief alleged. Plaintiff conveniently groups HashFast and HLLC-D under the term "Hashfast", then conveniently neglects to identify which "Hashfast" sent him his order confirmation, provided notifications of delay, is the entity identified on the www.hashfast.com website to which Plaintiff directs the Court's attention, or that employed Mr. John Skrodenis. If due process requires a sufficiency of the pleadings, it certainly requires Plaintiff to show that each defendant has more connection to the allegations than merely a similar name, or even a corporate affiliation.

Furthermore, Plaintiff's Fraud claim purports to allege that the defendants made false statements regarding (1) the delivery date for the Baby Jets; (2) whether HashFast actually had any Baby Jets in stock at the time Plaintiff placed his order; and (3) the computing power of the Baby Jets and the efficacy of what is called a "Miner Protection Program ("MPP"). However, Plaintiff's purported fraud allegations amount to nothing more than attributing a statement to one or more of the defendants, and then, baldly alleging that the statement is "fraudulent" because, after-the-fact, the statement turned out to be incorrect or because the statement in some fashion confusing to Plaintiff. Plaintiff's ephemeral fraud allegations are precisely what Fed. R. Civ. P. 9(b) was designed to prevent. To make matters worse, Plaintiff's actual allegations about the circumstances of his purchase do not establish fraud, but, to the contrary, describe a company struggling mightily to launch a very sophisticated piece of technology, experiencing inevitable delays, informing its customers about the delays, and undertaking to compensate its customers by offering a "miner protection program", and refunds.

Plaintiff alleges that HashFast falsely stated that the Baby Jet units were "in stock" at the time he placed his order on August 10, 2013, yet Plaintiff admits he knew the expected delivery date was more than two months later. Furthermore,

Plaintiff's Complaint attaches an August 9, 2013 "thread" on the Bitcoin Talk community message board – a community Plaintiff participated in, and which Plaintiff cites as a source for several allegations in this Complaint – in which Barber stated that the Baby Jet's chip design was "almost complete". Accordingly, the facts as alleged by Plaintiff establish, without a doubt, that he knew his August 10, 2013 purchase was a *pre-order*.

Plaintiff's Complaint is replete with other allegations which refute the notion that defendants were engaged in fraud. Plaintiff alleges that the promised Baby Jet delivery date of mid-October 2013 was false. Yet, Plaintiff admits that on five separate occasions, HashFast provided him updates regarding the reasons for the delays in production, as well as revised expected deliver dates for his order. Plaintiff even admits that HashFast shipped him the machines he ordered after first offering him a full refund of his purchase price.

Plaintiff alleges that HashFast's representations about its "miner protection program" were false, although Plaintiff does not allege how or why they were misleading. Moreover, the very existence of the program, which was modified (in favor of purchasers) to accommodate shipping delays, contradicts the notion of fraud. The Miner Protection Program relates to the cost to a Bitcoin miner of the Baby Jet as compared to the value of the Bitcoins that are actually "mined". HashFast agreed that if a miner had not collected a sufficient quantity of Bitcoins to offset the price of the Baby Jet, within a specified time period, HashFast would give the buyer additional chips. HashFast specifically agreed to adjust the time period of this program to accommodate shipping delays. Plaintiff alleges no facts that the efficacy of the MPP was somehow inadequate.

Finally, Plaintiff alleges no facts that the published specifications for the Baby Jet's computing power are false. Instead, Plaintiff quibbles with an aspect of the Baby Jet's performance that was not listed on the specifications. Although Plaintiff suggests that he was a victim of fraud, his allegations reveal nothing more

| 1 | than a company struggling to release a revolutionary new product, and attempting to |
| 2 | protect the value of its customer's investments along the way. For these reasons, |
| 3 | Plaintiff's second claim for relief for Fraud against the defendants falls far short of |
| 4 | meeting the pleading requirements of Fed. R. Civ. P. 9(b). |
| 5 | Plaintiff's claims for Breach of Contract, Violations of Cal. Bus. & Prof. |
| 6 | Code §§ 17200, et seq., and Declaratory Relief should be also be dismissed as |
| 7 | against Barber and deCastro because these claims only allege facts as against |
| 8 | HashFast, and because Plaintiff pleads absolutely no facts to indicate the existence |
| 9 | of an alter-ego relationship between Barber and/or deCastro and HashFast. These |
| 10 | claims should also be dismissed as against HLLC-D because Plaintiff pleads |
| 11 | absolutely no facts to indicate that HLLC-D had a relationship with the Plaintiff, or |
| 12 | had any involvement in the development, manufacturing, and/or sales of the Baby |
| 13 | Jet mining computers, or that indicate the existence of an alter-ego relationship |
| 14 | between HLLC-D and HashFast. |

## II.   STATEMENT OF FACTS[3]

### A.   Bitcoin and Bitcoin "Mining".

Bitcoin is a decentralized virtual currency that enables anyone with a computer to send Bitcoin to anyone else with a computer. (Complaint ¶¶ 9 & 10.) Unlike ordinary currencies, there is no central government or bank that controls the issuance of Bitcoin or corrects price fluctuations. (*Id*. ¶¶ 9 & 14.) Instead, the management of Bitcoin transactions are carried out collectively by the network. (*Id*. ¶ 10.)

Computers are required to audit transaction data. (*Id*.) Companies and individuals purchase such computers, sometimes referred to as "Bitcoin computers", and operate them in order to be rewarded by the Bitcoin networks, which distributes

---

[3] The allegations referenced in this Statement of Facts are assumed true for purposes of this Motion to Dismiss only.

Bitcoin to these "miners" depending on the amount of work performed by their computers. (*Id.* ¶¶ 10 & 11.) HashFast manufactures such computers. (*Id.* ¶ 13.)

### III. THE EQUIPMENT AT ISSUE AND PLAINTIFF'S PRE-ORDER.

HashFast's Bitcoin mining computer is called the "Baby Jet". (*Id.* ¶¶ 17 & 19.) Plaintiff alleges that on August 5, 2013, HashFast made a public post on the "Bitcoin Talk" internet message board that it would be shipping the Baby Jet units in October 2013. (*Id.* ¶¶ 15 & 17.) Plaintiff was a participant in the Bitcoin Talk community. (*Id.* ¶ 15.) Plaintiff further alleges that on August 8, 2013, HashFast stated on Bitcoin Talk that it was launching sales of the Baby Jet units and that shipments would begin in the October 20-30, 2013 timeframe, in order of purchase. (*Id.* ¶ 17.) Plaintiff also attaches to his Complaint an August 9, 2013 "thread" on Bitcoin Talk in which Barber stated that the HashFast "team have been working non stop 18 hour days, 7 days a week since [May 2013]" and that "***[t]he chip design is almost complete***". (Complaint, Exh. F, page 7.)(*emphasis* added.)

On August 10, 2013, Plaintiff visited HashFast's website to decide whether to order a Baby Jet unit. (*Id.* ¶¶ 18 & 19.) Plaintiff alleges that at the time he viewed HashFast's website, on August 10, 2013, the Baby Jet unit was listed as being "in stock". However, Plaintiff also alleges that the website advised that shipments would not commence until two and one half (2 ½) months later, *i.e.*, on October 20-30, 2013. (*Id.* ¶ 20.) Plaintiff's Complaint is missing Exhibit C, which allegedly shows a screenshot of the HashFast website stating the Baby Jet was "in stock".

Plaintiff also alleges that the website was unavailable to process orders on August 10, 2013, and that he contacted HashFast later in the day on August 10, 2013 to place his order. (*Id.* ¶ 21.) Plaintiff alleges that in response to his request to place an order, Mr. John Skrodenis, a HashFast representative, instructed Plaintiff to place his order manually by telephone and email. (*Id.*) Mr. Skrodenis allegedly assured Plaintiff in a subsequent telephone conversation later in the day on August 10, 2013, that the Baby Jet units would be delivered by October 20-30, 2013. (*Id.* ¶ 22.)

1975-1005 / 362029.1

Plaintiff then placed an order for two (2) Baby Jet units on August 10, 2013 at a total cost of $11,507.38 USD. (*Id.* ¶ 23.) Plaintiff alleges to have paid the sum of $11,507.38 USD for two Baby Jets. (*Id.*) Plaintiff alleges he used the Bitcoin "currency" to make his purchase – at the then effective exchange rate of $104 USD to 1 Bitcoin – and Plaintiff delivered to HashFast 110.647885 Bitcoin. (*Id.* ¶ 26.) Plaintiff's order was order number "M002", which placed him in "Batch 1" of the customers who ordered the Baby Jet, meaning that he would receive the units from HashFast's first batch of production. (*Id.* ¶ 28.) According to the Complaint, although Plaintiff thought the Baby Jet units were "in stock" at the time he placed his August 10, 2013 order (*Id.* ¶ 39), Plaintiff placed his order with the expectation and understanding that his Baby Jet units would be delivered more than two (2) months later in October 2013. (*Id.* ¶ 29.)

Plaintiff alleges that three (3) days *after* he placed his order, on August 13, 2013, HashFast announced what is called a "Miner Protection Program" ("MPP"). (*Id.* ¶ 30.) The MPP was designed to, in some measure, protect a miner's investment in the HashFast mining computer. (*Id.*) Under the terms of the MPP, if a purchaser did not "break even" within ninety (90) days after receiving their Baby Jet mining computer, HashFast would supply the purchaser up to 400% more hashing power in the form of additional modules. (*Id.*) A "module" is one of HashFast's chips on a printed circuit board to be used in connection with the Baby Jet mining computer. (*Id.*) Although Plaintiff purports to accuse Defendants of fraud, he flatly admits in his Complaint that HashFast applied the MPP to his order retroactively. (*Id.*) Plaintiff further admits that "[i]n light of delays in fulfilling customer orders", HashFast ***extended the terms of the MPP*** to "give all customers similarly situated to [Plaintiff] four additional modules some time after February 1, 2014, if the customers did not break even through their mining activities." (*Id.* ¶ 32.)

As for the computing power of the Baby Jet unit, Plaintiff alleges that he

1975-1005 / 362029.1

looked at the published specifications on HashFast's website and that it stated that the Baby Jet chip is capable of processing at a speed of 400 Gh/s (400 billion hashes per second) while consuming 1 watt per Gh/s.  (*Id.* ¶ 33.)  Although Plaintiff purports to include HashFast's statements about the Baby Jet's "computing power" among the purportedly fraudulent statements (*Id.* ¶ 54), Plaintiff ***does not*** allege any facts that the published specifications are false.  (*Id.* ¶ 33.)  Instead, Plaintiff alleges that some aspect about the Baby Jet, which was not addressed in the published specifications, "wasn't clear" to him.  (*Id.*)  Specifically, Plaintiff alleges that "it wasn't clear what the power consumption was" when the Baby Jet chip was "overclocked" to 500 Gh/s (*Id.*; Complaint, Exh. B, page 3).  But Plaintiff does not even allege that this "unclear" aspect of the Baby Jet is false.  (*Id.* ¶ 33.)

## A.    Delays in Shipping.

Plaintiff alleges that on October 23, 2013, HashFast sent him an e-mail advising him that his initial order would be delayed because one of HashFast's vendors "had not supplied it with certain components necessary to produce the products in question", and that his order would not be delivered until mid-November 2013.  (*Id.* ¶¶ 39 & 40.)  Plaintiff does not allege any facts to even suggest that this explanation is false.  Plaintiff alleges that this message came as a "surprise" to him because at the time he placed his order, Plaintiff believed the Baby Jet units to be "in-stock."  (*Id.* ¶ 39.)

However, Plaintiff attaches to his Complaint comments on the Bitcoin Talk community message board by one of HashFast's founders, Barber, which were made about the time Plaintiff placed his order.  Exhibit F to Plaintiff's Complaint contains an August 9, 2013 question to Barber posted on Bitcoin Talk regarding what stage in "design/production" the Baby Jet chip was in.  (Complaint, Exh. F, page 7.)  Plaintiff quotes Barber's August 11, 2013 reply post, that the HashFast "team have been working non stop 18 hour days, 7 days a week since [May 2013]" and that "***[t]he chip design is almost complete***".  (*Id.*)(*emphasis* added.)  Plaintiff's

allegation that he was "surprised" by the delay because he thought his Baby Jets were "in stock" is belied by his admission that, as of the date of his order, he knew that HashFast had not even finished designing the chip, much less commenced fabrication and manufacturing. Plaintiff's allegation that he believed his Baby Jets were "in stock" is further undermined by his citation to an August 9, 2013 post by Barber explaining that HashFast was "still working on the power supply design" for the Baby Jet. (Complaint, Exh. B, page 3.)

On November 7, 2013, HashFast sent Plaintiff a second e-mail informing him that his order would not be shipped until mid-December 2013. (*Id*. ¶ 41.) On December 27, 2013, Plaintiff received a third e-mail from HashFast stating that they were "on track to ship orders by December 31 [2013]." (*Id*. ¶ 45.) On December 29, 2013, HashFast sent Plaintiff a fourth "follow-up" e-mail stating that they were "kicking off shipments in the next few days", but customers who were interested in refunds could initiate refunds and be paid Bitcoin calculated at the exchange rate on the date of the refund. (*Id*.) On December 31, 2013, HashFast sent Plaintiff a fifth e-mail advising that HashFast "had hoped to resolve reliability issues sooner so that [HashFast] could begin bulk production and be on track to ship Batch 1 customer orders on December 31 [2013]." (*Id*. ¶ 46.) Although Plaintiff purports to include HashFast's statements about "the delivery date" for the Baby Jet, and "whether HashFast actually had any product in stock" among the purportedly fraudulent statements (*Id*. ¶ 54), Plaintiff ***does not*** allege any facts that any of the above-referenced statements are false. (*Id*. ¶¶ 39-41, 45 & 46; Complaint, Exhs. F, page 7, B, page 3.)

### B. <u>Allegations Against Barber.</u>

Plaintiff alleges that on August 10, 2013, Barber made a public post on Bitcoin Talk that "[o]rders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC." (*Id*. ¶ 25.) Plaintiff does not allege any facts that this statement was false. (*Id*.) Finally, Plaintiff alleges that Barber was an "alter ego" of

1975-1005 / 362029.1

HashFast.  (*Id*. ¶ 4.)  Plaintiff's Complaint pleads no additional facts regarding the existence of alter-ego relationship between Barber and HashFast.  (*Id*.)

### C.     Allegations Against deCastro.

Plaintiff alleges that the domain name "hashfast.com" is registered to deCastro.  (*Id*. ¶ 18.)  Plaintiff further alleges that one (1) day after he placed his order, on August 11, 2013, deCastro made a post on Bitcoin Talk that HashFast would make its October shipping deadline, and that HashFast would "protect" its customers "against hashrate increases".  (*Id*. ¶ 37.)  Plaintiff does not allege any facts that this statement was false.  (*Id*.)  Finally, Plaintiff alleges that deCastro was an "alter ego" of HashFast.  (*Id*. ¶ 4.)  Plaintiff's Complaint pleads no additional facts regarding the existence of alter-ego relationship between deCastro and HashFast.  (*Id*.)

### D.     Allegations Against HLLC-D.

Plaintiff pleads absolutely no facts to indicate that HLLC-D had a relationship with the Plaintiff, or had any involvement in the development, manufacturing, and/or sales of the Baby Jet mining computers, or that indicate the existence of an alter-ego relationship between HLLC-D and HashFast.

## IV.   DISCUSSION

### A.     Plaintiff's Second Claim for Relief for Fraud Should Be Dismissed Against HashFast.

Plaintiff cannot sustain his Fraud claim against HashFast because he has not, and cannot, plead that HashFast knowingly made false statements regarding the Baby Jet's delivery date, its "in stock" status, the computing power of the Baby Jet, and/or efficacy of the MPP with the intent to deceive or induce reliance by Plaintiff. (*Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1816 (elements of a Fraud claim); *Moore v. Brewster,* 96 F.3d 1240, 1245–46 (9th Cir.1996) (in diversity cases such as this, where the cause of action is fraud, the substantive elements of fraud are determined by state law).)

1975-1005 / 362029.1

To sustain a Fraud claim against HashFast, Plaintiff must allege that: (1) HashFast made knowingly false representations regarding the Baby Jet's delivery date, "in stock" status, and the computing power and efficacy of the MPP; (2) HashFast made these statements with the intent to deceive or induce reliance by Plaintiff; (3) that Plaintiff justifiably relied on these statements; and (4) that Plaintiff suffered damages. (*Service by Medallion, Inc. v. Clorox Co.*, 44 Cal.App.4th 1807, 1816; *see also Wilkins v. NBC* (1999) 71 Cal.App.4th 1066; *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001).)

Moreover, these elements must be plead in accordance with Fed. R. Civ. P. 9(b). (*Moore v. Brewster,* 96 F.3d 1240, 1245.) Under Fed. R. Civ. P. 9(b), all claims of fraud must be plead "with particularity." (Fed. R. Civ. P. 9(b).) The Ninth Circuit has identified two aspects of this particularity requirement. (*See In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1547-78 (9th Cir.1994)(en banc).) First, Plaintiff's allegations must identify the time, place and content of the alleged misrepresentation so that HashFast can identify the statement. (*Id.*) Second, Plaintiff must plead facts explaining why the statements were false when HashFast allegedly made them. (*Id.* at 548.) Plaintiff must plead something more than the bare allegation that a statement was false, such as alleging the existence of information which was made by or available to HashFast, or by pointing to later statements made by HashFast along the lines of 'I knew it all along'. (*Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152-53 (internal quotations and citation omitted).) Put simply, "the plaintiff is precluded from simply pointing to a defendant's statement, noting that the content of the statement conflicts with the current state of affairs, and then concluding that the statement in question was false when made." (*Id.* at 1153.)

As discussed below, Plaintiff fails to plead elements one, two and three of his Fraud claim, *i.e.*, that HashFast made knowingly false representations regarding the Baby Jet's delivery date, "in stock" status, and the computing power and efficacy of

the MPP; that HashFast made these alleged statements with the intent to deceive or induce reliance by Plaintiff; and/or that Plaintiff justifiably relied on these alleged statements.

### 1. Plaintiff Fails To Plead That HashFast Made Fraudulent Statements Regarding The Delivery Date Or "In-Stock" Status Of The Baby Jet.

Plaintiff's Complaint alleges no facts to suggest that, at the time HashFast made the alleged statements about the delivery date, or current availability of the Baby Jet units, it knew them to be false. Scienter is an essential element of a claim for Fraud (*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546), and under California law, Plaintiff must establish *a knowingly false representation* by HashFast *made with intent to deceive or induce reliance* by Plaintiff. (*Service by Medallion, Inc.*, 44 Cal.App.4th 1807 at 1816; *see also Wilkins v. NBC*, 71 Cal.App.4th 1066; *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152.) Not only does Plaintiff fail to allege that HashFast knowingly made false statements regarding the delivery date or current availability of the Baby Jet units, but he also fails in toto to plead facts that would support a reasonable inference of such knowledge.

First, Plaintiff alleges that at the time of his August 10, 2013 order, HashFast made false statements regarding "whether HashFast actually had any product in stock". (Complaint ¶ 54.) In support of this allegation, Plaintiff alleges that "[n]othing on the product page indicated that there was any uncertainty as to the current availability of the product or HashFast's ability to ship the product in a timely fashion" (*Id*. ¶ 20), and that on October 23, 2013, he was "surprised" to learn that the Baby Jet was not yet available because he thought they were "in stock"

1975-1005 / 362029.1

when he placed his order[4]. (*Id.* ¶ 39.) However, Plaintiff's other allegations demonstrate that, at the time he placed his order, Plaintiff knew that the Baby Jet units were a pre-order item, and not yet available to consumers. Plaintiff repeatedly alleges that because Bitcoin mining computers rapidly become less valuable over time (*Id.* ¶¶ 12 & 29), the timing of the shipment of the Baby Jet units was critically important. (*Id.* ¶¶ 29 & 31.) These allegations cannot be reconciled with Plaintiff's allegation that he agreed to an October 20-30, 2013 delivery date – *71-81 days after his August 10, 2013 order*. Second, Exhibit F to Plaintiff's own Complaint contains an August 9, 2013 question to Barber posted on Bitcoin Talk – *a community Plaintiff alleges to be a participant in* (*Id.* ¶ 15) – regarding what stage in "design/production" the Baby Jet chip was in. In his reply post, Barber states that his "team have been working non stop 18 hour days, 7 days a week since [May 2013]" and that "[t]he chip design is almost complete". (Complaint, Exh. F, page 7.) Once again, Plaintiff's allegation that the Bitcoin Talk community was actively discussing the future availability of the Baby Jet on August 9, 2013, cannot be reconciled with Plaintiff's allegation that he believed the Baby Jets were "in stock" on August 10, 2013. Plaintiff's allegation that he believed his Baby Jets were "in stock" is further undermined by his citation to an August 9, 2013 post by Barber explaining that HashFast was "still working on the power supply design" for the Baby Jet. (Complaint, Exh. B, page 3.)

Second, Plaintiff alleges that at the time of his August 10, 2013 order, HashFast made false statements regarding "the delivery date for the product". (*Id.* ¶ 54.) Despite this allegation, Plaintiff also alleges that on five (5) separate occasions, HashFast provided him updates regarding the reasons for the delays in production,

---

[4] Exhibit C to Plaintiff's Complaint, which allegedly is a screenshot of the HashFast website "that was substantially similar" (Complaint ¶ 20) to what was viewed by Plaintiff at the time he placed his order on August 10, 2013, is conveniently missing from the Complaint.

as well as revised expected delivery dates.  (*Id.* ¶¶ 39, 41, 45 & 46.)  Plaintiff's own allegations demonstrate that HashFast never intended to deceive Plaintiff, and that it was at all times upfront with Plaintiff about the technical difficulties and delays associated with the launch of a new product.  Indeed, Plaintiff even alleges that HashFast shipped Plaintiff the machines he ordered after first offering him a full refund in USD.  (*Id.* ¶¶ 45 & 48.)  The facts as alleged by Plaintiff are simply inconsistent with those of a company that is attempting to commit fraud on its customers.  At best, Plaintiff has alleged that HashFast made statements as to expectations and predictions as to future results or events, which cannot support a Fraud claim.  (26 Williston on Contracts § 69:11 (4th ed.).)  "It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions." (*San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 43-44 (citation omitted).)

To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must state "enough facts to state a claim to relief that is plausible on its face."  (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).)  "The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." (*Ashcraft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556).)  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (*Id.*, at 1950.)  Mere conclusions are not sufficient to state a cause of action.  (*See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).)  Here, Plaintiff summarily alleges that HashFast made "false statements of material fact" that Plaintiff relied on.  (Complaint ¶¶ 54 & 55.)  Such "labels and conclusions, and a formulaic recitation of the elements of a cause of

action" do not meet the federal pleading standards under *Iqbal* and *Twombly,* and Fed. R. Civ. P. 9(b).  (*Ashcraft v. Iqbal*, 129 S.Ct. 1937, 1950; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555; Fed. R. Civ. P. 9(b).)  The allegation that Plaintiff would agree to wait for more than two (2) months for the delivery of a time critical piece of equipment, if he believed the equipment was "in stock", simply defies belief and fails to meet the pleading requirements enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, *Iqbal*, 129 S.Ct. 1937, and their progeny.

> **2.     Plaintiff Fails To Plead That HashFast Made Fraudulent Statements Regarding The Computing Power Of The Baby Jet Or Efficacy Of The MPP.**

Plaintiff alleges that HashFast "made false statements of material fact" regarding "the computing power of the product and the efficacy of the MPP". (Complaint ¶ 54.)  Once again, Plaintiff fails to allege that at the time HashFast made these alleged statements, HashFast knew them to be false.  In fact, Plaintiff never even alleges facts that these alleged statements were false.  For example, Plaintiff only alleges that the Baby Jet chip's published specifications are a processing speed of 400 Gh/s (400 billion hashes per second) while consuming 1 watt per Gh/s.  (*Id*. ¶ 33.)  *Plaintiff never alleges that these published specifications were false.*  Moreover, while Plaintiff alleges that "it wasn't clear what the power consumption was" when the Baby Jet chip was "overclocked" to 500 Gh/s (*Id*. ¶ 33) – meaning made to operate 100 Gh/s faster than the 400 Gh/s clock frequency specified by HashFast – Exhibit B to Plaintiff's Complaint contains an August 9, 2013 Bitcoin Talk post by Barber, in which he explained that HashFast was "still working on the power supply design.  We hope to include a supply that will allow significant overclocking with the box, but we don't want to over promise, so we are keeping our specifications conservative."  (Complaint, Exh. B, page 3.)  Therefore, not only has *Plaintiff failed to allege that the 500 Gh/s overclocking specification was false*, but Exhibit B to his complaint establishes that at the time Plaintiff placed

14

his order, HashFast publicly stated that it did yet have power consumption estimates for a 500 Gh/s overclocked unit.

Similarly, Plaintiff never once alleges that the MPP was a fraud, that the terms of the MPP were false, or that the efficacy of the MPP was somehow inadequate. On the contrary, Plaintiff alleges that HashFast's MPP program was designed to protect its customers by supplying the purchaser up to 400% more hashing power in the form of additional modules if they did not "break even" within ninety (90) days after receiving their order. (*Id*. ¶ 30.) In fact, Plaintiff alleges that "[i]n light of delays in fulfilling customer orders", HashFast extended the terms of the MPP to "give all customers similarly situated to [Plaintiff] four additional modules some time after February 1, 2014, if the customers did not break even through their mining activities." (*Id*. ¶ 32.) Therefore, the only reasonable inference from the facts as alleged by Plaintiff is that the MPP was a program established by HashFast to actually help promote the profitability of its customers' Baby Jet units, and that the MPP was extended to accommodate the aforementioned delays in shipping. Finally, Plaintiff's allegation that he relied on the MPP at the time he placed his order (*Id*. ¶¶ 54 & 55) is a sham since Plaintiff alleges that the MPP was announced by HashFast on August 13, 2013 (*Id*. ¶ 30) – three (3) days *after* Plaintiff placed his order.

Plaintiff's mere invocation of the word fraud fails to meet the requirements of Fed. R. Civ. P. 9(b) and is, in fact, contradicted by almost every other allegation in the Complaint which does nothing more than describe a company rushing to deliver products to its customers, and experiencing delays. Plaintiff's bare allegations, in combination with the remaining allegations' inherent lack of credibility, indicate that this is nothing more than a sham pleading. For these reasons, Plaintiff's second claim for relief for Fraud against HashFast clearly falls short of meeting the pleading requirements of Fed. R. Civ. P. 9(b), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, *Ashcraft v. Iqbal*, 129 S.Ct. 1937, and their progeny.

**B.**    **Plaintiff's Second Claim for Relief for Fraud Should Be Dismissed Against HLLC-D.**

For the reasons set forth above, and because Plaintiff pleads absolutely no facts to indicate that HLLC-D had a relationship with the Plaintiff, had any involvement in the development, manufacturing, and/or sales of the Baby Jet mining computers, or that indicate the existence of an alter-ego relationship between HLLC-D and HashFast, Plaintiff's claims for relief for Fraud should also be dismissed as against HLLC-D.

**C.**    **Plaintiff's Second Claim for Relief for Fraud Should Be Dismissed Against Barber and deCastro.**

To satisfy Fed. R. Civ. P. 9(b), a party alleging fraud must "detail with particularity the time, place and manner of each act of fraud, *plus the role of each defendant in each scheme*." (*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th Cir. 1991)(*emphasis*); *see also Kearns*, 567 F.3d at 1125-26.) In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (*Vess*, 317 F.3d at 1106 (internal quotations and citation omitted).) In addition, a complaint must "set forth an explanation as to why the statement or omission complained of was false and misleading." (*In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1548.) To comply with Fed. R. Civ. P. 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done nothing wrong." (*Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).)

Here, Plaintiff's second claim for relief for Fraud against Barber and deCastro completely fails to indicate which statements Barber and/or deCastro made that were allegedly false, or when the alleged statements were made. Plaintiff only alleges that "HashFast and its principals made false statements of material fact to Morici regarding its product, including (1) the delivery date for the product; (2)

16

whether HashFast actually had any product in stock; and (3) the computing power of the product and the efficacy of the MPP." (Complaint ¶ 54.) Although this claim incorporates by reference all preceding paragraphs to Plaintiff's Complaint (*Id*. ¶ 49), the entire Complaint only mentions Barber *once*, and deCastro *twice*.

Specifically as to Barber, that on August 10, 2013, Barber made a public post on "Bitcoin Talk" that "[o]rders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC." (*Id*. ¶ 25.) This allegation fails to state with particularity the circumstances constituting fraud or mistake under Fed. R. Civ. P. 9(b). Furthermore, Plaintiff never alleges that he *relied* on this alleged post in placing his order, nor was the refund issue one of the alleged four (4) "false statements of material fact" contained within Plaintiff's second claim for relief for Fraud (delivery date, whether the product was "in stock", the computing power, and the efficacy of the MPP).

Specifically as to deCastro, Plaintiff first alleges that the domain name "hashfast.com" is registered to deCastro. (*Id*. ¶ 18.) This allegation fails to state with particularity the circumstances constituting fraud or mistake under Fed. R. Civ. P. 9(b). Second, Plaintiff alleges that on or about August 11, 2013 – one day *after* Plaintiff placed his order – deCastro made a post on "Bitcoin Talk" that HashFast would make its October shipping deadline, but that if it did not, HashFast would protect its customers against hashrate increases. (*Id*. ¶ 37.) Once again, this allegation fails to state with particularity the circumstances constituting fraud or mistake under Fed. R. Civ. P. 9(b). More importantly, Plaintiff could not have relied on deCastro's alleged August 11, 2013 "Bitcoin Talk" post, as Plaintiff admits that he *placed his order one day before* on August 10, 2013. (*Id*. ¶¶ 19 & 23.)

Besides these three references to Barber and deCastro – all of which on their face fail to meet the heightened pleading requirements of pleading Fraud under Fed. R. Civ. P. 9(b) – Plaintiff's Complaint never again mentions Barber and deCastro. Accordingly, Barber and deCastro are left to guess as to which statements alleged

within Plaintiff's allegations are attributable to them, or claimed to be fraudulent. Because Plaintiff has failed to meet the heightened pleading requirements of pleading a claim for relief for Fraud against Barber and deCastro, Plaintiff's second claim for relief should be dismissed as against them.

### D. Plaintiff's Claims Against Barber and deCastro for Breach of Contract (Claim One), Violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (Claim Three), and Declaratory Relief (Claim Four) Should Be Dismissed.

Plaintiff's first, third, and fourth claims for relief for Breach of Contract, Violation of Cal. Bus. & Prof. Code § 17200, et seq., and Declaratory Relief, respectively, never once mention Barber or deCastro. In fact, for all of these claims, Plaintiff alleges facts as against HashFast only. For example, Plaintiff's first claim for relief for Breach of Contract only alleges that "HashFast's failure to deliver the product by its advertised delivery date is a material breach of the agreement." (Complaint ¶ 51.) Moreover, nowhere in Plaintiff's Complaint does he allege facts that indicate that he entered into a contract with Barber and/or deCastro. Failure to plead the elements of a Breach of Contract claim warrants a dismissal of that claim. (*Gibbs v. SLM Corp.,* 336 F. Supp. 2d 1 (D. Mass. 2004).)

Similarly, Plaintiff's third claim for relief for Violation of Cal. Bus. & Prof. Code § 17200, et seq. alleges that "[t]he acts and practices of HashFast constitute unlawful business acts and practices" (Complaint ¶ 58), and Plaintiff's fourth claim for relief for Declaratory Relief alleges that "HashFast has at several turns attempted to impose onerous terms on [Plaintiff]" (*Id.* ¶ 62). Plaintiff never alleges facts that somehow tie Barber and/or deCastro to any of these claims for relief.

Moreover, under California law, HashFast is a complete and separate entity from Barber and deCastro, as is HLLC-D. (9 Witkin, Summary of Cal. Law (2002 supp.) Partnership, § 120, pp. 292-293; Cal. Corp. Code § 17000 et seq.; *Warburton/Buttner v. Superior Court* (2002) 103 Cal. App. 4th 1170, 1187-1188.)

Other than Plaintiff's boilerplate allegation that "defendants, and each of them, were an owner, a co-owner, an agent, representative and/or alter ego of their co-defendants" (Complaint ¶ 4), Plaintiff's Complaint pleads absolutely no facts to indicate the existence of alter-ego relationship between Barber and/or deCastro and HashFast. Therefore, this Court is unable to draw a reasonable inference that Barber and deCastro are somehow liable for the alleged misconduct of HashFast. (*See Ashcraft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).) As such, Plaintiff's Complaint fails to meet the pleading requirements enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, *Ashcraft v. Iqbal*, 129 S.Ct. 1937, and their progeny.

For these reasons, the first, third, and fourth claims for relief against Barber and deCastro for Breach of Contract, Violation of Cal. Bus. & Prof. Code § 17200, et seq., and Declaratory Relief, respectively, should be dismissed.

### E. Plaintiff's Claims Against HLLC-D for Breach of Contract (Claim One), Violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (Claim Three), and Declaratory Relief (Claim Four) Should Be Dismissed.

For the reasons set forth above, and because Plaintiff pleads absolutely no facts to indicate that HLLC-D had a relationship with the Plaintiff, had any involvement in the development, manufacturing, and/or sales of the Baby Jet mining computers, or that indicate the existence of an alter-ego relationship between HLLC-D and HashFast, Plaintiff's claims for relief for Fraud should also be dismissed as against HLLC-D.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# V.   <u>CONCLUSION</u>

For the reasons discussed herein, it is clear that Plaintiff cannot amend his Complaint to plead a viable claim for Fraud against the defendants, or viable claims for Breach of Contract, Violations of Cal. Bus. & Prof. Code §§ 17200, et seq., and Declaratory Relief against Barber, deCastro, and HLLC-D.   Accordingly, these claims should be dismissed without leave to amend.

Dated:March 14, 2014                    Respectfully submitted:

                              **ZUBER LAWLER & DEL DUCA LLP**
                              JEREMY J. GRAY
                              MICHAEL D. RESNICK


                    By:   */s/ Jeremy J. Gray*
                          Attorneys for Defendants,
                          Hashfast Technologies LLC, Hashfast
                          LLC, Simon Barber, and Eduardo deCastro

1975-1005 / 362029.1

<u>**PROOF OF SERVICE**</u>

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, California 90017.

On March 14, 2014, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS HASHFAST TECHNOLOGIES LLC, HASHFAST LLC, SIMON BARBER, AND EDUARDO DECASTRO'S MOTION TO DISMISS [FRCP 12(B)(6)]** on the interested parties in this action as follows:

Venkat Palasubramani
FOCAL PLLC
800 Fifth Avenue
Suite 4100
Seattle, WA 98104
Tel: 206-529-4827
Fax: 206-260-3966
Email: venkat@focallaw.com
Attorneys for Plaintiff PETE MORICI

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 14, 2014, at Los Angeles, California.


    _/s/ Lani Martinez_____
    Lani Martinez