Venkat Balasubramani (SBN 189192)
FOCAL PLLC
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax:    (206) 260-3966
Email: venkat@focallaw.com
Attorneys for Plaintiff
PETE MORICI

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| PETE MORICI, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual,<br><br>        Defendants. | Case No. 5:14-cv-00087-EJD<br><br>**PLAINTIFF PETE MORICI'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**HEARING DATE**:<br><br>Date:         August 1, 2014<br>Time:        09:00 AM<br>Courtroom: 4, 5th Floor, San Jose<br>Before:      Hon. Edward J. Davila |

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................................1

BACKGROUND AND ALLEGATIONS......................................................................................2

DISCUSSION ..................................................................................................................................3

    A.    Defendants' Statements Regarding Timing of Delivery and Their Refund Policy Satisfy Morici's Pleading Requirements as to Fraud......................................................3

        1.    Morici alleges sufficient facts to raise an inference of scienter. ..............................5

        2.    Equivocal statements from the Bitcoin Talk Forum cannot act as disclaimers........6

        3.    The "Miner Protection Program" and vague specifications were part of the deception. ..................................................................................................................8

    B.    Morici's Claims Against deCastro and Barber Adequately Alleged Direct Participation, Consent to or Approval of the Misrepresentations....................................8

        1.    deCastro and Barber were the moving force behind the deceptions. ......................9

        2.    Morici has pled facts sufficient for vicarious liability consistent with Rule 9....... 10

        3.    deCastro and Barber can be held liable for unfair competition claims. ................. 11

    C.    Morici's Claims Against Both HashFast Entities Should Remain. ............................... 12

CONCLUSION.............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

Am. Specialty Health Group, Inc. v. Healthways, Inc.,
  No.: 11-CV-02819 BEN (KSC), 2012 U.S. Dist. LEXIS 147522 (S.D. Cal. Oct. 12, 2012) ....... 7

Auxo Med., LLC v. Ohio Nat'l Life Assur. Corp.,
  No.: 3:11cv259-DWD, 2011 U.S. Dist. LEXIS 97089 (E.D. Va. Aug. 30, 2011) ..................... 10

Chelini v. Nieri,
  32 Cal. 2d 480 (1948) ................................................................................................................ 5

Corvello v. Wells Fargo Bank, NA,
  728 F.3d 878 (9th Cir. 2013) ..................................................................................................... 8

Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.,
  189 Cal. App. 3d 1072 (1987) ................................................................................................. 13

Emery v. Visa International Service Assoc.,
  95 Cal. App. 4th 952 (2002) .................................................................................................... 11

Frances T. v. Village Green Owners Assn.,
  42 Cal. 3d 490 (1986) ................................................................................................................ 9

Glen Holly Entertainment, Inc. v. Tektronix, Inc.,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) ..................................................................................... 5

Guaranty Residential Lending, Inc. v. International Mortg. Center, Inc.,
  305 F. Supp. 2d 846 (N.D. Ill. 2004) ....................................................................................... 10

In re Glenfed Inc. Securities Litigation,
  42 F.3d 1541 (9th Cir. 1994) ..................................................................................................... 3

Lachmund v. ADM Investor Services,
  191 F.3d 777 (7th Cir. 1999) ................................................................................................... 10

Lazar v. Superior Court,
  12 Cal. 4th 631 (1996) ............................................................................................................... 5

Leyvas v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices
  Litig.), 601 F. Supp. 2d 1201 (S.D. Cal. 2009) ....................................................................... 11

Moore v. Kayport Package Exp., Inc.,
  885 F.2d 531 (9th Cir. 1989) ................................................................................................. 10

Neubronner v. Milken,
  6 F.3d 666 (9th Cir. 1993) ....................................................................................................... 3

People v. Toomey,
  157 Cal. App. 3d 1 (1984) ..................................................................................................... 12

People v. Witzerman,
  29 Cal. App. 3d 169 (1972) ................................................................................................... 12

PMC, Inc. v. Kadisha,
  78 Cal. App. 4th 1368 (2000) .................................................................................................. 9

Spahn v. Guild Industries Corp.,
  94 Cal. App. 3d 143 (1979) ..................................................................................................... 9

Walsh v. Kindred Healthcare,
  798 F. Supp. 2d 1073 (N.D. Cal. 2011) ................................................................................ 13

Wilkins v. NBC,
  71 Cal. App. 4th 1066 (1999) .................................................................................................. 3

ZooBuh, Inc. v. Better Broadcasting, LLC,
  No.: 2:11cv00516-DN (D. Utah May 31, 2013) ..................................................................... 7

# INTRODUCTION

Plaintiff Pete Morici ("*Morici*") brings claims against Simon Barber, Eduardo deCastro, and two HashFast entities (collectively, "*Defendants*") alleging that they misrepresented the availability, delivery dates and refund terms of two "Baby Jet" Bitcoin mining computers that Morici ordered from Defendants. Defendants argue, pointing to circumstances relating to Morici's order, and to statements made on an online community message board relating to Bitcoin, that Morici must have known that the machines in question would not be delivered by a date certain. Defendants also argue that they merely made statements regarding expected delivery dates that were ultimately changed for reasons beyond Defendants' control, and therefore Defendants could not have engaged in fraud. However, far from being hapless victims of circumstances beyond their control, Defendants made a series of pointed representations and provided assurances—regarding Defendants' ability to timely deliver the machines—that they knew were implausible. Morici need only allege what particular statements were made and sufficient facts to provide an inference of scienter. This included the facts that Baby Jet machines were listed on the HashFast website as "in stock" at the time of the order, that Morici's machines would be shipped by a certain date, and that Morici would be refunded (if requested) the Bitcoin used to purchase the machines. Indeed, cognizant of the importance of delivery dates and in response to customer outcry, Defendants made subsequent assurances. Defendants failed to honor any of these commitments, and belatedly delivered a product to Morici after he engaged legal counsel to pursue his rights and validly revoked his order. While further discovery will bear out what exactly Defendants knew and what they intended to do, Morici certainly alleges sufficient facts to raise a plausible scenario of fraud on the part of Defendants.

Separately, Defendants also argue that the principals of both HashFast entities, Simon Barber and Eduardo deCastro, and the Delaware HashFast entity cannot be held legally responsible for Defendants' misleading practices. Again, Morici adequately alleges that both principals were deeply involved in encouraging the customers, including Morici, to purchase the

Baby Jets. The website where Morici viewed the product and its specifications (and which listed Baby Jets as "in stock") was made available via a domain name that was registered to deCastro personally. Both Barber and deCastro were active participants in an online Bitcoin forum where they repeatedly encouraged customers and provided assurances regarding Defendants' ability to timely deliver. Given their material participation, and their status as founders and executives of both HashFast entities, they cannot now wash their hands of the wrongdoing. They can be held liable both for the misleading statements of the HashFast entities as well as the related unfair business practices. As to the issue of whether both HashFast entities should remain as defendants, the precise relationship between the two entities is unclear, but as Morici has alleged, the two entities have an alter-ego relationship. They have the same name, brand, principal offices in California, and share founders and executives (*i.e.*, Mr. deCastro and Mr. Barber). That Morici did not specify which particular HashFast entity he was dealing with is understandable—the identity of the entity in question was never made specific to him.

For the reasons set forth herein, the Court should deny Defendants' motion to dismiss. In the event the Court grants Defendants' motion in whole or in part, Morici respectfully requests leave to amend his claims to remedy any deficiencies. Defendants do not and indeed cannot argue that Morici's claims fail as a matter of law.

## BACKGROUND AND ALLEGATIONS

Morici alleges that he was misled into purchasing Bitcoin mining equipment from Defendants. Of critical importance to someone in Morici's position, he alleges that he was deceived as to a key aspect of the transaction: the timing of delivery. (*See* Complaint ¶¶ 17, 20 & 22.) From Morici's vantage point, he placed an order, after being assured that he would be given delivery of the product within a certain period of time, and subsequently received a series of emails dragging out the delivery dates. (Id. ¶¶ 39, 40 & 41.) Eventually, growing tired of Defendants' stringing him along, Morici cancelled his order and requested a refund. (Id. ¶ 43.) As per the terms of Defendants' promise and Morici's understanding, he simply requested return of the Bitcoin that he had paid. (Id.) According to Morici's allegations, not only was he

refused the refund as promised, Defendants attempted to impose an additional condition on him in order to obtain a refund—acceptance and signature of a waiver and release form. (Id. ¶ 47.) Ultimately, despite his cancellation, Defendants belatedly shipped him a product which Morici did not accept. (Id. ¶ 48.)

Morici brings claims for breach of contract, fraud, unfair business practices under Cal. Bus. and Prof. Code §17200, *et seq.*, and declaratory relief. Defendants filed a motion to dismiss, seeking dismissal of the fraud claim in its entirety. Three of the defendants also requested dismissal of the fraud, breach of contract, declaratory relief, and unfair business practices claim, arguing that they were not the proper defendants. Morici clarifies that he is not bringing claims for breach of contract or for declaratory relief against the individual defendants (Barber and deCastro). However, as to the remaining claims, his allegations are sufficient, and dismissal is not appropriate at the pleading stage.

## DISCUSSION

**A.     Defendants' Statements Regarding Timing of Delivery and Their Refund Policy Satisfy Morici's Pleading Requirements as to Fraud**

Under California law, fraud consists of: (1) a representation; (2) that is known to be false; (3) made with the intent to defraud; (4) that induces reliance; and (5) causes damage. Wilkins v. NBC, 71 Cal. App. 4th 1066, 1081 (1999). In federal court, a claim for fraud must meet the heightened pleading requirements of Rule 9 (*i.e.*, allege the "who, what when, where" of the statements); however, a plaintiff is not required to allege the facts giving rise to an inference of scienter with particularity. In re Glenfed Inc. Securities Litigation, 42 F.3d 1541, 1550 (9th Cir. 1994). Rule 9(b)'s pleading requirements are relaxed when it comes to matters "particularly within the opposing party's knowledge." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). Indeed, a plaintiff "cannot be expected to have personal knowledge" regarding an opposing party's state of mind. Id.

Morici satisfies the pleading standard with respect to his fraud claim. Morici alleges that Defendants misled him regarding the availability of Baby Jet machines and the timing of the

shipments. Specifically, Morici points to the following statements: (1) Defendants stated that shipments would begin in late October and stated multiple times that delivery would occur in a timely fashion; (2) the HashFast website stated that Baby Jet machines were "in stock" when they were not (to add an air of veracity, the HashFast website included an actual number that it purportedly had in stock: "503");[1] and (3) in response to a specific question as to whether someone would get "the same amount of BTC back," Mr. Barber stated that refunds, if warranted, would be provided in Bitcoin.[2] (Complaint ¶¶ 17, 20 & 25.) All of these statements were made online, via the HashFast website or the Bitcoin Talk forum, and Morici specifies the date and speaker for the statements, as well as provides the links in question. Defendants cannot credibly argue that Morici's allegations fail to satisfy the "who, what, when and where" requirement imposed by Rule 9(b).

Defendants argue in summary fashion that Morici fails to allege reliance, but to find that Morici failed to adequately allege reliance would be to ignore the crux of the entire transaction and Morici's Complaint. Morici has alleged that the timing of receipt of mining Bitcoin mining equipment is crucially important (Complaint ¶ 11); that a Bitcoin mining machine continually becomes less valuable over time (Id. ¶ 12); that he decided to purchase a HashFast Bitcoin mining machine, in part, because of the product specification and delivery date representations made by Defendants (Id. ¶ 19); and that in choosing to purchase a Baby Jet he "relied on HashFast's representations and warranties on the Site, including HashFast's claim that it had units of the Baby Jet 'in stock' and that shipments would begin 'October 20-30.'" (Id. ¶ 20.) These statements unambiguously allege reliance. The key issue thus is whether Morici

---

[1] Defendants claim that Exhibit C is "conveniently missing" from the Complaint. (Motion, p. 14, fn.4.) However, the PACER online docket reflects this Exhibit as available online. *See* Dkt. 1-3.

[2] Defendants argue as to the refund allegation that it is somehow legally deficient because it is not included among the list of false statements that are cited in paragraphs 53 through 56 of the Complaint. Defendants cite no authority for such a restrictive reading of a plaintiff's complaint; nor is there any. To the contrary, the offer of a full refund of the actual amount of Bitcoin paid was a representation made by Defendants that encouraged customers, like Morici, to order the product, even though credit card processing was not available. Moreover, Morici has alleged that the refund offered by Defendants was not a full refund in Bitcoin as promised, and that in order to obtain *any* refund, Morici would have to satisfy additional conditions that had never before been disclosed, including a release of claims. (Complaint ¶ 63.) These allegations are sufficient to state a fraud claim based on Defendants' refund policy.

adequately alleges that the statements in question were fraudulent.

  1.   *Morici alleges sufficient facts to raise an inference of scienter.*

Defendants argue that Morici cannot state a claim because his allegations go to "predictions as to future results or events, which cannot support a fraud claim." (Motion, p.13.) According to Defendants, it is "hornbook law" that "statements regarding future events are merely deemed opinions." Id. This is incorrect. Numerous cases recognize that a defendant who enters into a contract, or makes a promise, without any intention of performing can be held liable for fraud. Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."). Indeed, even a statement regarding a date-certain for performance or delivery can support a fraud claim, to the extent the promisor has doubts about his or her ability to perform. Chelini v. Nieri, 32 Cal. 2d 480, 487 (1948) ("tort of deceit" adequately pled where plaintiff alleges defendant induced plaintiff to enter into an agreement that defendant knew he could not perform). That is precisely what Morici alleges occurred here. Rule 9's particularly requirement also requires some allegation as to why the statements in question were fraudulent. A plaintiff may not rely on neutral facts or simply allege that "things turned out differently." Rather, the plaintiff must make some allegations that give rise to an inference of scienter. Glen Holly Entertainment, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1084 (C.D. Cal. 1999). Morici satisfies this standard also.

First, the statements cited by Defendants for the proposition that Morici and others could not have believed that HashFast would have Baby Jets in stock, and would adhere to the promised delivery deadline, equally support the contrary inference: that Defendants knew there were no machines in stock, and knew or had doubts regarding their ability to meet their delivery schedule, but they nevertheless provided assurances to customers regarding availability and delivery. While Defendants repeatedly characterize Morici's attempt to purchase the machines as a "pre-order," there is no dispute that the timing of delivery was critically important and that

Defendants made specific statements regarding the timing. Second, Defendants argue that their repeated updates to customers demonstrate that they were being open and transparent with their customers. Again, this fact equally supports a contrary inference—*i.e.*, Defendants were stringing along their customers. Defendants' argument that they shipped the machine to Morici is also of no consequence. Not only did the shipment come too little too late, and after Morici validly exercised his right to revoke the order, Morici had no assurance that the shipment was even conforming. In fact, the available information indicates to the contrary.

Defendants further argue that the context of the transaction undermines Morici's claim of fraud, but this too supports Morici's version of events. Given that the community and Defendants all knew of the time-sensitive nature of the delivery of the machines, representations regarding availability of the machines and their delivery dates, along with follow-up assurances, only served to mislead unwitting prospective customers. It is particularly telling that HashFast executives acknowledged doubts from customers and reassured the community that shipments would be timely. They were so sure of this that they made a guarantee that everyone would be made whole. If, as Defendants now argue, the timeliness of the shipments was in question the entire time, neither the HashFast entities nor their executives gave the slightest hint of any doubts or contingencies.

   2. *Equivocal statements from the Bitcoin Talk Forum cannot act as disclaimers.*

Defendants point to stray statements on the Bitcoin Talk forum, and argue that these statements somehow undermine or mitigate Defendants' misleading statements regarding the delivery date. For example, Defendants point to two forum posts by Simon Barber, one stating that "the chip design [for the Baby Jet] was almost complete," and another stating that HashFast was "still working on the power supply design." (Motion, p. 12.) According to Defendants, these statements somehow neutralize the fraudulent statements regarding delivery dates. However, "[d]isclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." Am. Specialty Health Group, Inc. v. Healthways,

1  Inc., No.: 11-CV-02819 BEN (KSC), 2012 U.S. Dist. LEXIS 147522, *15 (S.D. Cal. Oct. 12,
2  2012) (quoting Removatron Int'l Corp. v. F.T.C., 884 F.2d 1489, 1497 (1st Cir. 1989)).
3  Defendants do not argue, and Morici does not concede, that the statements satisfy the
4  prominence requirement. Indeed, one of the statements is not a part of the Exhibit attached to
5  the Complaint; it is a part of a different posting that is not cited in or attached to the Complaint.
6  (*Compare* Motion, p. 12 ("Plaintiff's allegation . . . is further undermined by his citation to an
7  August 9, 2013 post by Barber explaining that HashFast was "still working on the power supply
8  design . . .") *with* Ex. B (Dkt.1-2) (consisting of one page and referencing an August 8, 2013
9  post.) Surely, Defendants cannot argue that Morici should be charged with knowledge of all
10 posts on the Bitcoin Talk message board, and there is no authority for such a far-reaching
11 proposition. Am. Specialty Health Group, Inc. v. Healthways, Inc., 2012 U.S. Dist. LEXIS
12 147522 at 15 (website disclaimer insufficient to neutralize misleading statement in online
13 directory); ZooBuh, Inc. v. Better Broadcasting, LLC, No.: 2:11cv00516-DN (D. Utah May 31,
14 2013) (remotely hosted images can't provide clear and conspicuous disclosure in email).

15       But there is a more fundamental problem with the statements cited to by Defendants,
16 even if they were communicated to Morici: they are not "unambiguous." Barber's post about the
17 chip design being "almost complete" also includes a statement that they are "confident [they]
18 can deliver," and also acknowledges the "importance of schedule." Even assuming Morici was
19 made aware of the August 9, 2013 statement by Barber advising that Defendants were "working
20 on the power supply design," this statement is similarly insufficient to neutralize the numerous
21 assurances provided by Defendants that they were "confident [they] can deliver," "on track,"
22 and that they "understand the importance of schedule."

23       In summary, the statements cited by Defendants for the proposition that it was
24 unreasonable for Morici to believe that delivery would occur in October were neither
25 "prominent" nor "unambiguous," and cannot operate as disclaimers that negate HashFast's
26 numerous prior and subsequent representations. At a minimum, the statements cited to by
27 Defendants raise issues of fact that are not properly addressed on a motion to dismiss. Corvello

PLAINTIFF PETE MORICI'S OPP.                                    Case No.: 5:14-cv-00087-EJD
TO DEFS.' MOT. TO DISMISS - 7

v. Wells Fargo Bank, NA, 728 F.3d 878, 885 (9th Cir. 2013) (factual dispute inappropriate for resolution at motion to dismiss stage).

> 3. *The "Miner Protection Program" and vague specifications were part of the deception.*

Finally, Defendants point to the Miner Protection Program and the specifications for the machines and argue that there is nothing misleading about these. Morici is not necessarily bringing a standalone fraud claim based on statements relating to the Miner Protection Program or the specifications.[3] Rather, these allegations go towards supporting Morici's argument that Defendants took steps to mislead consumers in order to obtain orders. Both the processing power of the machines in question and supposed steps Defendants would take to protect customers against the relative decrease in processing power that would be occasioned by a delay in shipment were closely related to the delivery date. Again, both of these merely underscore the critical importance of timing with respect to the shipment and highlight the fact that the HashFast entities understood and took steps to provide assurances to their customers regarding this. Indeed, Morici's allegations point in the direction that Defendants made misleading statements regarding the timing of delivery and whether it would make economic and financial sense for customers to order machines from them, all to generate funds from sales without any intention to deliver on a timely basis. To make matters worse, Defendants refused to refund the Bitcoin as promised, and took advantage of the rise in value in Bitcoin.

**B.   Morici's Claims Against deCastro and Barber Adequately Alleged Direct Participation, Consent to or Approval of the Misrepresentations**

The individual defendants, deCastro and Barber, attempt to distance themselves from the wrongful acts alleged in the Complaint, arguing that the entire Complaint "only mentions Barber Once, and deCastro twice." (Motion, p. 17.) As an initial matter, Morici alleges that both deCastro and Barber themselves made false or misleading representations on the Bitcoin Talk

---

[3] The Complaint at paragraph 54 inadvertently includes statements regarding "the computing power . . . and the efficacy of the MPP" in the list of misleading statements instead of statements regarding Defendants' refund policy.

forum which are consistent with those alleged to be made by HashFast. (Complaint ¶¶ 25 & 37.) There should be no dispute as to whether deCastro and Barber can be held liable for these statements. Moreover, given their participation in the overall scheme, they can be equally held liable for the misleading acts of each other and of the entities.

       1.      *deCastro and Barber were the moving force behind the deceptions*.

Contrary to deCastro and Barber's assertions, a corporate director or officer's "participation in tortious conduct may be shown not solely by direct action but also by knowing consent to or approval of unlawful acts." PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1380 (2000). Indeed, as the California Supreme Court has held, a corporate officer or director can be held liable in her personal capacity where they "authorized, directed or participated in the allegedly tortious conduct" or where "although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm." Frances T. v. Village Green Owners Assn., 42 Cal. 3d 490, 508 (1986). Some courts state that the appropriate standard is whether "an ordinary prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances." PMC, Inc. v. Kadisha, 78 Cal. App. 4th at 1380. In Spahn v. Guild Industries Corp., the Court of Appeal held officers and directors of a corporation were personally liable for fraud committed by a managerial employee because they "knew about and allowed the tortious conduct to occur." Spahn v. Guild Industries Corp., 94 Cal. App. 3d 143, 157 (1979).

Morici's allegations easily satisfy the above standards. First, Morici alleges that both deCastro and Barber are founders and officers of HashFast. (Complaint ¶ 3.) Second, Morici alleges that both deCastro and Barber were active participants in the Bitcoin Talk forum, including on the very message strings that contained false or misleading statements made by other HashFast officers. (Complaint ¶¶ 17 & 25 (both referencing message string #262052).) Morici's allegations support the inference that deCastro and Barber were aware of statements made by other HashFast officers and did nothing about them.

2.   *Morici has pled facts sufficient for vicarious liability consistent with Rule 9.*

Defendants cite to Rule 9(b) cases and argue that a plaintiff must allege with particularity "the role of each defendant in each scheme." (Motion, p. 16.) However, this overstates Rule 9(b)'s requirements for alleging derivative liability. As set forth above, California law only requires an allegation of "knowing consent to or approval of" the acts in question. The federal pleading rules do not impose a more stringent requirement. In the context of a fraud suit involving multiple defendants, a plaintiff must only "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 541 (9th Cir. 1989). As articulated by the Seventh Circuit in Lachmund v. ADM Investor Services, the purpose of Rule 9(b) is: "to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." Lachmund v. ADM Investor Services, 191 F.3d 777, 783 (7th Cir. 1999). In light of Rule 9(b)'s purpose, the Seventh Circuit held in Lachmund that an agency relationship establishing vicarious liability for fraud generally does <u>not</u> have to be pleaded with particularity. *See also* Auxo Med., LLC v. Ohio Nat'l Life Assur. Corp., No.: 3:11cv259-DWD, 2011 U.S. Dist. LEXIS 97089, *10 (E.D. Va. Aug. 30, 2011) ("it seems that the Defendant wants to impose Rule 9's particularity requirements on the Plaintiff's allegations of agency and vicarious liability. There is no authority for such a proposition, and the Court will not fashion such a pleading requirement absent controlling authority on the issue"); Guaranty Residential Lending, Inc. v. International Mortg. Center, Inc., 305 F. Supp. 2d 846, 853 (N.D. Ill. 2004) ("An agency relationship establishing vicarious liability for fraud generally does not have to be pleaded with particularity."). Morici adequately alleges the roles of Barber and deCastro in the overall scheme: both were founders, owners, and officers of the HashFast entities, and were involved in the misleading representations around the sales of HashFast products by making statements on the HashFast website and the message boards. It is fair to presume that as founders, executives,

PLAINTIFF PETE MORICI'S OPP.                                              Case No.: 5:14-cv-00087-EJD
TO DEFS.' MOT. TO DISMISS - 10

and officers who made extensive marketing statements regarding the availability of the product (and whose statements were consistent with the statements of the entity), Barber and deCastro exerted control over the representations in question. This is sufficient under Rule 9 standards.

### 3. *deCastro and Barber can be held liable for unfair competition claims.*

The individual defendants also argue that they cannot be held liable for the misleading practices claims under Cal. Bus. & Prof. Code § 17200, *et seq.*, because they were not alleged to have made any of the statements. However, Morici's claims under § 17200 are premised on the unfair practice of selling a product while making misleading claims about the availability of the product. Morici adequately alleges that the individual defendants participated and exercised control over the practices in question. Indeed, both individual defendants made numerous public statements relating to the availability of the product and the terms of the transaction and one of the individual defendants had the domain name through which the product was advertised in his name individually. This widespread involvement and control is sufficient to state a claim against them under § 17200. Leyvas v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.), 601 F. Supp. 2d 1201, 1220 (S.D. Cal. 2009) (rejecting defendants' argument that they could not be held liable because "the misrepresentations and nondisclosures, were made by the individual brokers" and noting that defendants' argument "ignores the gist of plaintiffs' claims").

The scope of liability based on participation and control is illustrated by several California cases. In Emery v .Visa International Service Assoc., plaintiff tried to hold Visa liable for the sales of overseas lottery tickets in California. The court granted Visa's request for summary judgment noting that there was insufficient evidence of participation by Visa, and merely lending its logo and having knowledge of the acts were not sufficient. Emery v .Visa International Service Assoc., 95 Cal. App. 4th 952, 956-7 (2002). In contrast, in People v. Witzerman the court found that partners in a sales agency could be held liable for engaging in misleading business practices because they actively participated in the sale of "cattle care contracts" based on misrepresentations. People v. Witzerman, 29 Cal. App. 3d 169, 180-181

(1972). Similarly, in People v. Toomey, Toomey, the president of Holiday Funshine, was personally responsible for the sales of discount coupon books by the company's employees and distributors. People v. Toomey, 157 Cal. App. 3d 1, 22 (1984). While Toomey's position as president alone was not a sufficient basis for personal liability, the court imposed liability because Toomey controlled the company practices at issue:

> He orchestrated all aspects of the business. Overwhelming evidence shows that he prepared the solicitation scripts, determined the content of coupon packages to be sold, and directed the refund policy which the company followed.

Id. As to the acts of the distributors, the court said Toomey was the "moving force" behind the coupon sales program and a joint participant. Id. at 15-16.

Morici's allegations against the individual defendants are similar to those held sufficient to form the basis of individual liability in Witzerman and Toomey. Morici alleges that deCastro and Barber exercised control over and were the "moving force" behind the misleading practices. Morici has alleged that both actively promoted HashFast products in the online community and made statements consistent with those alleged by Morici to be misleading. Additionally, Morici has alleged that deCastro owned the domain name (hashfast.com) associated with the HashFast website (and on which misleading statements were alleged to have been published). At the pleading stage, these allegations easily suffice to state claims against deCastro and Barber in their individual capacities.

C. **Morici's Claims Against Both HashFast Entities Should Remain**

Morici's Complaint adequately alleges claims against both HashFast entities. For convenience, the Complaint defines "HashFast" to include both HashFast Technologies LLC and HashFast LLC. (Complaint ¶ 1.) The Complaint then goes on to provide allegations against "HashFast." In doing so, Morici has provided Defendants with adequate notice that the allegations of the Complaint are made against both HashFast entities. Defendants' assertion that Morici "pleads absolutely no facts to indicate that [the Delaware entity] had a relationship with Plaintiff," or any "involvement in the development, manufacturing, and/or sales of the Baby Jet mining computers" is incorrect.

Furthermore, Morici may also proceed under an alter-ego theory. Under California law as applied in federal court, a plaintiff must meet two requirements to establish alter ego. The plaintiff must show "(1) that there is such a unity of interest and ownership that the separate personalities [of the two entities] no longer exist, and (2) that failure to disregard [their separate identities] would result in fraud or injustice." Walsh v. Kindred Healthcare, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011). Factors that counsel in favor of invoking the alter ego doctrine include common ownership, common employees and use of the same offices. Id.; *see also* Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co., 189 Cal. App. 3d 1072 (1987). In Downey Savings, the court pierced the corporate veil as to a parent company, finding that the parent company owned 100% of an offending subsidiary, it shared office space and policy manuals with the subsidiary, both entities employed common personnel, and the parent company had a consolidated financial statement with its subsidiary. Id. at 1100. Here, Morici has alleged common ownership of the two HashFast entities; that deCastro and Barber are founders and executive officers of both entities; that both entities share the same name and brand; and that both entities have their principal offices at the same location in California. (Complaint ¶¶ 2 & 3.) The fact that the exact nature of the relationship between the two HashFast entities is unknown to Morici, so that Morici is unable to identify with particularity which HashFast entity he was actually dealing with at any one time, should not be held against Morici. Dismissing Morici's claim against either entity, HashFast LLC or HashFast Technologies LLC, would result in an injustice to Morici.

## CONCLUSION

Morici's allegations—which specify the "who, what, when, and where" of the misleading statements—more than satisfy the pleading requirements for fraud. Morici adequately alleges what makes them fraudulent, and the allegations are sufficient to put defendants on notice and defend against them. As to the individual defendants, not only did they make misleading statements and assurances regarding the delivery date and refund terms, Morici alleges that they were deeply involved and exerted control over the statements and

transaction in question. Thus they can be held liable for fraud and for the claims under § 17200. Finally, both HashFast entities should remain in the lawsuit. While it is not clear which particular entity Morici dealt with, that fact merely supports the inference that Defendants did not make specific distinctions between the entities in question. At the pleading stage, Morici makes adequate allegations as to both entities. The Court should decline to grant Defendants' motion to dismiss. However, to the extent it decides to grant Defendants' motion, Morici respectfully requests leave to amend his Complaint to remedy any deficiencies.

Dated: March 28, 2014

Respectfully submitted,

FOCAL PLLC

By: *s/Venkat Balasubramani*
Venkat Balasubramani, SBN 189192

Attorneys for Plaintiff
PETE MORICI

## CERTIFICATE OF SERVICE

I certify that on March 28th, 2014, I filed the foregoing **PLAINTIFF PETE MORICI'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** using the Court's CM/ECF system which will send notification of such filing to all counsel of record.

DATED: March 28, 2014.

                                          *s/ Venkat Balasubramani*
                                          Venkat Balasubramani, SBN 189192