Venkat Balasubramani (SBN 189192)
**Focal PLLC**
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax: (206) 260-3966
*venkat@focallaw.com*
Attorneys for Plaintiff
PETE MORICI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual,<br><br>               Plaintiff,<br>v.<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual,<br><br>               Defendants. | Case No. 5:14-cv-00087-EJD<br><br>**PETE MORICI'S NOTICE OF MOTION, MOTION FOR RELIEF FROM STAY WITH RESPECT TO SIMON BARBER AND EDUARDO deCASTRO, and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>**HEARING DATE**:<br><br>Date:         October 10, 2014<br>Time:        09:00 AM<br>Courtroom:  4, 5th Floor, San Jose<br>Before:      Hon. Edward J. Davila |

**TO DEFENDANTS SIMON BARBER AND EDUARDO deCASTRO AND THEIR ATTORNEY OF RECORD**:

PLEASE TAKE NOTICE that on October 10, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the this Court, located on the 5th Floor of 280 South 1st Street, San Jose, California, 95113, the Honorable Edward J. Davila presiding, Plaintiff, Pete Morici, an individual, will and hereby does move this Court for an order granting Plaintiff relief from the Order Staying Case entered by this Court on May 20, 2014 solely with respect the non-

1  bankrupt individual Defendants Simon Barber, and Eduardo deCastro, who are not a party to
2  Hashfast LLC and Hashfast Technologies LLC's jointly administered bankruptcy proceeding,
3  with respect to claims for (1) fraud and (2) unfair business practices under Cal. Bus. and Prof.
4  Code §17200, *et seq*.

5       This motion is based upon this Notice of Motion and Motion, the accompanying
6  Memorandum of Points and Authorities, all of the records on file in this action, and upon such
7  other and further argument that the Court may permit at the hearing in this matter.

8       <u>Summary of Argument</u>: Defendants have not shown that "special circumstances" justify a
9  stay against the individual defendants, and as such the individual defendants are not entitled to a
10 stay. The claims against the individual defendants are separate and distinct from the claims
11 against the entity defendants. Additionally. Defendants should have sought a stay in the
12 bankruptcy court in the first instance, and should not be rewarded for their failure to do so.
13 Finally, judicial efficiency does not counsel in favor of a stay.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

## I. INTRODUCTION

This is a lawsuit brought by Plaintiff, Pete Morici ("*Morici*") against two individuals, Simon Barber, Eduardo deCastro (the "*Principal Defendants*") and two legal business entities under the Principal Defendants' control, Hashfast LLC and Hashfast Technologies, LLC (the, "*Hashfast Defendants*" and together with the Principal Defendants, the "*Defendants*") alleging that Defendants had misrepresented the availability, delivery dates, and refund terms of two "Baby Jet" Bitcoin mining computers that Morici ordered from Defendants. The Principal Defendants are the two founders of the Hashfast Defendants and have served as the Chief Executive Officer and Chief Technology Officer, as well as on the Board of Directors of the Hashfast Defendants. An Order Staying Case was entered by this Court on May 20, 2014, following the involuntary bankruptcy filing against Hashfast Technologies, LLC. (Dkt. No. 23.) Morici now requests that this Court issue an order granting Morici relief from the Order Staying Case solely with respect the non-bankrupt individual Defendants Simon Barber, and Eduardo deCastro, who are not a party to Hashfast LLC and Hashfast Technologies LLC's jointly administered bankruptcy proceeding, with respect to claims for (1) fraud and (2) unfair business practices under Cal. Bus. and Prof. Code §17200, *et seq*. This motion seeks relief from the stay as to the Principal Defendants so that their personal liability for fraud and unfair business practices may be adjudicated by this Court.

Through their individual actions and through control of the Hashfast Defendants, the Principal Defendants engaged in a pattern of false and misleading statements regarding the availability, delivery, and refund terms of the Baby Jet computers. These statements were designed to induce consumers to purchase Bitcoin mining computers, at a time when increasing speculation and growth in Bitcoin made these statements of vital importance to Bitcoin "miners," such as Morici. At the time of making these statements, the Principal Defendants must have known such promises were false or knew they had no intention or capability of complying with such promises. For example, records from the Hashfast Defendants' bankruptcy filing as well as the Hashfast Defendants' press releases indicate that, at the time the Principal

1 Defendants were making promises regarding delivery dates in August 2013, they did not yet
2 have a signed agreement for production of the hyped micro-chip for the Baby Jet computer.
3 (Schedule G, p. 3 (Balasubramani Decl., Ex. B).) The agreement was not executed until
4 September 6, 2013. Id. Unlike a typical consumer product, the Principal Defendants knew that
5 timing of delivery was crucial to the Baby Jet's value. As Mr. Barber has stated referring to the
6 value of his chip design, "in this Bitcoin mining space, the value changes rapidly over time,"
7 and in reference to the value of the chip to his customers, Mr. Barber acknowledged that the
8 "the Bitcoin market moves very, very quickly" and that competition in the "Bitcoin mining
9 market" would cause a fast decrease in its value to its customers. (Meeting of Creditors, p. 59,
10 lines 1-3 and p. 60, lines 9-21 (Balasubramani Decl., Ex. A).) Further, the available evidence to-
11 date suggests that the Principal Defendants had no intention of taking any steps to retain Bitcoin
12 balances for refunds as they promised. At a time when requests for refunds were increasing, the
13 Principal Defendants admit that they paid bonuses to employees, including to themselves, in
14 Bitcoin in December of 2013. (Id., p. 21, lines 4-18; p. 31, lines 14-25.) Additionally, Bitcoins
15 were sold to cover the cash flow needs of the Company. (Id. at p. 37, lines 18-19.) In January of
16 2014, the Principal Defendants voted to give themselves substantial raises, even as liabilities
17 mounted. (Id. p. 39, lines 12-25, p. 40, lines 1-25.)
18      These statements alone are sufficient to make a claim for fraud and unfair business
19 practices on the part of the Principal Defendants, independent of the primary claim of breach of
20 contract against the Hashfast Defendants.
21      For the reasons set forth herein, the Court should grant Morici relief from the stay to
22 pursue his claims of fraud and unfair business practices against the Principal Defendants.
23 Additionally, Morici respectfully requests leave of the Court to amend his claims to further
24 identify the specific facts and allegations against the Principal Defendants as independent of the
25 claims against the Hashfast Defendants.
26         **II.   FACTUAL AND PROCEDURAL BACKGROUND**
27      In August of 2013, Morici was misled into purchasing Bitcoin mining equipment,
28 specifically "Baby Jet" computers, from Defendants based on a promises as to two key aspects

MOTION AND MEMO OF POINTS &      2      Case No. 5:14-cv-00087-EJD
AUTHORITIES IN SUPP. OF MOT. FOR
RELIEF FROM STAY

of the transaction: (1) the availability and timing of delivery, of which Morici received assurances prior to and following his purchase that were made, on information and belief, by and/or on the behest of the Principal Defendants, and (2) that refunds would be made in Bitcoin, as Mr. Barber personally promised on August 10, 2013 in the Bitcoin Talk forum. (See Complaint ¶ 17, 20, 25; see also Meeting of Creditors, p 104, lines 16-22 (Balasubramani Decl., Ex. A).) Both of these promises were critical to Morici's decision to transfer Bitcoin to the Defendants to purchase "mining" computers, the purpose of which was solely to allow Morici to acquire additional Bitcoins.

After months of delays and failure to make good on promises, Morici cancelled his order and requested a refund. (See Complaint ¶ 43.) As per the terms of the Principal Defendants' promises, Morici simply requested return of the Bitcoin that he had paid, which he was refused. (Id.) Defendants instead attempted to impose an additional condition on him in order to obtain a refund—acceptance and signature of a waiver and release form. (Id. ¶ 47.) Ultimately, despite his cancellation, Defendants belatedly shipped him a product which was non-conforming and in any event which Morici did not accept because he had already revoked his order. (Id. ¶ 48.)

Morici brought claims for breach of contract, fraud, unfair business practices under Cal. Bus. and Prof. Code §17200, et seq., and declaratory relief against Defendants. On March 14, 2014, Defendants filed a Motion to Dismiss with this Court, seeking (1) dismissal of the fraud claim in its entirety and (2) dismissal of the breach of contract, declaratory relief, fraud, and unfair business practices claim against the Principal Defendants and Hashfast LLC. (See Motion to Dismiss, p. 4.) In response, Morici filed an Opposition to the Motion to Dismiss, in which Morici clarified that he is only alleging claims of fraud and unfair business practices against the Principal Defendants. (See Opposition to Motion to Dismiss, p. 3.)

On May 9, 2014, Hashfast Technologies LLC's creditors filed an involuntary petition for bankruptcy and prior to the hearing on the Motion to Dismiss, on May 16, 2014, Defendants provided notice to this Court of the bankruptcy proceeding and suggested a stay under §362 of the Bankruptcy Code would be appropriate as to all Defendants. (Dkt No. 22.) On May 20, 2014, the Court granted an Order Staying Case as to all Defendants and claims. (Dkt No. 23.)

1    Subsequent to the Order Staying Case of this Court, Hashfast, LLC filed a voluntary
2    petition for bankruptcy under Chapter 11 on June 6, 2014. On motion by the Hashfast
3    Defendants, the bankruptcy cases of both Hashfast Defendants are being jointly administered and
4    there is a pending motion to substantively consolidate the estates of both Hashfast Defendants
5    into a single estate, on the basis that the two Hashfast Defendants are so entangled and their
6    creditors have treated the two entities as one enterprise. (Official Committee of Unsecured
7    Creditors' Motion for Substantive Consolidation, pages 7-9 (Balasubramani Decl., Ex. C).)
8    On August 8, 2014, the United States Trustee filed a Motion to Appoint Chapter 11
9    Trustee Under 11 U.S.C. § 1104(A), and in the Alternative to Convert Case to Chapter 7 Under
10   11 U.S.C. § 1112(B), citing "[g]ross mismanagement", "[m]aterial conflicts of interest" and,
11   "[c]ontinued losses or diminution in value with no prospect for reorganization" as reasons for the
12   appointment of a trustee or conversion to a Chapter 7 liquidation. (UST's Motion to Appt.
13   Trustee, p. 2 (Balasubramani Decl., Ex. D).)

## III.    DISCUSSION

**A.    There are no Special Circumstances Justifying an Extension of the Bankruptcy Stay to the Non-bankrupt Principal Defendants**

Absent "special circumstances," a stay under § 362(a) of the Bankruptcy Code does not apply to non-bankrupt co-defendants. Ingersoll-Rand Financial Corp. v. Miller Mining Co., 817 F.2d 1424, 1427 (9th Cir. 1987) (finding where the bankruptcy court had not extended the stay an action against the debtor's guarantor could continue). The Ninth Circuit has recognized the general principle that the purpose of the stay is to protect the assets of the debtor for the benefit of the creditors as a group and to "give [the debtor] room to breathe and, thereby, hopefully to reorganize." Boucher v. Shaw, 572 F.3d 1087, 1092 (9th Cir. 2009). The stay should only be extended to non-bankrupt parties where the action would directly put the property of the bankrupt debtor at risk. See Id. at 1092-93("[T]he automatic stay does not protect the property of parties such as officers of the debtor . . . ."); United States v. Dos Cabezas Corp., 995 F.2d 1486, 1491 (9th Cir. 1993) ("[U]nless the assets of the bankrupt estate are at stake, the automatic stay does not extend to actions against parties other than the debtor . . . ."); In re Lockard, 884 F.2d

1171, 1178 (9th Cir. 1989) (finding that a surety's obligations were independent from claims against the debtor and could proceed); Duval v. Gleason, 1990 U.S. Dist. LEXIS 18398, 19 (N.D. Cal. Oct. 19, 1990) (finding that corporate officers' independent liability for fraud was not a "direct action" against the property of the debtor's estate and could continue).

While a number of courts have adopted the "unusual circumstances" exception established in A.H. Robins Co. v. Piccinin, which allows extension of the stay to non-bankrupt parties "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," 788 F.2d 994, 999 (4th Cir. 1986), the Ninth Circuit has not adopted this rule. See Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Prods.), 23 F.3d 241, 247 (9th Cir. 1994) ("In the Ninth Circuit, the vitality of the "unusual circumstances" exception is not clear. We have declined to apply A.H. Robins on two occasions."); United States v. Dos Cabezas Corp., 995 F.2d at 1491 n. 3 (noting that the question had not been raised by the parties); In re Lockard, 884 F.2d at 1179 (declining to adopt the "unusual situation exception"); Duval v. Gleason, 1990 U.S. Dist. LEXIS 18398, at *11 (citing In re Lockard, and noting that the Ninth Circuit has not recognized the A.H. Robins exception). Ultimately, where the liabilities of the non-bankrupt party stand independent, and are not derivative of the claims against the bankrupt debtor, courts will not extend the stay to the non-bankrupt parties, as it would unfairly grant non-bankrupt parties the benefit of bankruptcy protection and a reprieve (if only temporary) from their debts. See Chugach Timber, 23 F.3d at 247 ("Where a nondebtor 'has obligations that are 'independent' and primary, not derivative of those of the debtor[,] . . . the A.H. Robins exception simply does not apply.'") (citing In re Lockard, 884 F.2d at 179); see also Boucher v. Shaw, 572 F.3d at 1093 (finding bankruptcy of company irrelevant in determination of independent liability of its managers for unpaid wages); Duval v. Gleason, 1990 U.S. Dist. LEXIS 18398, at *11 (discussing line of cases holding that "where a non-debtor codefendant may be held independently liable of the debtor, then there is no compelling basis by which a court must extend the automatic stay of § 362 to the non-debtor codefendants").

      The court's opinion in <u>Duval</u> provides a thorough analysis on extension of the stay to co-defendants and is similar to the facts of this case in many respects. In <u>Duval</u>, the plaintiffs alleged that an affiliated group of entities and their officers and directors engaged in fraudulent activities in connection with the sale of securities. <u>Duval</u> at *1. Following the filing by a number of the related entity defendants for Chapter 11 bankruptcy, the non-bankrupt co-defendants moved to have the stay extended to them, on the basis that they would be entitled to indemnification from the bankrupt parties' insurance policy if found liable. <u>Id</u>. at *2-3. While the court suggested that where a non-bankrupt co-defendant was entitled to "absolute indemnification," an extension of the stay may be appropriate, it was not justified where the suit sought "to attach liability for the specific fraudulent acts of named individuals," in which case, an extension of the stay would "create a sizeable loophole through which malfeasant corporate officers . . . could escape, at least temporarily, all civil prosecutions." <u>Id</u>. at *12-13. The court in <u>Duval</u> further noted that the Ninth Circuit and the Northern District of California have "failed to adopt the position that the automatic stay applies as a matter of course to proceedings which may give rise to a potential claim for indemnification under a debtor's insurance policy." <u>Id</u>. at *16; <u>see also</u> <u>In re Daisy Sys. Sec. Litig.</u>, 132 B.R. 752, 755 (N.D. Cal. 1991) (following <u>Duval</u> to find that the proceeds of bankrupt company's insurance policy were not property of the debtor's estate); <u>Integrity Stainless Corp. v. Keystone Surplus Metals</u>, Inc., 2009 U.S. Dist. LEXIS 11008, 4 (N.D. Ohio Feb. 13, 2009) (citing to <u>Duval</u> in connection with rejecting claims that a possible requirement that the bankrupt corporate entity indemnify the officers as sufficient basis for extending the stay).

      In this case, there is no showing of any special or unusual circumstances that would justify extending the stay to the Principal Defendants. Defendants have asserted, without any supporting explanation, that Hashfast, LLC is a "necessary and indispensable party to this action" and there is "such identify between the parties that Hashfast Technologies is the real party defendant." (<u>Notice of Bankruptcy and Suggestion of Stay</u>, p.2.) To the contrary however, similar to the fraud claims in <u>Duval</u>, here, Morici's claims of fraud and unfair business practices against the Principal Defendants rest on their specific individual fraudulent actions, apart from

and independent of the claims against the Hashfast Defendants. Although, the Defendants have not raised the issue of indemnification or any corporate officer insurance policy, absent a showing that the Principal Defendants are entitled to absolute indemnification, a determination that the Principal Defendants' liability would jeopardize the Hashfast Defendants' estate would be premature. See Duval v. Gleason, 1990 U.S. Dist. LEXIS 18398, at *19 (holding that potential attachment of liability to bankrupt defendants through insurance policy claims did not justify staying the proceedings against the codefendants). Additionally, as Morici's claims are grounded in fraud, any right of the Principal Defendants to indemnification from the Hashfast Defendants upon a final determination of liability may be limited as a matter of law and public policy. See Cal. Corp. Code § 17155 (providing that officers of a limited liability company may not be indemnified for breaches of their fiduciary duties); see also In re MCSi, Inc., Securities Litigation, 371 B.R. 270, 272 (S.D. Ohio 2004) (denying an extension of the stay to two officers in claims for securities fraud, due, in part, to limited indemnity for acts committed in bad faith and the independent liability of officers for securities fraud).

**B.     The Bankruptcy Court Must Extend the Stay to Non-Debtors**

Regardless of whether sufficient special or unusual circumstances exist to justify an extension of the stay to the Principal Defendants, the power to extend the stay to non-bankrupt parties lies first with the bankruptcy court. See Boucher v. Shaw, 572 F.3d at 1093, n.3 (stating that even if the property of the bankrupt party could be affected by the non-bankrupt parties liability, "the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction"); Chugach Timber, 23 F.3d at 247, n.6 (finding that "[e]ven if we were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction . . . .") (citing Patton v. Bearden, 8 F.3d 343, 349 (6th Cir. 1993)); Placido v. Prudential Ins. Co. of Am., 2010 U.S. Dist. LEXIS 12147, 3 (N.D. Cal. Jan. 21, 2010) ("In order to extend the automatic stay to defendants because of their alleged financial connection to the debtor, the extension would have to be issued by the bankruptcy court."); but see Lockyer v. Mirant Corp., 398 F.3d 1098, 1106-07 (9th Cir. 2005) ("[A] district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it, over

1  which it would otherwise have jurisdiction."). The authority to extend the stay is procedurally an

2  exercise of the bankruptcy court's injunctive authority under § 105(a) of the Bankruptcy Code.

3  See Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), 502 F.3d

4  1086, 1094 (9th Cir. 2007) (holding that the "usual preliminary injunction standard applies to

5  stays of proceedings against non-debtors under § 105(a)"). As the Ninth Circuit observed in

6  Solidus Networks, application of this usual standard "helps to ensure that stays would not be

7  granted lightly." Id. at 1095.

8        Here, the Defendants improperly requested this Court to extend the stay as to the non-

9  corporate defendants. Within the Ninth Circuit, it is the bankrupt party, the Hashfast Defendants,

10 who are required to request that the bankruptcy court extend the stay. The bankruptcy court in

11 this matter has proper jurisdiction to determine whether extending such stay would be necessary

12 to protect the property of the Hashfast Defendants and facilitate the parties' reorganization. The

13 Principal Defendants should not be rewarded by their failure to seek extension of the stay in the

14 correct manner.

15 **C.   Judicial Efficiency Does Not Justify Extension of the Stay and Severing the Claims**
16        **Against the Principal Defendants will not Prejudice the Bankruptcy Proceeding**

17       While the Ninth Circuit has recognized that district courts have an inherent power to stay

18 proceedings in the interest of efficiency and fairness to the parties, the "balance of the hardships"

19 at stake in this case does not justify such exercise of the Court's authority. See Lockyer v. Mirant

20 Corp., 398 F.3d at 1112 (refusing to extend the stay, in part, upon a finding that the bankruptcy

21 court was unlikely to consider the underlying liability of the defendant in connection with

22 approval of a Chapter 11 reorganization plan). In exercising the inherent authority to control its

23 docket, courts are to weigh "the possible damage which may result from the granting of a stay,

24 the hardship or inequity which a party may suffer in being required to go forward, and the

25 orderly course of justice . . . ." Id. at 1110. Courts within this Circuit have primarily exercised

26 this inherent authority to extend the stay where the claims and facts underlying the claims are

27 identical and would result in duplicative proceedings. See Coinlab Inc. v. Mt. Gox KK, 2014

28 U.S. Dist. LEXIS 60238, 4 (W.D. Wash. April 30, 2014) (finding that granting a stay with

1  respect to a non-bankrupt co-defendant was justified when the claims were identical); J & J
2  Sports Prods. v. Brar, 2012 U.S. Dist. LEXIS 143447, 6 (E.D. Cal. Oct. 3, 2012) (finding that a
3  failure to extend the stay could result in relitigation of the same issues); PNC Bank, N.A. v.
4  Smith, 2014 U.S. Dist. LEXIS 46163, 5 (E.D. Cal. Mar. 31, 2014) (same). As the court in
5  Lockyer reasoned, "a stay may be improper where the independent proceeding is "unlikely to
6  decide, or contribute to the decision of, the factual and legal issues" in the action for which the
7  stay is requested." McIalwain v. Green Tree Servicing, LLC, 2014 U.S. Dist. LEXIS 14375, 4
8  (W.D. Wash. Feb. 5, 2014) (citing Lockyer, 398 F.3d at 1113).

     In contrast to those cases cited above, in which the allegations and facts of claims against the bankrupt and non-bankrupt party were functionally identical, in the present matter, the fraud and unfair business practices claims against the Principal Defendants center around distinct issues of both law and fact related to the Principal Defendant's statements, knowledge, and intent. Although the claims against the Hashfast Defendants may involve many of the same underlying facts of the larger transaction, a finding of liability on the part of one or both of the Principal Defendants is not necessarily an adjudication of liability on the part of the Hashfast Defendants or vice versa. The limited time and resources of this Court would be expediently spent by allowing the parties to proceed with respect to those claims for which the Principal Defendants would be personally and independently liable. Upon a balance of the competing interest of the parties, Morici would suffer greater from an indefinite stay of his fraud claims while a complicated reorganization of the Hashfast Defendants is completed. Additionally, it is worth noting that the complexity of the bankruptcy reorganization is due in part because of the Principal Defendants' entanglement of the two Hashfast Defendants and the transfer of money between the entities for the apparent purposes of avoiding liability.

     Additionally, similar to the situation in Lockyer, the claims against the Principal Defendants are not well-suited to adjudication within the bankruptcy court and, in fact, may never be reached by the bankruptcy court as fraud related claims are non-dischargeable in the Chapter 11 bankruptcy. See 11 U.S.C. § 523(a)(2)(A) (providing that "money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." may

1  not be discharged in bankruptcy). If the claims for fraud and related unfair business practices are
2  found to be non-dischargeable, then all such claims will still need to be litigated following the
3  bankruptcy proceeding.
4       Proceeding with the claims related to fraud and unfair business practices against the
5  Principal Defendants will not result in duplicative proceeding or impede the bankruptcy process
6  of the Hashfast Defendants. Rather than hindering that proceeding, the adjudication of the
7  separate claims against the Principal Defendants could assist with the resolution of the claims in
8  the Hashfast Defendants' bankruptcy proceedings and protect the other creditors in the
9  bankruptcy by preserving the Hashfast Defendants' funds. See Chugach Timber, 23 F.3d at 247
10 ("Moreover, the foreclosure might actually have facilitated [the bankrupt party's] reorganization
11 by allowing [plaintiff] to satisfy its claim against [the bankrupt party's] . . . with the assets [of
12 others], thereby preserving funds for other creditors.").

13 **D.    The Court Should Grant Morici Leave to Amend His Claims to Clarify the**
14 **       Independent Claims Against the Principal Defendants**

15      To the extent this Court finds the claims between the Principal Defendants and Hashfast
16 Defendants to be so closely related as to justify the extension of the stay, Morici respectfully
17 requests leave of the Court to amend his claims to clarify the independent nature of the claims
18 against the Principal Defendants. Through the course of bankruptcy proceedings and through
19 independent investigation, Morici has uncovered numerous facts central to his allegations that
20 the Principal Defendants engaged in fraud and misleading actions. Because leave to amend
21 should be liberally granted, and because the Principal Defendants will not be prejudiced by any
22 amendment, Morici respectfully requests that the Court grant leave.

23 **E.    Plaintiff Waives Oral Argument**
24      Plaintiff respectfully suggests that the underlying Motion is suitable for resolution on the
25 papers and requests that the Court dispense with a hearing on the Motion. To the extent
26 necessary, Plaintiff waives any request for oral argument in connection with the Motion.

27                       **IV.   CONCLUSION**

28      For the reasons set forth above, Morici respectfully requests that the Court grant his

motion and grant Morici relief from the stay with respect to the non-bankrupt Principal Defendants, Simon Barber and Eduardo deCastro, so that the Principal Defendants' personal liability can be adjudicated.

Dated: August 15, 2014

Respectfully submitted,

**Focal PLLC**

By: */s/ Venkat Balasubramani*
Venkat Balasubramani

MOTION AND MEMO OF POINTS & AUTHORITIES IN SUPP. OF MOT. FOR RELIEF FROM STAY    11    Case No. 5:14-cv-00087-EJD

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 15, 2014, I caused the foregoing (1) Pete Morici's Notice of Motion, Motion for Relief from Stay With Respect to Simon Barber and Eduardo deCastro, and Memorandum of Points and Authorities in Support of Motion; (2) Declaration of Venkat Balasubramani; and (3) a Proposed Order, to be filed via the CM/ECF system and served on opposing counsel via electronic notification.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that this declaration was executed on August 15, 2014 at Seattle, Washington.

*/s/ Venkat Balasubramani*
Venkat Balasubramani