Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:   310.820.8800
Facsimile:   310.820.8859
Email:         amcdow@bakerlaw.com
                  mdelaney@bakerlaw.com

[Proposed] Attorneys for OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES, LLC, *et al.,*[1]<br><br>Debtors. | Case No.: 14-30725<br><br>(Jointly Administered with HashFast LLC, Case No. 14-30866)<br><br>Chapter 11 |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MOTION FOR SUBSTANTIVE CONSOLIDATION**

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case of HashFast Technologies, LLC, respectfully submits this motion (the "Motion") requesting that the Court substantively consolidate the jointly-administered estates of Hashfast Technology, LLC, case no. 14-30725 DM, and Hashfast, LLC, case no. 14-30866 DM (collectively, the "Debtors").[2]  In support of the Motion, the Committee states as follows:

**JURISDICTION**

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors are HashFast LLC (FEIN 46-2943354) and HashFast Technologies LLC (FEIN38-3913245).
[2] The Debtors have represented to the Committee that they do not intend to oppose this Motion, and authorized the Committee to represent as much herein.  Additionally, the Debtors have consented to setting this Motion for hearing on shortened time for July 28, 2014, at 2:00 p.m.

- 1 -

MOTION FOR SUBSTANTIVE CONSOLIDATION

# BACKGROUND

A. **Corporate Formation and Assets**

1. On or about May 9, 2013, HashFast LLC ("HF") was formed as a Delaware limited liability company. Soon thereafter, on or about June 10, 2013, HashFast Technologies, LLC ("HFT") was formed as a California limited liability company and registered to do business in California.

2. At all times, HF has owned 100% of the membership interests of HFT.[3]

3. HF has no meaningful business operations, no employees,[4] the same officers as HFT,[5] and the same principal place of business as HFT.[6] In fact, the Debtors have conceded that HF exists solely for the purpose of owning and purportedly developing certain intellectual property – identified on HF's schedules as two United States provisional patent applications and various "trade secrets, mask works related to chip design" (collectively, the "Intellectual Property") – solely for the benefit of HFT. Moreover, while HF purportedly "licenses" the Intellectual Property to HFT,[7] the Debtors have admitted that there is no known license agreement between HF and HFT regarding the use of the Intellectual Property.[8] Rather, HFT simply has the unfettered ability to use the Intellectual Property for the benefit of HFT's operations without any obligation to pay HF for such use.

4. Since HF's formation, its only source of revenue has been money transferred, or up-streamed, from HFT to HF.[9] HF's schedules reflect that in 2013, HFT transferred $1,002,643.77 to HF,[10] and in 2014, HFT transferred $170,000.00 to HF.[11] Although Simon

---

[3] Meeting of Creditors of HashFast LLC dated 7/8/13, 47:11-13. A copy of the transcript of the July 8, 2014 meeting of creditors is attached to the Declaration of Michael T. Delaney (the "Delaney Declaration") as **Exhibit "A"**.
[4] Meeting of Creditors of HashFast LLC dated 7/8/13, 53:20-23.
[5] *See* Case No. 14-30866, D.E. 17, p. 7; Case No. 14-30725, D.E. 92, p. 10.
[6] Case No. 13-30866, D.E. 1, p. 1; Meeting of Creditors of HashFast Technologies, LLC dated 7/8/14, 7:24-8:11.
[7] The Intellectual Property is identified on HF's Schedules as US Provisional Patent Application No. 61/917,828, US Provisional Patent Application No. 61/896,559, and "Trade secrets, mask works related to chip design." *See* Case No. 14-30866, D.E. 19, p. 3. The Committee requests that the Court take judicial notice pursuant to Fed. R. Evid. 201 of all documents referenced herein that have been filed with the Court.
[8] Meeting of Creditors of HashFast Technologies LLC dated 7/15/14; 24:8-14. A copy of the transcript of the July 15, 2014 meeting of creditors is attached to the Delaney Declaration as **Exhibit "B"**. Ex. A, 24:8-14.
[9] *See* Case No. 14-30866, D.E. 17, p. 1.
[10] *Id.*
[11] *Id.*

- 2 -

Barber, current and former CEO of HFT, testified that he was completely unaware why the two entities were structured as they were, the current CFO of HFT testified that the purpose of the structure (which did nothing more than isolate the Intellectual Property in an entity unlikely to incur any significant non-insider liabilities) was to enable HF to derive its revenue from licensing the Intellectual Property to HFT, so that "[HFT] in essence, paid for the IP by funding [HF]."[12]

5. Despite the absence of any agreement between HFT and HT which governed the allocation and/or transference of funds by and between the two entities, in 2013 alone, HFT paid HF over $1,000,000 for the purpose of satisfying HF's (or HFT's)[13] liabilities to various independent contractors who performed services for HF and HFT.[14]

6. HF has no secured creditors, no unsecured priority creditors, and only two alleged unsecured non-priority creditors.[15] The first alleged creditor of HT, Sandgate Technologies ("Sandgate"), was scheduled identically in the schedules of both HFT and HT – as the holder of an unliquidated claim in the amount of $89,377.00.[16] Moreover, the principals of Sandgate – Chad Spackman, Adrian Port, and John Wells – each hold an approximate 12% equity interest in HF according to the List of Equity Holders filed by HF.[17] The second purported unsecured non-priority creditor, DXCorr Design, Inc. ("DXCorr"), is similarly scheduled identically in the schedules of both HFT and HT - as a disputed claim in the amount of $0.00.[18] HFT also scheduled DXCorr as a party to two executory contracts.[19] Additionally, despite the fact that the design work that DXCorr performed related primarily to the Intellectual Property owned by HF, the actual signatory to the executory contract with DXCorr was HFT.[20] Moreover, most of the payments to DXCorr were made by HF - who was not a party to the contract - while only a few of

---

[12] Ex. A, 54:25-55:5.
[13] During the Meeting of Creditors, the Debtors' representatives could not explain which company was directly liable for certain debts. Rather, the Debtors' representatives testified that HF was primarily responsible for paying the Debtors' obligations, while HFT would only occasionally pay the Debtors' liabilities.
[14] Ex. B, 46:1-10; 65:21-66.
[15] *See, generally,* Case No. 14-30725, D.E. 83-91.
[16] Case No. 14-30866, D.E. 22, p. 1.
[17] Case No. 14-30725, D.E. 5.
[18] Case No. 14-30725, D.E. 87, at p. 33; Case No. 14-30866, D.E. 22, at p. 1.
[19] Case No. 14-30725, D.E. 88, p. 1.
[20] Ex. B, p. 18.

- 3 -

MOTION FOR SUBSTANTIVE CONSOLIDATION

1  the payments were made by HFT.[21] The Debtors' have thus-far been unable to provide any
2  credible explanation for why HF would pay the liabilities of HFT (to DXCorr or otherwise).[22]

3      7.    By structuring the entities in the manner in which they have, the Debtors have
4  ensured that the assets which are crucial to the operations of HFT (and of significant value) are
5  isolated in HF, and thus insulated from the significant liabilities incurred by HFT in those same
6  operations. In fact, as of the Debtors' respective petition dates, HFT purportedly had over
7  $15,000,000.00 in unsecured claims, while HF's schedules identify less than $90,000.00 in
8  unsecured claims.

### B. Bankruptcy and Post-Petition Conduct

    8.    On May 9, 2014, Koi Systems Ltd., UBE Enterprises, Timothy Lam, Edward Hammond, and Grant Pederson commenced an involuntary bankruptcy under chapter 7 against HFT.

    9.    On June 3, 2014, HFT filed the *Debtor's Conditional Consent to an Order for Relief Regarding Involuntary Petition* and *Debtor's Motion to Convert to Chapter 11*.[23] On June 4, 2014, the Court entered an order converting the Bankruptcy Case to one under chapter 11 of the Bankruptcy Code.[24] Thereafter, HFT has acted as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

    10.    On June 6, 2014, HF filed a voluntary petition under chapter 11 of the United States Code (the "Bankruptcy Code").

    11.    On or about June 23, 2014, the Office of the United States Trustee appointed the Committee to represent the interests of all unsecured creditors for HFT pursuant to section 1102 of the Bankruptcy Code. The members appointed to the Committee were: (i) Hamilton Hee; (ii) Sistemas Operativos Sanitarios ca; (iii) Uniquify, Inc.; (iv) Antony Vo; (v) Koi Systems Ltd.; (vi) Digimex Ltd.; and (vii) Peter Morici.

---

[21] Ex. B, p. 21.
[22] Ex. B, p. 22:11-14.
[23] Case No. 14-30725, D.E. 35 and 36.
[24] All references herein to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq.*

- 4 -

MOTION FOR SUBSTANTIVE CONSOLIDATION

12. On July 8, 2014, this Court granted the Debtors' motion to jointly administer the Debtors' bankruptcy cases.[25]

13. On July 18, 2014, the Debtors' filed their *Motion Pursuant to 11 U.S.C. §§ 105(A), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019 for Entry of Orders (I) Authorizing the Sale of Estate Property, (II) Authorizing the Sale of Estate Property Free and Clear of Liens, Claims, Encumbrances and Interests, and (III) Authorizing the (A) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Assumption of Certain Liabilities, and (c) Granting Certain Related Relief* (the "Sale Motion").[26] Among other things, the Sale Motion requests that this Court approve a sale of all or substantially all of the Debtors' assets to Liquidbits Corp. (the "Potential Purchaser") based upon a non-binding term sheet, without providing any evidence regarding the value of the assets to be sold or allowing for any potential overbids, and which, among other things, seeks a general release of any and all claims (including all claims under Chapter 5 of the Bankruptcy Code) against the Potential Purchasers and its affiliates, none of which are disclosed or appear to have been investigated.[27] Significantly, neither the Sale Motion nor the non-binding term sheet attached thereto indicate which Debtor owns the assets proposed to be sold or provide any explanation of how the purchase price is to be allocated between the Debtors. Rather, the Sale Motion contemplates a sale of substantially all of the assets of *each* of the Debtors in a single transaction to a single purchaser for a single sum of money.[28] In fact, the HFT's CFO testified that in negotiating and finalizing the non-binding term sheet, which forms the basis for the Sale Motion, she believed that all of the assets of each of the estates were being sold.[29]

14. Given the essentially irrefutable and extensive interrelatedness between HF and HFT, the Committee has continuously emphasized the need for substantive consolidation of the two estates. While the Debtors have been unwilling to stipulate to substantive consolidation, on

---

[25] Case No. 14-30725, D.E. 121.
[26] Case No. 14-30725, D.E. 134.
[27] *Id.* at pp. 8-9. The Committee intends to file an objection to the Sale Motion more fully setting forth its objections.
[28] *See* Ex. B, 81:25-82:6.
[29] Ex. B, p. 82:3-6.

- 5 -

MOTION FOR SUBSTANTIVE CONSOLIDATION

or about July 22, 2014, the Debtors finally confirmed that they would not oppose the substantive consolidation sought herein by the Committee.

## RELIEF REQUESTED

The Committee respectfully requests that this Court enter an order substantively consolidating the Debtors' bankruptcy estate(s) into a single bankruptcy estate, and granting all other relief that is appropriate under the circumstances.[30]

## BASIS FOR RELIEF REQUESTED

Substantive consolidation is an uncodified, equitable doctrine allowing the bankruptcy court to "combine the assets and liabilities of separate and distinct – but related – entities into a single pool and treat them as though they belong to a single entity." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 764 (9th Cir. 2000). The doctrine "enables a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." *Id*. The essential purpose of substantive consolidation "is to ensure the equitable treatment of all creditors." *Id*. And, while it is to be used sparingly, without the protections provided by substantive consolidation, "debtors could insulate money [or assets] through transfers among inter-company shell corporations with impunity." *Id*.

In determining whether substantive consolidation is appropriate, the Ninth Circuit has established a disjunctive two-factor test: (i) whether the creditors dealt with the debtors as a single economic unit and did not rely on the separate credit of each of the consolidated entities; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. *Id.* at 766. The presence of either factor is a sufficient basis to order substantive consolidation. "In either case, the bankruptcy court must in essence establish that the assets of all of the consolidated parties are substantially the same." *Id.* at 771. Ultimately, the decision to apply the substantive consolidation doctrine stems from a weighing of the equities and must be tailored to meet the needs of each particular case. *Id.*

---

[30] A copy of the proposed order is attached to the Delaney Declaration as **Exhibit "C"**.

- 6 -

MOTION FOR SUBSTANTIVE CONSOLIDATION

603835613.1

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

Substantive consolidation is appropriate in this case under either factor of the *In re Bonham* standard. Indeed, based on the Debtors' business practices (both historically and since the respective petitions were filed) and by their own admissions, it is clear that the Debtors' creditors (as well as the Debtors) treated the companies as a single enterprise and that the Debtors' business operations are and have always been inextricably intertwined.

Since the formation of the respective entities, the Debtors have operated as a single entity. HF does nothing more than hold the Intellectual Property (and/or the license(s) associated with the Intellectual Property),[31] while HFT contracts for the manufacture of the tangible products and enters into sales agreements with customers—thus, incurring most (if not all) of the debt associated with the joint enterprise. Indeed, it appears that HF was formed primarily for the purpose of insulating the Intellectual Property from the liabilities of HFT. The current CFO of HFT testified to this fact, stating that "the intent of the structure was that HashFast LLC was set up to pay the IP and isolate the IP. HashFast Technologies was the operating company."[32] The current CFO also testified that due to the corporate structure, the Debtors were integrally interrelated.[33]

In addition to an inextricably intertwined operational structure, HFT and HT frequently paid obligations purportedly incurred by the other entity (although, quite frankly, it is unclear which entity even incurred the obligation(s) in a number of situations). For example, even though the services contract was between HFT and DXCorr,[34] HF regularly paid the obligations owed to DXCorr.[35] The same is true for Uniquify[36] and Sandgate.[37] Moreover, the determination

---

[31] The Debtors have provided conflicting testimony regarding HF's business. First, Simon Barber testified that HF merely holds intellectual property rights (ownership or license rights). *See* Ex. A, 52:18-53:6. Then, counsel for HFT/HF and Monica Hushen stated that HF also engages in the development of intellectual property. *See* Ex. A, 53:9-14. However, later during the Meeting of Creditors, Ms. Hushen testified that the Debtors "are not investing in the future technology." *See* Ex. A, 63:15-16. Based on the testimony of Mr. Barber (who is routinely noted during both Meetings of Creditors as the person most knowledgeable for the Debtors), it appears that HF does not engage in any business activities other than hold intellectual property rights for the exclusive benefit of HFT and occasionally pay the financial obligations of HFT from funds paid to HF from HFT as alleged license payments (despite the absence of a license).

[32] *See* Ex. B, 23:10-13.

[33] *See* Ex. B, 23:13-18 ("[o]bviously HashFast Technologies had to have the license, because that's where all the operations took place, so they couldn't sell product without the license. So HashFast LLC owned, theoretically, the license rights, and they licensed those to HashFast Technologies.").

[34] *See* Ex. B, 17:25-18:16.

[35] *see* Ex. B, 20:24-21:13.

- 7 -

regarding which entity would make any given payment appears to have been completely arbitrary, and made on a "case-by-case basis" by Simon Barber and/or Eduardo de Castro—current or former executives of HFT and majority owners of HF.[38]

Perhaps even more demonstrative of the complete disregard of the legal distinction between the two entities, HFT continuously transferred substantial sums of money to HF in order to enable HF to pay the obligations of both HFT and HF. In fact, in the statement of financial affairs filed by HFT,[39] HFT admitted that it transferred approximately $1,200,000 to HF.[40] These funds were then transferred from HF to vendors who were providing services for both HF and HFT, despite the absence of any contractual obligation or invoice requiring that any such payments be made in this manner.[41] The arbitrary nature of these payments was reinforced by the CFO of HFT, who attested that after the respective bankruptcy petitions were filed, she caused HFT to pay Sandgate directly, rather than have HFT pay HF who would then simply pay Sandgate.

Over 99% of the scheduled liabilities in these jointly-administered cases are solely against HFT (the entity which is operating), while HF (the non-operating entity whose sole function is to "isolate the IP") owns what is likely to be the most valuable asset of either estate yet has few, if any, legitimate creditors. HF has admitted that it has no meaningful business operations, and has admitted that it has nominal liabilities. HFT has also admitted that it transferred significant funds to HF without receiving any demonstrative consideration in return, while HFT incurred significant liabilities that it was unable to satisfy.

The Debtors (let alone the creditors of the Debtors) have admitted that they viewed the entities as a single economic unit – a fact which is evidenced by the structure of the recent Sale Motion and confirmed by the recent testimony of the Debtors' representatives. Moreover, the

---

[36] *See, e.g.,* Ex. B, 36:2-6 ("Q. So do your records that you are reviewing right now indicate that both debtors made payments to Uniquify? A. Let me verify that HashFast Technologies did as well. Yes.").
[37] *See., e.g.,* Ex. B, 41:18-22 ("Q. Which entity made the payments to Sandgate? A. Similar to the other vendors, both entities did. Primarily HashFast LLC, I believe. Let me double-check that. It appears that Sandgate was primarily paid through HashFast Technologies.").
[38] *See* Ex. B, 42:12-17.
[39] Case No. 14-30725, D.E. 92.
[40] *See* Ex. B, 44:15-45:15; 47:5-18.
[41] *See* Ex. B, 65:21-66:4.

affairs of the Debtors are so entangled that the Debtors themselves cannot articulate any rationale explanation for the manner in which the entities were structured or which entity incurred or paid certain obligations. Moreover, the Debtors themselves view the assets of the two entities as substantially the same, as reflected in the structure of the Sale Motion. Accordingly, the Committee respectfully submits that all creditors will benefit from substantive consolidation by ensuring that the Debtors are not permitted to insulate the Intellectual Property (which is likely the most valuable asset in either of the estates) from the liabilities of the joint enterprise operated through HFT. *See In re Bonham*, 229 F.3d at 764.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court enter an order substantively consolidating the Debtors' bankruptcy estate into a single bankruptcy estate, and for such other relief as this Court deems just and appropriate under the circumstances.

Dated: July 23, 2014

Respectfully submitted,

BAKER & HOSTETLER LLP

By: /s/ Ashley M. McDow
Ashley M. McDow
Michael T. Delaney

[Proposed] Attorneys for Official Committee of Unsecured Creditors

- 9 -

MOTION FOR SUBSTANTIVE CONSOLIDATION

603835613.1