1  JEREMY J. GRAY (SBN 150075)
   *jgray@zuberlaw.com*
2  MICHAEL D. RESNICK (SBN 245215)
   *mresnick@zuberlaw.com*
3  **ZUBER LAWLER & DEL DUCA LLP**
   777 S. Figueroa Street, 37th Floor
4  Los Angeles, California  90017
   Telephone: (213) 596-5620
5  Facsimile: (213) 596-5621

6  Attorneys for Defendants,
   Hashfast Technologies LLC, Hashfast LLC,
7  Simon Barber, and Eduardo deCastro

8              **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

10

11  PETE MORICI, an individual,            CASE NO. 5:14-cv-00087-EJD (HRL)

12            Plaintiff,
                                           **MEMORANDUM OF POINTS AND**
13     v.                                  **AUTHORITIES IN SUPPORT OF**
                                           **DEFENDANTS SIMON BARBER**
14  HASHFAST TECHNOLOGIES LLC, a           **AND EDUARDO DECASTRO'S**
    California limited liability company,  **MOTION TO DISMISS PURSUANT**
15  HASHFAST LLC, a Delaware limited       **TO FRCP 12(b)(6) AND 9(b)**
    liability company, SIMON BARBER,
16  an individual, and EDUARDO
    deCASTRO, an individual,               **HEARING DATE:**
17
              Defendants.                  Date:     March 5, 2015
18                                         Time:     9:00 a.m.
                                           Courtroom: 4, 5th Floor
19                                                    280 South 1st Street
                                                      San Jose, CA  95113
20
21                                         *(Filed Concurrently herewith are:*
                                           *Notice of Motion and Motion;*
22                                         *[Proposed] Order)*

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

MEMORANDUM OF POINTS AND AUTHORITIES ISO FRCP 12(b)(6) MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ............................................................................1

II.    STATEMENT OF FACTS ...............................................................................5

      A.      Bitcoin and Bitcoin "Mining". ...............................................................5

      B.      The Equipment at Issue and Plaintiff's Pre-Order. ................................6

      C.      Delays in Shipping. ................................................................................8

      D.      Allegations Against Barber. ....................................................................9

      E.      Allegations Against deCastro .................................................................10

III.   DISCUSSION ................................................................................................10

      A.      Plaintiff's Second Claim for Relief for Fraud Should Be Dismissed Against Barber and deCastro. ...............................................................10

      B.      Plaintiff's Claims Against Barber and deCastro for Breach of Contract (Claim One), Violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (Claim Three), and Declaratory Relief (Claim Four) Should Be Dismissed. ......................12

IV.   CONCLUSION ...............................................................................................14

1975-1005 / 387781.1

# TABLE OF AUTHORITIES

Page

### Cases

188.)   13

*Gibbs v. SLM Corp.,* 336 F. Supp. 2d 1 (D. Mass. 2004) ........................................................10, 13

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991) ............10

*Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir. 1993) .......................................................11

*Warburton/Buttner v. Superior Court* (2002) 103 Cal. App. 4th 1170, 1187-1188 ........................13

### Statutes

Cal. Bus. & Prof. Code §§ 17200 ........................................................i, 1, 5, 6, 7, 8, 9, 10, 12, 13, 14

Cal. Corp. Code § 17000 et seq. ....................................................................................i, 13

Fed. R. Civ. P. 9(b) ..........................................................................................i, 3, 5, 10, 11, 12

*Id.*     7, 8

### Treatises

9 Witkin, Summary of Cal. Law (2002 supp.) Partnership, § 120, pp. 292-293 ..........................i, 13

# I.   PRELIMINARY STATEMENT

## A.   Procedural Background.

On January 17, 2014, plaintiff Pete Morici ("Plaintiff") filed the operative Complaint for breach of contract (claim one), fraud (claim two), violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (claim three), and declaratory relief (claim four) against HashFast Technologies LLC ("HashFast"), HashFast LLC, Simon Barber ("Barber"), and Eduardo de Castro ("deCastro") (all defendants are collectively hereinafter referred to as the "Defendants").

On March 14, 2014, Defendants filed a motion to dismiss pursuant to rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

On May 9, 2014, the creditors of HashFast filed an involuntary petition for bankruptcy.  Prior to the hearing on Defendants motion to dismiss, Defendants provided notice to this Court of the bankruptcy proceeding on May 16, 2014, and suggested that a stay under §362 of the United States Bankruptcy Code would be appropriate as to all Defendants.  On May 20, 2014, the Court granted an order staying case as to all Defendants and claims.  A few weeks later on June 6, 2014, HashFast LLC filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code, and the bankruptcy cases of both HashFast and HashFast LLC are now being jointly administered.

Pursuant to Northern District of California Local Rule 11-5, Zuber Lawler & Del Duca LLP ("ZLD") filed a motion to withdraw as counsel for Barber and deCastro on September 25, 2014, on the grounds that Barber and deCastro have failed to make timely payment of ZLD's attorney's fees, and have repeatedly failed to return ZLD's phone calls and e-mails[1].

---

[1] The hearing on ZLD's Motion to Withdraw as Counsel for Barber and deCastro will be heard on December 5, 2014.

1   On August 15, 2014, Plaintiff filed a motion for relief from stay with respect
2   to Barber and deCastro only, which this Court granted on October 6, 2014.  Pursuant
3   to this Court's October 6, 2014 order, Barber and deCastro shall file an answer, or
4   otherwise respond to the operative Complaint, on or before October 27, 2014.

5   Although ZLD has moved to withdraw as counsel for Barber and deCastro,
6   ZLD files the instant motion out of an abundance of caution.

7   **B.   <u>Summary of Argument.</u>**

8   HashFast is a limited liability company formed under California law.  Its
9   former Chief Executive Officer and current Chief Technology Officer, Castro and
10  Barber[2], respectively, are recognized entrepreneurs and technology authorities.
11  HashFast manufactured computers known as "mining computers", which are
12  specifically designed for the sole purpose of auditing transaction data on the Bitcoin
13  network.[3]  On August 10, 2013, Plaintiff *pre-ordered* two (2) "Baby Jet" mining
14  computers from HashFast.  At the time Plaintiff placed his pre-order, the Baby Jet
15  units were expected to begin shipping in the October 20-30, 2013 timeframe, in
16  order of purchase.

17  Unfortunately, HashFast was forced to push back the expected October 20-30
18  shipping timeframe due to technical difficulties.  The technical difficulties were
19  since resolved, and HashFast shipped hundreds of units to its customers.  HashFast
20  shipped Plaintiff the machines he ordered, and also offered him a full refund of his
21  purchase price.  Plaintiff rejected both offers and instead commenced this ill-

22

23

24  [2] Barber was previously an engineer and researcher at Palo Alto Research Center, a highly-influential technology think tank behind technologies such as Ethernet, Windows and the mouse.
25  He also served as a technical editor of the IEEE 802.11 standard, and is recognized in the virtual currency community for a seminal paper entitled, "Bitter to Better — How to Make Bitcoin a
26  Better Currency" (http://crypto.stanford.edu/~xb/fc12/bitcoin.pdf).

27  [3] HashFast offered the most powerful Application Specific Integrated Circuit semiconductor for mining Bitcoin, and were designed to make the necessary calculations at a speed 70,000 times
    faster than the fastest Intel CPU.

28

conceived lawsuit, which purports to accuse HashFast, deCastro and Barber of fraud and other claims.

Plaintiff 's Complaint also names HashFast LLC, a limited liability company formed under Delaware law, ("HLLC-D") which is an improper party to this action as it has no relationship with the Plaintiff, or any involvement in the development, manufacturing, and/or sales of the Baby Jet mining computers at issue in Plaintiff's Complaint. In fact, Plaintiff failed to plead *any* facts identifying HLLC-D as a party to *any* of the claims for relief alleged. Plaintiff conveniently groups HashFast and HLLC-D under the term "Hashfast", then conveniently neglects to identify which "Hashfast" sent him his order confirmation, provided notifications of delay, is the entity identified on the www.hashfast.com website to which Plaintiff directs the Court's attention, or that employed Mr. John Skrodenis. If due process requires a sufficiency of the pleadings, it certainly requires Plaintiff to show that each defendant has more connection to the allegations than merely a similar name, or even a corporate affiliation.

Furthermore, Plaintiff's Fraud claim purports to allege that Defendants made false statements regarding (1) the delivery date for the Baby Jets; (2) whether HashFast actually had any Baby Jets in stock at the time Plaintiff placed his order; and (3) the computing power of the Baby Jets and the efficacy of what is called a "Miner Protection Program ("MPP"). However, Plaintiff's purported fraud allegations amount to nothing more than attributing a statement to one or more of the defendants, and then, baldly alleging that the statement is "fraudulent" because, after-the-fact, the statement turned out to be incorrect or because the statement in some fashion was confusing to Plaintiff. Plaintiff's ephemeral fraud allegations are precisely what Fed. R. Civ. P. 9(b) was designed to prevent. To make matters worse, Plaintiff's actual allegations about the circumstances of his purchase do not establish fraud, but, to the contrary, describe a company struggling mightily to launch a very sophisticated piece of technology, experiencing inevitable delays,

1   informing its customers about the delays, and undertaking to compensate its
2   customers by offering a "miner protection program", and refunds.

3          Plaintiff alleges that HashFast falsely stated that the Baby Jet units were "in
4   stock" at the time he placed his order on August 10, 2013, yet Plaintiff admits he
5   knew the expected delivery date was more than two months later.  Furthermore,
6   Plaintiff's Complaint attaches an August 9, 2013 "thread" on the Bitcoin Talk
7   community message board – a community Plaintiff participated in, and which
8   Plaintiff cites as a source for several allegations in this Complaint – in which Barber
9   stated that the Baby Jet's chip design was "almost complete".   Accordingly, the
10  facts as alleged by Plaintiff establish, without a doubt, that he knew his August 10,
11  2013 purchase was a *pre-order*.

12         Plaintiff's Complaint is replete with other allegations which refute the notion
13  that defendants were engaged in fraud.  Plaintiff alleges that the promised Baby Jet
14  delivery date of mid-October 2013 was false.   Yet, Plaintiff admits that on five
15  separate occasions, HashFast provided him updates regarding the reasons for the
16  delays in production, as well as revised expected deliver dates for his order.
17  Plaintiff even admits that HashFast shipped him the machines he ordered after first
18  offering him a full refund of his purchase price.

19         Plaintiff alleges that HashFast's representations about its "miner protection
20  program" were false, although Plaintiff does not allege how or why they were
21  misleading.  Moreover, the very existence of the program, which was modified (in
22  favor of purchasers) to accommodate shipping delays, contradicts the notion of
23  fraud.  The Miner Protection Program relates to the cost to a Bitcoin miner of the
24  Baby Jet as compared to the value of the Bitcoins that are actually "mined".
25  HashFast agreed that if a miner had not collected a sufficient quantity of Bitcoins to
26  offset the price of the Baby Jet, within a specified time period, HashFast would give
27  the buyer additional chips.  HashFast specifically agreed to adjust the time period of
28  this program to accommodate shipping delays.  Plaintiff alleges no facts that the

4

1  efficacy of the MPP was somehow inadequate.

2       Finally, Plaintiff alleges no facts that the published specifications for the

3  Baby Jet's computing power were false.  Instead, Plaintiff quibbles with an aspect of

4  the Baby Jet's performance that was not listed on the specifications.  Although

5  Plaintiff suggests that he was a victim of fraud, his allegations reveal nothing more

6  than a company struggling to release a revolutionary new product, and attempting to

7  protect the value of its customer's investments along the way.  For these reasons,

8  Plaintiff's second claim for relief for Fraud against Barber and deCastro falls far

9  short of meeting the pleading requirements of Fed. R. Civ. P. 9(b).

10       Plaintiff's claims against Barber and deCastro for Breach of Contract,

11  Violations of Cal. Bus. & Prof. Code §§ 17200, et seq., and Declaratory Relief

12  should be also be dismissed because these claims only allege facts as against

13  HashFast, and because Plaintiff pleads absolutely no facts to indicate the existence

14  of an alter-ego relationship between Barber and/or deCastro and HashFast.

15  ## II.   STATEMENT OF FACTS[4]

16      ### A.   Bitcoin and Bitcoin "Mining".

17       Bitcoin is a decentralized virtual currency that enables anyone with a

18  computer to send Bitcoin to anyone else with a computer.  (Complaint ¶¶ 9 & 10.)

19  Unlike ordinary currencies, there is no central government or bank that controls the

20  issuance of Bitcoin or corrects price fluctuations.  (*Id.* ¶¶ 9 & 14.)  Instead, the

21  management of Bitcoin transactions are carried out collectively by the network.  (*Id.*

22  ¶ 10.)

23       Computers are required to audit transaction data.  (*Id.*)  Companies and

24  individuals purchase such computers, sometimes referred to as "Bitcoin computers",

25  and operate them in order to be rewarded by the Bitcoin networks, which distributes

26  _____

27  [4] The allegations referenced in this Statement of Facts are assumed true for purposes of this Motion to Dismiss only.

28

1  Bitcoin to these "miners" depending on the amount of work performed by their
2  computers. (*Id.* ¶¶ 10 & 11.) HashFast manufactured such computers. (*Id.* ¶ 13.)
3        **B.   The Equipment at Issue and Plaintiff's Pre-Order.**
4        HashFast's Bitcoin mining computer was called the "Baby Jet". (*Id.* ¶¶ 17 &
5  19.) Plaintiff alleges that on August 5, 2013, HashFast made a public post on the
6  "Bitcoin Talk" internet message board that it would be shipping the Baby Jet units
7  in October 2013. (*Id.* ¶¶ 15 & 17.) Plaintiff was a participant in the Bitcoin Talk
8  community. (*Id.* ¶ 15.) Plaintiff further alleges that on August 8, 2013, HashFast
9  stated on Bitcoin Talk that it was launching sales of the Baby Jet units and that
10 shipments would begin in the October 20-30, 2013 timeframe, in order of purchase.
11 (*Id.* ¶ 17.) Plaintiff also attaches to his Complaint an August 9, 2013 "thread" on
12 Bitcoin Talk in which Barber stated that the HashFast "team have been working non
13 stop 18 hour days, 7 days a week since [May 2013]" and that "*[t]he chip design is*
14 *almost complete*". (Complaint, Exh. F, page 7.)(*emphasis* added.)
15        On August 10, 2013, Plaintiff visited HashFast's website to decide whether to
16 order a Baby Jet unit. (*Id.* ¶¶ 18 & 19.) Plaintiff alleges that at the time he viewed
17 HashFast's website, on August 10, 2013, the Baby Jet unit was listed as being "in
18 stock".   However, Plaintiff also alleges that the website advised that shipments
19 would not commence until two and one half (2 ½) months later, *i.e.*, on October 20-
20 30, 2013. (*Id.* ¶ 20.) Plaintiff's Complaint is missing Exhibit C, which allegedly
21 shows a screenshot of the HashFast website stating the Baby Jet was "in stock".
22        Plaintiff also alleges that the website was unavailable to process orders on
23 August 10, 2013, and that he contacted HashFast later in the day on August 10, 2013
24 to place his order. (*Id.* ¶ 21.) Plaintiff alleges that in response to his request to place
25 an order, Mr. John Skrodenis, a former HashFast representative, instructed Plaintiff
26 to place his order manually by telephone and email. (*Id.*) Mr. Skrodenis allegedly
27 assured Plaintiff in a subsequent telephone conversation later in the day on August
28

1  10, 2013, that the Baby Jet units would be delivered by October 20-30, 2013. (*Id.* ¶

2  22.)

3    Plaintiff then placed an order for two (2) Baby Jet units on August 10, 2013 at

4  a total cost of $11,507.38 USD. (*Id.* ¶ 23.) Plaintiff alleges to have paid the sum of

5  $11,507.38 USD for two Baby Jets. (*Id.*)  Plaintiff alleges he used the Bitcoin

6  "currency" to make his purchase – at the then effective exchange rate of $104 USD

7  to 1 Bitcoin – and Plaintiff delivered to HashFast 110.647885 Bitcoin. (*Id.* ¶ 26.)

8  Plaintiff's order was order number "M002", which placed him in "Batch 1" of the

9  customers who ordered the Baby Jet, meaning that he would receive the units from

10  HashFast's first batch of production. (*Id.* ¶ 28.)  According to the Complaint,

11  although Plaintiff thought the Baby Jet units were "in stock" at the time he placed

12  his August 10, 2013 order (*Id.* ¶ 39), Plaintiff placed his order with the expectation

13  and understanding that his Baby Jet units would be delivered more than two (2)

14  months later in October 2013. (*Id.* ¶ 29.)

15    Plaintiff alleges that three (3) days *after* he placed his order, on August 13,

16  2013, HashFast announced what is called a "Miner Protection Program" ("MPP").

17  (*Id.* ¶ 30.)  The MPP was designed to, in some measure, protect a miner's

18  investment in the HashFast mining computer. (*Id.*)  Under the terms of the MPP, if

19  a purchaser did not "break even" within ninety (90) days after receiving their Baby

20  Jet mining computer, HashFast would supply the purchaser up to 400% more

21  hashing power in the form of additional modules. (*Id.*)  A "module" is one of

22  HashFast's chips on a printed circuit board to be used in connection with the Baby

23  Jet mining computer. (*Id.*)  Although Plaintiff purports to accuse Defendants of

24  fraud, he flatly admits in his Complaint that HashFast applied the MPP to his order

25  retroactively. (*Id.*)  Plaintiff further admits that "[i]n light of delays in fulfilling

26  customer orders", HashFast ***extended the terms of the MPP*** to "give all customers

27  similarly situated to [Plaintiff] four additional modules some time after February 1,

28  2014, if the customers did not break even through their mining activities." (*Id.* ¶

1  32.)

2      As for the computing power of the Baby Jet unit, Plaintiff alleges that he

3  looked at the published specifications on HashFast's website and that it stated that

4  the Baby Jet chip is capable of processing at a speed of 400 Gh/s (400 billion hashes

5  per second) while consuming 1 watt per Gh/s.  (*Id.* ¶ 33.)  Although Plaintiff

6  purports to include HashFast's statements about the Baby Jet's "computing power"

7  among the purportedly fraudulent statements (*Id.* ¶ 54), Plaintiff ***does not*** allege any

8  facts that the published specifications are false.  (*Id.* ¶ 33.)  Instead, Plaintiff alleges

9  that some aspect about the Baby Jet, which was not addressed in the published

10  specifications, "wasn't clear" to him.  (*Id.*)  Specifically, Plaintiff alleges that "it

11  wasn't clear what the power consumption was" when the Baby Jet chip was

12  "overclocked" to 500 Gh/s (*Id.*; Complaint, Exh. B, page 3).  But Plaintiff does not

13  even allege that this "unclear" aspect of the Baby Jet is false.  (*Id.* ¶ 33.)

14      **C.   Delays in Shipping.**

15      Plaintiff alleges that on October 23, 2013, HashFast sent him an e-mail

16  advising him that his initial order would be delayed because one of HashFast's

17  vendors "had not supplied it with certain components necessary to produce the

18  products in question", and that his order would not be delivered until mid-November

19  2013.  (*Id.* ¶¶ 39 & 40.)  Plaintiff does not allege any facts to even suggest that this

20  explanation is false.  Plaintiff alleges that this message came as a "surprise" to him

21  because at the time he placed his order, Plaintiff believed the Baby Jet units to be

22  "in-stock."  (*Id.* ¶ 39.)

23      However, Plaintiff attaches to his Complaint comments on the Bitcoin Talk

24  community message board by one of HashFast's founders, Barber, which were

25  made about the time Plaintiff placed his order.  Exhibit F to Plaintiff's Complaint

26  contains an August 9, 2013 question to Barber posted on Bitcoin Talk regarding

27  what stage in "design/production" the Baby Jet chip was in.  (Complaint, Exh. F,

28  page 7.)  Plaintiff quotes Barber's August 11, 2013 reply post, that the HashFast

1    "team have been working non stop 18 hour days, 7 days a week since [May 2013]"

2    and that "*[t]he chip design is almost complete*". (*Id.*)(*emphasis* added.) Plaintiff's

3    allegation that he was "surprised" by the delay because he thought his Baby Jets

4    were "in stock" is belied by his admission that, as of the date of his order, he knew

5    that HashFast had not even finished designing the chip, much less commenced

6    fabrication and manufacturing. Plaintiff's allegation that he believed his Baby Jets

7    were "in stock" is further undermined by his citation to an August 9, 2013 post by

8    Barber explaining that HashFast was "still working on the power supply design" for

9    the Baby Jet. (Complaint, Exh. B, page 3.)

10   On November 7, 2013, HashFast sent Plaintiff a second e-mail informing him

11   that his order would not be shipped until mid-December 2013. (*Id.* ¶ 41.) On

12   December 27, 2013, Plaintiff received a third e-mail from HashFast stating that they

13   were "on track to ship orders by December 31 [2013]." (*Id.* ¶ 45.) On December

14   29, 2013, HashFast sent Plaintiff a fourth "follow-up" e-mail stating that they were

15   "kicking off shipments in the next few days", but customers who were interested in

16   refunds could initiate refunds and be paid Bitcoin calculated at the exchange rate on

17   the date of the refund. (*Id.*) On December 31, 2013, HashFast sent Plaintiff a fifth

18   e-mail advising that HashFast "had hoped to resolve reliability issues sooner so that

19   [HashFast] could begin bulk production and be on track to ship Batch 1 customer

20   orders on December 31 [2013]." (*Id.* ¶ 46.) Although Plaintiff purports to include

21   HashFast's statements about "the delivery date" for the Baby Jet, and "whether

22   HashFast actually had any product in stock" among the purportedly fraudulent

23   statements (*Id.* ¶ 54), Plaintiff *does not* allege any facts that any of the above-

24   referenced statements are false. (*Id.* ¶¶ 39-41, 45 & 46; Complaint, Exhs. F, page 7,

25   B, page 3.)

26   **D.    Allegations Against Barber.**

27   Plaintiff alleges that on August 10, 2013, Barber made a public post on

28   Bitcoin Talk that "[o]rders are taken in BTC, in the unlikely event we get to refunds

1  they will be given in BTC." (*Id.* ¶ 25.) Plaintiff does not allege any facts that this

2  statement was false. (*Id.*) Finally, Plaintiff alleges that Barber was an "alter ego" of

3  HashFast. (*Id.* ¶ 4.) Plaintiff's Complaint pleads no additional facts regarding the

4  existence of alter-ego relationship between Barber and HashFast. (*Id.*)

5        **E.**   **Allegations Against deCastro.**

6        Plaintiff alleges that the domain name "hashfast.com" is registered to

7  deCastro. (*Id.* ¶ 18.) Plaintiff further alleges that one (1) day after he placed his

8  order, on August 11, 2013, deCastro made a post on Bitcoin Talk that HashFast

9  would make its October shipping deadline, and that HashFast would "protect" its

10  customers "against hashrate increases". (*Id.* ¶ 37.) Plaintiff does not allege any

11  facts that this statement was false. (*Id.*) Finally, Plaintiff alleges that deCastro was

12  an "alter ego" of HashFast. (*Id.* ¶ 4.) Plaintiff's Complaint pleads no additional

13  facts regarding the existence of alter-ego relationship between deCastro and

14  HashFast. (*Id.*)

15  **III.**   **DISCUSSION**

16        **A.**   **Plaintiff's Second Claim for Relief for Fraud Should Be Dismissed**

17              **Against Barber and deCastro.**

18        To satisfy Fed. R. Civ. P. 9(b), a party alleging fraud must "detail with

19  particularity the time, place and manner of each act of fraud, *plus the role of each*

20  *defendant in each scheme.*" (*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,

21  940 F.2d 397, 405 (9th Cir. 1991)(*emphasis*); *see also Kearns*, 567 F.3d at 1125-26.)

22  In other words, "[a]verments of fraud must be accompanied by the who, what,

23  when, where, and how of the misconduct charged." (*Vess*, 317 F.3d at 1106

24  (internal quotations and citation omitted).) In addition, a complaint must "set forth

25  an explanation as to why the statement or omission complained of was false and

26  misleading." (*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548.) To comply with

27  Fed. R. Civ. P. 9(b), allegations of fraud must be "specific enough to give

28  defendants notice of the particular misconduct which is alleged to constitute the

1   fraud charged so that they can defend against the charge and not just deny that they
2   have done nothing wrong." (*Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).)

3       Here, Plaintiff's second claim for relief for Fraud against Barber and deCastro
4   completely fails to indicate which statements Barber and/or deCastro made that
5   were allegedly false, or when the alleged statements were made.  Plaintiff only
6   alleges that "HashFast and its principals made false statements of material fact to
7   Morici regarding its product, including (1) the delivery date for the product; (2)
8   whether HashFast actually had any product in stock; and (3) the computing power of
9   the product and the efficacy of the MPP." (Complaint ¶ 54.)  Although this claim
10  incorporates by reference all preceding paragraphs to Plaintiff's Complaint (*Id.* ¶
11  49), the entire Complaint only mentions Barber *once*, and deCastro *twice*.

12      Specifically as to Barber, that on August 10, 2013, Barber made a public post
13  on "Bitcoin Talk" that "[o]rders are taken in BTC, in the unlikely event we get to
14  refunds they will be given in BTC." (*Id.* ¶ 25.)  This allegation fails to state with
15  particularity the circumstances constituting fraud or mistake under Fed. R. Civ. P.
16  9(b).  Furthermore, Plaintiff never alleges that he *relied* on this alleged post in
17  placing his order, nor was the refund issue one of the alleged four (4) "false
18  statements of material fact" contained within Plaintiff's second claim for relief for
19  Fraud (delivery date, whether the product was "in stock", the computing power, and
20  the efficacy of the MPP).

21      Specifically as to deCastro, Plaintiff first alleges that the domain name
22  "hashfast.com" is registered to deCastro. (*Id.* ¶ 18.)  This allegation fails to state
23  with particularity the circumstances constituting fraud or mistake under Fed. R. Civ.
24  P. 9(b).  Second, Plaintiff alleges that on or about August 11, 2013 – one day *after*
25  Plaintiff placed his order – deCastro made a post on "Bitcoin Talk" that HashFast
26  would make its October shipping deadline, but that if it did not, HashFast would
27  protect its customers against hashrate increases. (*Id.* ¶ 37.)  Once again, this
28  allegation fails to state with particularity the circumstances constituting fraud or

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) & 9(b)

1  mistake under Fed. R. Civ. P. 9(b). More importantly, Plaintiff could not have

2  relied on deCastro's alleged August 11, 2013 "Bitcoin Talk" post, as Plaintiff admits

3  that he *placed his order one day before* on August 10, 2013. (*Id.* ¶¶ 19 & 23.)

4      Besides these three references to Barber and deCastro – all of which on their

5  face fail to meet the heightened pleading requirements of pleading Fraud under Fed.

6  R. Civ. P. 9(b) – Plaintiff's Complaint never again mentions Barber and deCastro.

7  Accordingly, Barber and deCastro are left to guess as to which statements alleged

8  within Plaintiff's allegations are attributable to them, or claimed to be fraudulent.

9      Plaintiff's mere invocation of the word fraud fails to meet the requirements of

10  Fed. R. Civ. P. 9(b) and is, in fact, contradicted by almost every other allegation in

11  the Complaint which does nothing more than describe a company rushing to deliver

12  products to its customers, and experiencing delays. Plaintiff's bare allegations, in

13  combination with the remaining allegations' inherent lack of credibility, indicate

14  that this is nothing more than a sham pleading. For these reasons, Plaintiff's second

15  claim for relief for Fraud against Barber and deCastro clearly falls short of meeting

16  the pleading requirements of Fed. R. Civ. P. 9(b), *Bell Atlantic Corp. v. Twombly*,

17  550 U.S. 544, *Ashcraft v. Iqbal*, 129 S.Ct. 1937, and their progeny. Accordingly,

18  Plaintiff's second claim for relief for Fraud against Barber and deCastro should be

19  dismissed.

20  **B.      Plaintiff's Claims Against Barber and deCastro for Breach of**

21  **Contract (Claim One), Violation of Cal. Bus. & Prof. Code §§**

22  **17200, et seq. (Claim Three), and Declaratory Relief (Claim Four)**

23  **Should Be Dismissed.**

24      Plaintiff's first, third, and fourth claims for relief for Breach of Contract,

25  Violation of Cal. Bus. & Prof. Code § 17200, et seq., and Declaratory Relief,

26  respectively, never once mention Barber or deCastro. In fact, for all of these claims,

27  Plaintiff alleges facts as against HashFast only. For example, Plaintiff's first claim

28  for relief for Breach of Contract only alleges that "HashFast's failure to deliver the

1975-1005 / 387781 1

12

1   product by its advertised delivery date is a material breach of the agreement."

2   (Complaint ¶ 51.)  Moreover, nowhere in Plaintiff's Complaint does he allege facts

3   that indicate that he entered into a contract with Barber and/or deCastro.  Failure to

4   plead the elements of a Breach of Contract claim warrants a dismissal of that claim.

5   (*Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1 (D. Mass. 2004).)

6       Similarly, Plaintiff's third claim for relief for Violation of Cal. Bus. & Prof.

7   Code § 17200, et seq. alleges that "[t]he acts and practices of HashFast constitute

8   unlawful business acts and practices" (Complaint ¶ 58), and Plaintiff's fourth claim

9   for relief for Declaratory Relief alleges that "HashFast has at several turns attempted

10   to impose onerous terms on [Plaintiff]" (*Id.* ¶ 62).  Plaintiff never alleges facts that

11   somehow tie Barber and/or deCastro to any of these claims for relief.

12       Moreover, under California law, HashFast is a complete and separate entity

13   from Barber and deCastro.   (9 Witkin, Summary of Cal. Law (2002 supp.)

14   Partnership, § 120, pp. 292-293; Cal. Corp. Code § 17000 et seq.;

15   *Warburton/Buttner v. Superior Court* (2002) 103 Cal. App. 4th 1170, 1187-1188.)

16   Other than Plaintiff's boilerplate allegation that "defendants, and each of them, were

17   an owner, a co-owner, an agent, representative and/or alter ego of their co-

18   defendants" (Complaint ¶ 4), Plaintiff's Complaint pleads absolutely no facts to

19   indicate the existence of alter-ego relationship between Barber and/or deCastro and

20   HashFast.  Therefore, this Court is unable to draw a reasonable inference that Barber

21   and deCastro are somehow liable for the alleged misconduct of HashFast.  (*See*

22   *Ashcraft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).)  As such, Plaintiff's Complaint fails

23   to meet the pleading requirements enunciated in *Bell Atlantic Corp. v. Twombly*, 550

24   U.S. 544, 555, 570, *Ashcraft v. Iqbal*, 129 S.Ct. 1937, and their progeny.

25       For these reasons, the first, third, and fourth claims for relief against Barber

26   and deCastro for Breach of Contract, Violation of Cal. Bus. & Prof. Code § 17200,

27   et seq., and Declaratory Relief, respectively, should be dismissed.

28

## IV.   **CONCLUSION**

For the reasons discussed herein, it is clear that Plaintiff cannot amend his Complaint to plead a viable claim for Fraud against Barber and deCastro, or viable claims for Breach of Contract, Violations of Cal. Bus. & Prof. Code §§ 17200, et seq., and Declaratory Relief against Barber and deCastro.  Accordingly, these claims should be dismissed without leave to amend.

Dated:  October 27, 2014                          Respectfully submitted:

                                                                **ZUBER LAWLER & DEL DUCA LLP**
                                                                JEREMY J. GRAY
                                                                MICHAEL D. RESNICK

                                           By:   */s/ Jeremy J. Gray*
                                                                **Attorneys for Defendants,
                                                                Hashfast Technologies LLC, Hashfast
                                                                LLC, Simon Barber, and Eduardo deCastro**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action.** I am employed in the County of Los Angeles, State of California. My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, California 90017.

On October 27, 2014, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SIMON BARBER AND EDUARDO DECASTRO'S MOTION TO DISMISS [FRCP 12(B)(6)]** on the interested parties in this action as follows:

Venkat Palasubramani
FOCAL PLLC
800 Fifth Avenue
Suite 4100
Seattle, WA 98104
Tel: 206-529-4827
Fax: 206-260-3966
Email: venkat@focallaw.com
Attorneys for Plaintiff PETE MORICI

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 27, 2014, at Los Angeles, California.


_/s/ Elena A. Swatek_
Elena A. Swatek

75-1005 / 387781.1