Venkat Balasubramani (SBN 189192)
FOCAL PLLC
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax:    (206) 260-3966
Email: venkat@focallaw.com
Attorneys for Plaintiff
PETE MORICI

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual, | Case No. 5:14-cv-00087-EJD |
|              Plaintiff, | **PLAINTIFF PETE MORICI'S OPPOSITION TO SIMON BARBER AND EDUARDO DECASTRO'S  MOTION TO DISMISS** |
|    v. | |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual, | **HEARING DATE**: |
|            Defendants. | Date:         March 5, 2015<br>Time:        09:00 AM<br>Courtroom: 4, 5th Floor, San Jose<br>Before:    Hon. Edward J. Davila |

1

## <u>TABLE OF CONTENTS</u>

2   INTRODUCTION .........................................................................................................1

3   BACKGROUND AND ALLEGATIONS...................................................................2

4   DISCUSSION ..............................................................................................................3

5       A.   Defendants' Statements Regarding Timing of Delivery and Their Refund Policy
             Satisfy Morici's Pleading Requirements as to Fraud.......................................3

6
            1.   Morici alleges sufficient facts to raise an inference of scienter. ............................4
7
            2.   Equivocal statements from the Bitcoin Talk Forum cannot act as disclaimers........6
8
            3.   The "Miner Protection Program" and vague specifications were part of the
                 deception. ...............................................................................................8
9

10      B.   Morici's Claims Against deCastro and Barber Adequately Alleged Direct
             Participation, Consent to or Approval of the Misrepresentations...................8
11
            1.   deCastro and Barber were the moving force behind the deceptions. .......................9
12
            2.   Morici has pled facts sufficient for vicarious liability consistent with Rule 9....... 10
13
            3.   deCastro and Barber can be held liable for unfair competition claims. ................ 11
14
        C.   Morici Should be Granted Leave to Amend His Claims as Required. .........................12
15
    CONCLUSION..........................................................................................................14

16

17

18

19

20

21

22

23

24

25

26

27

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3

<u>Am. Specialty Health Group, Inc. v. Healthways, Inc.</u>,

4

No.: 11-CV-02819 BEN (KSC), 2012 U.S. Dist. LEXIS 147522 (S.D. Cal. Oct. 12, 2012)... 6, 7

5

<u>Auxo Med., LLC v. Ohio Nat'l Life Assur. Corp.</u>,

6

No.: 3:11cv259-DWD, 2011 U.S. Dist. LEXIS 97089 (E.D. Va. Aug. 30, 2011) ..................... 10

7

<u>Chelini v. Nieri</u>,

8

32 Cal. 2d 480 (1948) .............................................................................................................. 5

9

<u>Corvello v. Wells Fargo Bank, NA</u>,

10

728 F.3d 878 (9th Cir. 2013) ................................................................................................... 8

11

<u>Emery v .Visa International Service Assoc.</u>,

12

95 Cal. App. 4th 952 (2002) .................................................................................................. 11

13

<u>Eminence Capital, LLC v. Aspeon, Inc.</u>,

14

316 F. 3d 1048 (9th Cir. 2003) .............................................................................................. 14

15

<u>Foman v. Davis</u>,

16

42 Cal. 3d 490 (1986) .............................................................................................................. 9

17

<u>Frances T. v. Village Green Owners Assn.</u>,

42 Cal. 3d 490 (1986) .............................................................................................................. 9

18

<u>Glen Holly Entertainment, Inc. v. Tektronix, Inc.</u>,

19

100 F. Supp. 2d 1086 (C.D. Cal. 1999) ................................................................................... 5

20

<u>Guaranty Residential Lending, Inc. v. International Mortg. Center, Inc.</u>,

21

305 F. Supp. 2d 846 (N.D. Ill. 2004) .................................................................................... 10

22

<u>In re Glenfed Inc. Securities Litigation</u>,

23

42 F.3d 1541 (9th Cir. 1994) ................................................................................................... 3

24

<u>Lachmund v. ADM Investor Services</u>,

25

191 F.3d 777 (7th Cir. 1999) ................................................................................................. 10

26

<u>Lazar v. Superior Court</u>,

27

12 Cal. 4th 631 (1996) ............................................................................................................. 5

Leyvas v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices

  Litig.), 601 F. Supp. 2d 1201 (S.D. Cal. 2009)........................................................................ 11

Lockheed Martin Corp. v. Network Solutions, Inc.,

  194 F.3d 980 (9th Cir. 1999) ....................................................................................................... 14

Moore v. Kayport Package Exp., Inc.,

  885 F.2d 531 (9th Cir. 1989) ....................................................................................................... 10

Neubronner v. Milken,

  6 F.3d 666 (9th Cir. 1993) ............................................................................................................. 3

People v. Toomey,

  157 Cal. App. 3d 1 (1984) ........................................................................................................... 12

People v. Witzerman,

  29 Cal. App. 3d 169 (1972) ......................................................................................................... 12

PMC, Inc. v. Kadisha,

  78 Cal. App. 4th 1368 (2000) ........................................................................................................ 9

Schneider v. County of Sacramento,

  No.: 2:12-cv-2457 KJM JFM, 2013 U.S. Dist. LEXIS 97295 (E.D. Cal. July 10, 2013) .......... 13

Spahn v. Guild Industries Corp.,

  94 Cal. App. 3d 143 (1979) ........................................................................................................... 9

Trujillo v. City of Newton,

  No.: 12-CV-2380, 2013 U.S. Dist. LEXIS 18516 (D. Kan. Feb. 12, 2013) ............................... 13

Wilkins v. NBC,

  71 Cal. App. 4th 1066 (1999) ........................................................................................................ 3

ZooBuh, Inc. v. Better Broadcasting, LLC,

  No.: 2:11cv00516-DN (D. Utah May 31, 2013) ............................................................................ 7

**Statutes**

Fed. R. Civ. P. 15(a) ...................................................................................................................... 15

**INTRODUCTION**

Plaintiff Pete Morici ("***Morici***") brings claims against Simon Barber, Eduardo deCastro, and two HashFast entities (collectively, "***Defendants***") alleging that they misrepresented the availability, delivery dates and refund terms of two "Baby Jet" Bitcoin mining computers that Morici ordered from Defendants. The claims against the entity defendants are stayed. Messrs. Barber and deCastro (the "***Individual Defendants***") request the Court to dismiss claims against them, pointing to circumstances relating to Morici's order, as well as statements made on an online community message board relating to Bitcoin, which the Individual Defendants argue indicate that Morici must have known that the Baby Jet machines would not be delivered by a date certain. They also argue that they merely made statements regarding *expected* delivery dates that were ultimately changed for reasons beyond their control, and therefore they could not have engaged in fraud. However, far from being hapless victims of circumstances beyond their control, the Individual Defendants either directly or indirectly made a series of pointed representations and provided assurances—regarding Defendants' ability to timely deliver the machines—that they knew were implausible. Morici need only allege what particular statements were made and sufficient facts to provide an inference of scienter. This included the facts that Baby Jet machines were listed on the HashFast website as "in stock" at the time of the order, that Morici's machines would be shipped by a certain date, and that Morici would be refunded (if requested) the Bitcoin used to purchase the machines. Indeed, cognizant of the importance of delivery dates and in response to customer outcry, Defendants made subsequent assurances. Defendants failed to honor any of these commitments, and belatedly delivered a non-conforming product to Morici after he engaged counsel to pursue his rights and validly revoked his order. Morici adequately alleges that both Individual Defendants were deeply involved in encouraging customers, including Morici, to purchase the Baby Jets. The website where Morici viewed the product and its specifications (and which listed Baby Jets as "in stock") was made available via a domain name that was registered to deCastro personally. Both Barber and deCastro were active participants in an online Bitcoin forum where they repeatedly encouraged

customers and provided assurances regarding Defendants' ability to timely deliver. Given their material participation, and their status as founders and executives of both HashFast entities, they cannot now wash their hands of the wrongdoing. They can be held liable both for the misleading statements of the HashFast entities as well as the related unfair business practices.

For the reasons set forth herein, the Court should deny the Individual Defendants' motion to dismiss. In the event the Court grants the Individual Defendants' motion in whole or in part, Morici respectfully requests leave to amend his claims to remedy any deficiencies. The Individual Defendants do not, and indeed cannot, argue that Morici's claims fail as a matter of law.

## BACKGROUND AND ALLEGATIONS

Morici alleges that he was misled into purchasing Bitcoin mining equipment from Defendants. Of critical importance to someone in Morici's position, he alleges that he was deceived as to a key aspect of the transaction: the timing of delivery. (*See* Complaint ¶¶ 17, 20 & 22.) From Morici's vantage point, he placed an order, after being assured that he would be given delivery of the product within a certain period of time, and subsequently received a series of emails dragging out the delivery dates. (Id. ¶¶ 39, 40 & 41.) Eventually, growing tired of Defendants' stringing him along, Morici cancelled his order and requested a refund. (Id. ¶ 43.) As per the terms of Defendants' promise and Morici's understanding, he simply requested return of the Bitcoin that he had paid. (Id.) According to Morici's allegations, not only was he refused the refund as promised, Defendants attempted to impose an additional condition on him in order to obtain a refund—acceptance and signature of a waiver and release form. (Id. ¶ 47.) Ultimately, despite his cancellation, Defendants belatedly shipped him a non-conforming product which Morici did not accept. (Id. ¶ 48.)

Morici brings claims for breach of contract, fraud, unfair business practices under Cal. Bus. and Prof. Code §17200, *et seq.*, and declaratory relief. Defendants filed a motion to dismiss, seeking dismissal of various claims. In response to the initially filed motion to dismiss (Dkt. 13), Morici clarified that he is not bringing claims for breach of contract or for declaratory

relief against the Individual Defendants. (*See* Dkt. 20, Response to Motion to Dismiss.) While the initially filed motion to dismiss was pending, both HashFast entities entered bankruptcy proceedings, and Defendants filed a notice of bankruptcy and suggestion for a stay. (Dkt. 22.) The Court stayed this lawsuit as to all defendants (Dkt. 23), but at Morici's request granted relief from stay as to the Individual Defendants. (Dkt. 29.) That Order required the Individual Defendants to respond to Morici's complaint within 14 days. The Individual Defendants then filed the instant motion to dismiss.

**DISCUSSION**

**A.    Defendants' Statements Regarding Timing of Delivery and Their Refund Policy Satisfy Morici's Pleading Requirements as to Fraud**

Under California law, fraud consists of: (1) a representation; (2) that is known to be false; (3) made with the intent to defraud; (4) that induces reliance; and (5) causes damage. Wilkins v. NBC, 71 Cal. App. 4th 1066, 1081 (1999). In federal court, a claim for fraud must meet the heightened pleading requirements of Rule 9 (*i.e.*, allege the "who, what when, where" of the statements); however, a plaintiff is not required to allege the facts giving rise to an inference of scienter with particularity. In re Glenfed Inc. Securities Litigation, 42 F.3d 1541, 1550 (9th Cir. 1994). Rule 9(b)'s pleading requirements are relaxed when it comes to matters "particularly within the opposing party's knowledge." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). Indeed, a plaintiff "cannot be expected to have personal knowledge" regarding an opposing party's state of mind. Id.

Morici satisfies the pleading standard with respect to his fraud claim. Morici alleges that Defendants misled him regarding the availability of Baby Jet machines and the timing of the shipments. Specifically, Morici points to the following statements: (1) Defendants stated that shipments would begin in late October and stated multiple times that delivery would occur in a timely fashion; (2) the HashFast website stated that Baby Jet machines were "in stock" when they were not (to add an air of veracity, the HashFast website included an actual number that it

purportedly had in stock: "503");[1] and (3) in response to a specific question as to whether someone would get "the same amount of BTC back," Mr. Barber stated that refunds, if warranted, would be provided in Bitcoin.[2] (Complaint ¶¶ 17, 20 & 25.) All of these statements were made online, via the HashFast website or the Bitcoin Talk forum, and Morici specifies the date and speaker for the statements, as well as provides links to the statements in question. Defendants cannot credibly argue that Morici's allegations fail to satisfy the "who, what, when and where" requirement imposed by Rule 9(b).

The Individual Defendants argue in summary fashion (as did the Defendants in the initially filed motion) that Morici fails to allege reliance, but to find that Morici failed to adequately allege reliance would be to ignore the crux of the entire transaction and Morici's Complaint. Morici has alleged that the timing of receipt of mining Bitcoin mining equipment is crucially important (Complaint ¶ 11); that a Bitcoin mining machine continually becomes less valuable over time (Id. ¶ 12); that he decided to purchase a HashFast Bitcoin mining machine, in part, because of the product specification and delivery date representations made by Defendants (Id. ¶ 19); and that in choosing to purchase a Baby Jet he "relied on HashFast's representations and warranties on the Site, including HashFast's claim that it had units of the Baby Jet 'in stock' and that shipments would begin 'October 20-30.'" (Id. ¶ 20.) These statements unambiguously allege reliance. The key issue thus is whether Morici adequately alleges that the statements in question were fraudulent.

       1.    *Morici alleges sufficient facts to raise an inference of scienter.*

Defendants argued initially that Morici cannot state a claim because his allegations go to

---

[1] The Individual Defendants claim that Exhibit C is "missing" from the Complaint. (Motion, p. 6, lns. 20-21.) However, the PACER online docket reflects this Exhibit as available online. *See* Dkt. 1-3.

[2] Defendants argue as to the refund allegation that it is somehow legally deficient because it is not included among the list of false statements that are cited in paragraphs 53 through 56 of the Complaint (Motion, pg. 11, lns. 17-19). Defendants cite no authority for such a restrictive reading of a plaintiff's complaint; nor is there any. To the contrary, the offer of a full refund of the actual amount of Bitcoin paid was a representation made by Defendants that encouraged customers, like Morici, to order the product, even though credit card processing was not available. Moreover, Morici has alleged that the refund offered by Defendants was not a full refund in Bitcoin as promised, and that in order to obtain *any* refund, Morici would have to satisfy additional conditions that had never before been disclosed, including a release of claims. (Complaint ¶ 63.) These allegations are sufficient to state a fraud claim based on Defendants' refund policy.

"predictions as to future results or events, which cannot support a fraud claim." (Original Motion, p.13.) According to Defendants, it is "hornbook law" that "statements regarding future events are merely deemed opinions." Id. This is incorrect. Numerous cases recognize that a defendant who enters into a contract, or makes a promise, without any intention of performing can be held liable for fraud. Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."). Indeed, even a statement regarding a date-certain for performance or delivery can support a fraud claim, to the extent the promisor has doubts about his or her ability to perform. Chelini v. Nieri, 32 Cal. 2d 480, 487 (1948) ("tort of deceit" adequately pled where plaintiff alleges defendant induced plaintiff to enter into an agreement that defendant knew he could not perform). That is precisely what Morici alleges occurred here. Rule 9's particularly requirement also requires some allegation as to why the statements in question were fraudulent. A plaintiff may not rely on neutral facts or simply allege that "things turned out differently." Rather, the plaintiff must make some allegations that give rise to an inference of scienter. Glen Holly Entertainment, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1084 (C.D. Cal. 1999). Morici satisfies this standard also.

First, the statements cited by the Individual Defendants for the proposition that Morici and others could not have believed that HashFast would have Baby Jets in stock, and would adhere to the promised delivery deadline (see generally, Motion at pp. 3-5), equally support the contrary inference: that Defendants knew there were no machines in stock, and knew or had doubts regarding their ability to meet their delivery schedule, but they nevertheless provided assurances to customers regarding availability and delivery. While the Individual Defendants repeatedly characterize Morici's attempt to purchase the machines as a "pre-order," there is no dispute that the timing of delivery was critically important and that Defendants (including the Individual Defendants) made specific statements regarding the timing. Second, the Individual Defendants argue that their repeated updates to customers demonstrate that they were being

1   open and transparent with their customers. Again, this fact equally supports a contrary

2   inference—*i.e.*, Defendants were stringing along their customers. The Individual Defendants'

3   argument that they shipped the machine to Morici is also of no consequence. Not only did the

4   shipment come too little too late, and after Morici validly exercised his right to revoke the order,

5   Morici had no assurance that the shipment was even conforming. In fact, the available

6   information indicates to the contrary.

7       The Individual Defendants further argue that the context of the transaction undermines

8   Morici's claim of fraud, but this too supports Morici's version of events. Given that the

9   community and the Individual Defendants all knew of the time-sensitive nature of the delivery

10  of the machines, representations regarding availability of the machines and their delivery dates,

11  along with follow-up assurances, only served to mislead unwitting prospective customers. It is

12  particularly telling that HashFast's executives acknowledged doubts from customers and

13  reassured the community that shipments would be timely. They were so sure of this that they

14  made a guarantee that everyone would be made whole. If, as the Individual Defendants now

15  argue, the timeliness of the shipments was in question the entire time, neither the HashFast

16  entities nor their executives gave the slightest hint of any doubts or contingencies.

17      2.    *Equivocal statements from the Bitcoin Talk Forum cannot act as disclaimers.*

18      The Individual Defendants point to stray statements on the Bitcoin Talk forum, and

19  argue that these statements somehow undermine or mitigate the Individual Defendants'

20  misleading statements regarding the delivery date. For example, the Individual Defendants point

21  to two forum posts by Simon Barber, one stating that "the chip design [for the Baby Jet] was

22  almost complete," and another stating that HashFast was "still working on the power supply

23  design." (Motion, pp. 4, 9.) According to the Individual Defendants, these statements somehow

24  neutralize the fraudulent statements regarding delivery dates. However, "[d]isclaimers or

25  qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently

26  prominent and unambiguous to change the apparent meaning of the claims and to leave an

27  accurate impression." Am. Specialty Health Group, Inc. v. Healthways, Inc., No.: 11-CV-02819

1   BEN (KSC), 2012 U.S. Dist. LEXIS 147522, *15 (S.D. Cal. Oct. 12, 2012) (quoting

2   Removatron Int'l Corp. v. F.T.C., 884 F.2d 1489, 1497 (1st Cir. 1989)). The Individual

3   Defendants do not argue, and Morici does not concede, that the statements satisfy the

4   prominence requirement. Indeed, one of the statements is not a part of the Exhibit attached to

5   the Complaint; it is a part of a different posting that is not cited in or attached to the Complaint.

6   (*Compare* Motion, p. 12 ("Plaintiff's allegation . . . is further undermined by his citation to an

7   August 9, 2013 post by Barber explaining that HashFast was "still working on the power supply

8   design . . .") *with* Ex. B (Dkt.1-2) (consisting of one page and referencing an August 8, 2013

9   post.) Surely, the Individual Defendants cannot argue that Morici should be charged with

10  knowledge of all posts on the Bitcoin Talk message board, and there is no authority for such a

11  far-reaching proposition. Am. Specialty Health Group, Inc. v. Healthways, Inc., 2012 U.S. Dist.

12  LEXIS 147522 at 15 (website disclaimer insufficient to neutralize misleading statement in

13  online directory); ZooBuh, Inc. v. Better Broadcasting, LLC, No.: 2:11cv00516-DN (D. Utah

14  May 31, 2013) (remotely hosted images can't provide clear and conspicuous disclosure in

15  email).

16         But there is a more fundamental problem with the statements cited to by the Individual

17  Defendants, even if they were communicated to Morici: they are not "unambiguous." Barber's

18  post about the chip design being "almost complete" also includes a statement that they are

19  "confident [they] can deliver," and also acknowledges the "importance of schedule." Even

20  assuming Morici was made aware of the August 9, 2013 statement by Barber advising that

21  Defendants were "working on the power supply design," this statement is similarly insufficient

22  to neutralize the numerous assurances provided by the Individual Defendants that they were

23  "confident [they] can deliver," "on track," and that they "understand the importance of

24  schedule."

25         In summary, the statements cited by the Individual Defendants for the proposition that it

26  was unreasonable for Morici to believe that delivery would occur in October were neither

27  "prominent" nor "unambiguous," and cannot operate as disclaimers that negate Defendants'

1  numerous prior and subsequent representations. At a minimum, the statements cited to by

2  Individual Defendants raise issues of fact that are not properly addressed on a motion to

3  dismiss. Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 885 (9th Cir. 2013) (factual dispute

4  inappropriate for resolution at motion to dismiss stage).

5

6         3.     *The "Miner Protection Program" and vague specifications were part of the deception.*

7       Finally, the Individual Defendants point to the Miner Protection Program and the

8  specifications for the machines and argue that there is nothing misleading about these. (Motion ,

9  p.  4.) Morici is not necessarily bringing a standalone fraud claim based on statements relating

10  to the Miner Protection Program or the specifications.[3] Rather, these allegations go towards

11  supporting Morici's argument that Defendants took steps to mislead consumers in order to

12  obtain orders. Both the processing power of the machines in question and supposed steps

13  Defendants would take to protect customers against the relative decrease in processing power

14  that would be occasioned by a delay in shipment were closely related to the delivery date.

15  Again, both of these merely underscore the critical importance of timing with respect to the

16  shipment, and highlight the fact that the HashFast entities understood and took steps to provide

17  assurances to their customers regarding this. Indeed, Morici's allegations point in the direction

18  that Defendants, including the Individual Defendants, made misleading statements regarding the

19  timing of delivery and whether it would make economic and financial sense for customers to

20  order machines from them, all to generate funds from sales without any intention to deliver on a

21  timely basis. To make matters worse, Defendants refused to refund the Bitcoin as promised, and

22  took advantage of the rise in value in Bitcoin.

23  **B.**    **Morici's Claims Against deCastro and Barber Adequately Alleged Direct**
24      **Participation, Consent to or Approval of the Misrepresentations**

25      The Individual Defendants attempt to distance themselves from the wrongful acts

26

27      [3] The Complaint at paragraph 54 inadvertently includes statements regarding "the computing power . . . and the efficacy of the MPP" in the list of misleading statements instead of statements regarding Defendants' refund policy.

alleged in the Complaint, arguing that the entire Complaint "only mentions Barber Once, and deCastro twice." (Motion, p. 11.) As an initial matter, Morici alleges that both deCastro and Barber themselves made false or misleading representations on the Bitcoin Talk forum which are consistent with those alleged to be made by HashFast. (Complaint ¶¶ 25 & 37.) There should be no dispute as to whether deCastro and Barber can be held liable for these statements. Moreover, given their participation in the overall scheme, they can be equally held liable for the misleading acts of each other and of the entities.

       1.    *deCastro and Barber were the moving force behind the deceptions.*

Contrary to deCastro and Barber's assertions, a corporate director or officer's "participation in tortious conduct may be shown not solely by direct action but also by knowing consent to or approval of unlawful acts." PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1380 (2000). Indeed, as the California Supreme Court has held, a corporate officer or director can be held liable in her personal capacity where they "authorized, directed or participated in the allegedly tortious conduct" or where "although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm." Frances T. v. Village Green Owners Assn., 42 Cal. 3d 490, 508 (1986). Some courts state that the appropriate standard is whether "an ordinary prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances." PMC, Inc. v. Kadisha, 78 Cal. App. 4th at 1380. In Spahn v. Guild Industries Corp., the Court of Appeal held officers and directors of a corporation were personally liable for fraud committed by a managerial employee because they "knew about and allowed the tortious conduct to occur." Spahn v. Guild Industries Corp., 94 Cal. App. 3d 143, 157 (1979).

Morici's allegations easily satisfy the above standards. First, Morici alleges that both deCastro and Barber are founders and officers of HashFast. (Complaint ¶ 3.) Second, Morici alleges that both deCastro and Barber were active participants in the Bitcoin Talk forum, including on the very message strings that contained false or misleading statements made by

1   other HashFast officers. (Complaint ¶¶ 17 & 25 (both referencing message string #262052).)

2   Morici's allegations support the inference that deCastro and Barber were aware of statements

3   made by other HashFast officers and controlled or tacitly encouraged them.

4         2.     *Morici has pled facts sufficient for vicarious liability consistent with Rule 9.*

5         The Individual Defendants cite to Rule 9(b) cases and argue that a plaintiff must allege

6   with particularity "the role of each defendant in each scheme." (Motion, p. 10.) However, this

7   overstates Rule 9(b)'s requirements for alleging derivative liability. As set forth above,

8   California law only requires an allegation of "knowing consent to or approval of" the acts in

9   question. The federal pleading rules do not impose a more stringent requirement. In the context

10  of a fraud suit involving multiple defendants, a plaintiff must only "identif[y] the role of [each]

11  defendant[ ] in the alleged fraudulent scheme." <u>Moore v. Kayport Package Exp., Inc.</u>, 885 F.2d

12  531, 541 (9th Cir. 1989). As articulated by the Seventh Circuit in <u>Lachmund v. ADM Investor</u>

13  <u>Services</u>, the purpose of Rule 9(b) is: "to ensure that the party accused of fraud, a matter

14  implying some degree of moral turpitude and often involving a 'wide variety of potential

15  conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the

16  fraud so that the accused party may file an effective responsive pleading." <u>Lachmund v. ADM</u>

17  <u>Investor Services</u>, 191 F.3d 777, 783 (7th Cir. 1999). In light of Rule 9(b)'s purpose, the

18  Seventh Circuit held in <u>Lachmund</u> that an agency relationship establishing vicarious liability for

19  fraud generally does <u>not</u> have to be pleaded with particularity. *See also* <u>Auxo Med., LLC v.</u>

20  <u>Ohio Nat'l Life Assur. Corp.</u>, No.: 3:11cv259-DWD, 2011 U.S. Dist. LEXIS 97089, *10 (E.D.

21  Va. Aug. 30, 2011) ("it seems that the Defendant wants to impose Rule 9's particularity

22  requirements on the Plaintiff's allegations of agency and vicarious liability. There is no

23  authority for such a proposition, and the Court will not fashion such a pleading requirement

24  absent controlling authority on the issue"); <u>Guaranty Residential Lending, Inc. v. International</u>

25  <u>Mortg. Center, Inc.</u>, 305 F. Supp. 2d 846, 853 (N.D. Ill. 2004) ("An agency relationship

26  establishing vicarious liability for fraud generally does not have to be pleaded with

27  particularity."). Morici adequately alleges the roles of the Individual Defendants in the overall

1   scheme: both were founders, owners, and officers of the HashFast entities, and were involved in

2   the misleading representations around the sales of HashFast products by making statements on

3   the HashFast website and the message boards. It is fair to presume that as founders, executives,

4   and officers who made extensive marketing statements regarding the availability of the product

5   (and whose statements were consistent with the statements of the entity), Barber and deCastro

6   exerted control over the representations in question. This is sufficient under Rule 9 standards.

7          *3.      deCastro and Barber can be held liable for unfair competition claims.*

8          The Individual Defendants also argue that they cannot be held liable for the misleading

9   practices claims under Cal. Bus. & Prof. Code § 17200, et seq., because they were not alleged to

10  have made any of the statements. (Motion, p. 13.) However, Morici's claims under § 17200 are

11  premised on the unfair practice of selling a product while making misleading claims about the

12  availability of the product. Morici adequately alleges that the Individual Defendants participated

13  and exercised control over the practices in question. Indeed, Morici has alleged that both

14  Individual Defendants made numerous public statements relating to the availability of the

15  product and the terms of the transaction, and one of the Individual Defendants held the domain

16  name through which the product was advertised in his name individually. This widespread

17  involvement and control is sufficient to state a claim against them under § 17200. Leyvas v.

18  Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.), 601

19  F. Supp. 2d 1201, 1220 (S.D. Cal. 2009) (rejecting defendants' argument that they could not be

20  held liable because "the misrepresentations and nondisclosures, were made by the individual

21  brokers" and noting that defendants' argument "ignores the gist of plaintiffs' claims").

22         The scope of liability based on participation and control is illustrated by several

23  California cases. In Emery v .Visa International Service Assoc., plaintiff tried to hold Visa

24  liable for the sales of overseas lottery tickets in California. The court granted Visa's request for

25  summary judgment noting that there was insufficient evidence of participation by Visa, and

26  merely lending its logo and having knowledge of the acts were not sufficient. Emery v .Visa

27  International Service Assoc., 95 Cal. App. 4th 952, 956-7 (2002). In contrast, in People v.

1  <u>Witzerman</u> the court found that partners in a sales agency could be held liable for engaging in

2  misleading business practices because they actively participated in the sale of "cattle care

3  contracts" based on misrepresentations. <u>People v. Witzerman</u>, 29 Cal. App. 3d 169, 180-181

4  (1972). Similarly, in <u>People v. Toomey</u>, Toomey, the president of Holiday Funshine, was

5  personally responsible for the sales of discount coupon books by the company's employees and

6  distributors. <u>People v. Toomey</u>, 157 Cal. App. 3d 1, 22 (1984). While Toomey's position as

7  president alone was not a sufficient basis for personal liability, the court imposed liability

8  because Toomey controlled the company practices at issue:

9

10
> He orchestrated all aspects of the business. Overwhelming evidence shows that he
> prepared the solicitation scripts, determined the content of coupon packages to be sold,
> and directed the refund policy which the company followed.

11  <u>Id.</u> As to the acts of the distributors, the court said Toomey was the "moving force" behind the

12  coupon sales program and a joint participant. <u>Id.</u> at 15-16.

13      Morici's allegations against the Individual Defendants are similar to those held sufficient

14  to form the basis of individual liability in <u>Witzerman</u> and <u>Toomey</u>. Morici alleges that deCastro

15  and Barber exercised control over and were the "moving force" behind the misleading practices.

16  Morici has alleged that both actively promoted HashFast products in the online community and

17  made statements consistent with those alleged by Morici to be misleading. Additionally, Morici

18  has alleged that deCastro owned the domain name (hashfast.com) associated with the HashFast

19  website (and on which misleading statements were alleged to have been published). At the

20  pleading stage, these allegations easily suffice to state claims against deCastro and Barber in

21  their individual capacities.

22  **C.    Morici Should be Granted Leave to Amend His Claims as Required**

23      Rule 15 provides that a party may amend its pleading as a matter of course (i.e., without

24  leave) within 21 days after service of a responsive pleading or service of a motion under Rule

25  12(b), (e), or (f), "whichever is earlier." The text of the rule is not clear on whether Morici may

26  amend his Complaint as a matter of course here (*i.e.*, because the 21-day time period

27  commencing on the filing of Defendants' initial motion has elapsed). The Advisory Notes and

case law point in the direction that the 21-day time period is not re-set as of the filing of an amended motion, and thus leave is required. See Advisory Notes to Rule 15; Trujillo v. City of Newton, No.: 12-CV-2380, 2013 U.S. Dist. LEXIS 18516 (D. Kan. Feb. 12, 2013) (finding no right to amend where defendant filed an answer then a motion to dismiss and plaintiff filed an amended complaint within 21 days after the motion to dismiss but more than 21 days past the filing of an answer); Schneider v. County of Sacramento, No.: 2:12-cv-2457 KJM JFM, 2013 U.S. Dist. LEXIS 97295 (E.D. Cal. July 10, 2013) (in a multiple-defendant case, finding that the 21-day period to amend as a matter of course "begins on the date of the earliest defense action"). In an abundance of caution, Morici seeks leave to amend his Complaint to remedy any deficiencies as may be identified by the Court.

The bankruptcy of the HashFast entities has unearthed numerous facts relevant to Morici's claims against the Individual Defendants. For example, records from the Hashfast Defendants' bankruptcy filing as well as the Hashfast Defendants' press releases indicate that, at the time the Individual Defendants were making promises regarding delivery dates in August 2013, they did not yet have a signed agreement for production of the hyped micro-chip for the Baby Jet computer. (Exhibit B to the Declaration of Venkat Balasubramani submitted in support of Motion for Relief from Stay (Schedule G) (Dkt. 25-2).) The agreement was not executed until September 6, 2013. Id. Unlike a typical consumer product, the Individual Defendants knew that timing of delivery was crucial to the Baby Jet's value. As Mr. Barber has stated referring to the value of his chip design, "in this Bitcoin mining space, the value changes rapidly over time," and in reference to the value of the chip to his customers, Mr. Barber acknowledged that the "the Bitcoin market moves very, very quickly" and that competition in the "Bitcoin mining market" would cause a fast decrease in its value to its customers.  (Meeting of Creditors, p. 59, lines 1-3 and p. 60, lines 9-21 (Balasubramani Decl., Ex. A) (Dkt. 25-1).) Further, the available evidence to-date suggests that the Individual Defendants had no intention of taking any steps to retain Bitcoin balances for refunds as they promised. At a time when requests for refunds were increasing, the Individual Defendants admit that they paid bonuses to employees, including to themselves, in Bitcoin in December of 2013. (Id., p. 21, lines 4-18; p. 31, lines 14-25.)

Additionally, Bitcoins were sold to cover the cash flow needs of the Company. (Id., p. 37, lines 18-19.) In January of 2014, the Individual Defendants voted to give themselves substantial raises, even as liabilities mounted. (Id., p. 39, lines 12-25; p. 40, lines 1-25.) These statements alone are sufficient to make a claim for fraud and unfair business practices on the part of the Individual Defendants, and cast doubt on their claims of being hapless victims of circumstance.

The Individual Defendants would not suffer any prejudice if Morici is granted leave to amend his Complaint against them. Leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. FED. R. CIV. P. 15(a). Rule 15(a) provides that the court should "freely give leave when justice so requires." Id. As the Ninth Circuit has noted, "[t]his policy is to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. Foman v. Davis, 371 U.S. 178, 182 (1962); Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999). Here, none of those factors exist. The case has been stayed for much of the time after its filing, and the parties have not had a chance to test the efficacy of Morici's allegations. Additionally, Morici has gleaned additional information through the bankruptcy of the HashFast entities, and there is no dispute that he did not previously have access to this information. In these circumstances, Morici respectfully requests that leave should be granted.

**CONCLUSION**

Morici's allegations—which specify the "who, what, when, and where" of the misleading statements—more than satisfy the pleading requirements for fraud. Morici adequately alleges what makes them fraudulent, and the allegations are sufficient to put defendants on notice and defend against them. The Individual Defendants' request to be dismissed from the lawsuit should be denied. As Morici alleges, not only did they make misleading statements and assurances regarding the delivery date and refund terms, they were

1    deeply involved and exerted control over the statements and transaction in question. Thus they

2    can be held liable for fraud and for the claims under § 17200.

3           The Court should decline to grant the Individual Defendants' motion to dismiss.

4    However, to the extent it decides to grant the Individual Defendants' motion, Morici

5    respectfully requests leave to amend his Complaint to remedy any deficiencies.

6           Dated: November 10, 2014

7                                             Respectfully submitted,

8                                             FOCAL PLLC

9                                       By: *s/Venkat Balasubramani*
10                                            Venkat Balasubramani, SBN 189192

11                                            Attorneys for Plaintiff
12                                            PETE MORICI

1

**CERTIFICATE OF SERVICE**

2      I certify that on March 10th, 2014, I filed the foregoing **PLAINTIFF PETE**

3   **MORICI'S OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

4   using the Court's CM/ECF system which will send notification of such filing to all counsel of

5   record.

6      DATED: November 10, 2014.

7
                                        *s/ Venkat Balasubramani*
8                                       Venkat Balasubramani, SBN 189192

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27