CRAIG A. PINEDO (Cal. Bar No. 191337)
Email:  cpinedo@pinedolaw.com
PINEDOLAW
275 Battery Street, Suite 200
San Francisco, CA  94111
Telephone:     415-693-9155
Fax No.:        415-524-7564

Attorneys for Defendant SIMON BARBER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual,<br><br>                    Defendants. | Case No.  14-CV-00087-EJD<br><br>**DEFENDANT SIMON BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:           March 5, 2015<br>Time:          9:00 a.m.<br>Courtroom: 4, 5th Floor<br>                    280 South 1st Street<br>                    San Jose, CA  95113 |

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA  94104
415-693-9155

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Simon Barber (Barber) respectfully submits this reply brief in support of his motion to dismiss the Complaint filed by plaintiff Peter Morici (plaintiff).[1]

## I. INTRODUCTION

Plaintiff's Complaint is a textbook example of the type of speculative pleading, devoid of specific factual allegations, that Rules 12(b)(6) and 9(b) were intended to weed out at the pleading stage. Far from offering any reason not to dismiss all claims against Barber now, plaintiff's opposition only underscores why Barber's motion to dismiss plaintiff's fraud and UCL claims should be granted with prejudice. Specifically, plaintiff has not—and in some cases, does not even try to—overcome any the following pleading defects:

- his fraud-based claims are predicated on nonactionable predictions of future events (e.g., projected shipping dates) or commitments to take actions in the future (e.g., stating that refunds, if necessary, "will be paid" in Bitcoin);
- he has not alleged specific facts demonstrating Barber (or any Hashfast employee) made any knowingly false representation;
- he has not alleged facts showing Barber (or any Hashfast employee) made any false statement with the intent to defraud plaintiff; and
- he has not alleged facts showing he justifiably relied on any false statement.

Plaintiff's Complaint also suffers from another fundamental problem that no amendment can fix: it is premised on a damage theory that courts have labeled "fraud by hindsight" and routinely reject in the absence of specific factual allegations showing that statements regarding a projected shipping date for a new product were false when made. No such facts are, or can be, alleged here. Plaintiff's attempt to dress-up what is, at best, a garden-variety contract claim against Hashfast, *see* Compl. ¶ 51 ("Hashfast's failure to deliver the product by its advertised delivery date is a material ***breach of the agreement***"), as "fraud" by its officers, must fail.

For these and other reasons, Barber's motion should be granted with prejudice.

---

[1] Plaintiff acknowledges his first and fourth claims for relief for breach of contract and declaratory relief, respectively, are ***against Hashfast only***, not Barber. Dkt. 35 at 2:27-3:1. In any event, the Court lifted the bankruptcy stay imposed in this case on May 20, 2014, only as to plaintiff's second (fraud) and third (UCL) claims for relief. Dkt. 29 at 5:5-8. As such, we confine our discussion in this reply brief to the fraud and UCL claims asserted against Barber.

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA 94104
415-693-9155

2.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

## II. ARGUMENTS IN REPLY

### A. Plaintiff's Fraud Claim Against Barber Should Be Dismissed

To state a claim for common law fraud, plaintiff must allege the following elements with particularity: (1) a misrepresentation of existing fact; (2) knowledge of falsity (or "scienter"); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173 (2003); Fed. R. Civ. P. 9(b). But if the Court looks closely, it will see that nowhere in his opposition does plaintiff demonstrate where the facts supporting each of these essential elements ***against Barber*** can be found in the Complaint. The reason is simple: they do not exist. To the contrary, with the exception of Barber's alleged statement that refunds "will be given in [Bitcoin]," Compl. ¶ 25, discussed below, plaintiff continues to rely primarily on allegations that "Defendants" or "Hashfast" made various false and misleading representations. *See* § B.1., below.

At the threshold, as Barber showed in his opening memorandum, plaintiff alleges ***no facts*** showing that any statement attributed to Barber—or any other defendant—was false when made. *Aguinaldo*, *supra*, at *2 ("the plaintiff must plead facts explaining why the statement was false when made") (citing *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001)). In his opposition, plaintiff does not disagree or show how this pleading deficiency can be cured by amendment.[2] Nor can he.

At best, the statement that refunds "will be given" in Bitcoin is a nonactionable

---

[2] Just the opposite is true with respect to the statement that refunds "will be given in [Bitcoin]." Plaintiff specifically alleges Hashfast ***offered to pay refunds in Bitcoin*** at the Bitcoin/dollar exchange rate on the date of refund. Compl. ¶ 45. Thus, to establish falsity, plaintiff must allege specific facts showing that Barber promised refunds would be in the *same number* of Bitcoin plaintiff paid to purchase the mining machines. No such allegations exist. Nor does the Complaint allege Barber knew plaintiff interpreted the alleged statement to mean that Hashfast would refund the same number of Bitcoin, that Barber knew plaintiff's subjective interpretation was false, that Barber intended to defraud and induce reliance by plaintiff, and that plaintiff relied on this misunderstanding. The facts demonstrate just the opposite: that plaintiff intended to pay in ***dollars*** all along and only paid in Bitcoin after he was informed that the only payment option at the time was in Bitcoin: "Had credit card processing been made available by Hashfast, ***[plaintiff] would have opted to pay using his credit card***." Compl. ¶ 24 (emphasis added). In short, the allegations establish that plaintiff's fraud theory predicated on this statement is, at best, pure speculation. The more likely explanation is that plaintiff's current position that he believed he would receive the *same number* of Bitcoin he paid to purchase the machines is the result of a substantial increase in the value of Bitcoin in the interim.

3.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA 94104
415-693-9155

commitment to take action in the future, even if plaintiff read and relied on it before making his purchase (which he does not allege). "Statements that are predictions of future events or commitments to take or refrain from taking action in the future are not actionable fraud." *Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 12-CV-01393-EJD, 2012 WL 3835080, at *5 (N.D. Cal. Sept. 4, 2012) (Davila, J.) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 158 (1991)). "In that regard, the failure to fulfill a promise to take…future action generally cannot form the basis of a fraud claim." *Id.* (citing *Sullins. v. Exxon/Mobil Corp.*, No. 08-04927, 2010 WL 338091, at *2 (N.D. Cal. Jan. 20, 2010)). So too here.

Finally, consistent with the allegations establishing that plaintiff never relied upon the ability to make purchases or obtain refunds in Bitcoin in making his purchase (let alone receive the same number of Bitcoin that he paid), plaintiff alleges *no facts* showing he actually and justifiably relied on any statement by Barber.[3] He argues he has adequately alleged reliance because the statement regarding refunds in Bitcoin "encouraged *customers*" to order the product. Opp. at 4, n. 2 (emphasis added). But he stops short of alleging *he* took or refrained from taking any action based on the alleged statement that refunds will be given in Bitcoin and suffered harm as a result. The Complaint itself merely alleges "[a]nother customer" was "advised specifically that refunds would be paid in BTC." Compl. ¶ 25. The Complaint does not allege *plaintiff* was so advised before placing his order, or that he relied on this statement.[4]

In short, plaintiff's allegations against Barber fall far short of the heightened pleading

---

[3] On its face, the Complaint establishes plaintiff never relied on any alleged misrepresentations regarding Hashfast's Miner Protection Program (MPP), as the MPP was "announced on August 13, 2013," Compl. ¶ 30. Plaintiff purchased his machines 3 days earlier, *id.* at 25:19, and thus could not have relied on any statement concerning the MPP. Likewise, plaintiff could not have reasonably relied on the website's shopping cart default setting that product was "in stock," knowing the chip design was not complete (Compl. Ex. F), and that shipments would not commence until more than two months later. Notably, plaintiff does not deny seeing this statement before he placed his order or contend that he can truthfully allege, consistent with Rule 11, that he did not know the chip design was incomplete.

[4] Plaintiff's position on the legal impact of statements made on the Bitcoin Forum expose still another problem with his fraud theory. On the one hand, he attempts to rely on statements made on the forum that encouraged *other* customers to buy the product, but when it came to other statements in the same string made on the forum that he does not deny seeing and that contradict his fraud theory, he argues he cannot be charged with any of them. Opp. at 7:9-11.

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA 94104
415-693-9155

4.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

standard applicable to his claims in several key respects. Because plaintiff's fraud theory against Barber is premised on nonactionable future conduct and fails to allege facts uniquely within plaintiff's knowledge (e.g., reliance), any amendment would be futile.

### B. Plaintiff's UCL Claim Against Barber Should Be Dismissed

UCL claims grounded in fraud, such as plaintiff's UCL claim, are subject to Rule 9(b). Although plaintiff's UCL claim is predicated entirely on the allegation that "[t]he acts and practices of HashFast constitute unlawful business acts and practices," Compl. ¶ 58, and fails to allege any facts against, or even mention Barber, he argues in his opposition that Barber is liable under the UCL because he "participated and exercised control over the practices in question." Opp. at 11:12-13. There are multiple problems with plaintiff's UCL claim against Barber, any one of which provides a separate and independent ground for dismissal.

#### 1. Plaintiff's UCL Claim Is Not Plead With Sufficient Particularity

In his opening memorandum, Barber showed why plaintiff's fraud claim against him failed to meet the pleading requirements of Fed. R. Civ. P. 9(b) and *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Mem. at 10:18-12:19. In opposition, plaintiff appears to argue that the heightened pleading requirement does not apply, Opp. at p. 10, or that he has met it. Opp. at p. 11. He is wrong on both counts.

First, this case is indistinguishable from *Kearns*, where the Ninth Circuit made clear that UCL claims grounded in fraud, as this one is, "as a *whole* must satisfy the particularity requirement of rule 9(b)." *Id.* at 1127 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (emphasis in original). Plaintiff's "entire complaint must therefore be pleaded with particularity." *Id.* This also applies to omissions. *Id.* at 1126.

Second, as noted above, plaintiff has failed to plead his predicate fraud claim with the required specificity. *See* § II.A., above. As his fraud claim goes, so goes his UCL claim.[5]

In any event, plaintiff's arguments regarding Barber's "active participation" and

---

[5] Beyond the predicate fraud claim, plaintiff has asserted no specific allegations or advanced any specific argument establishing he has stated a claim under the "unlawful," unfair" or "fraudulent" prongs of the UCL.

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA 94104
415-693-9155

5.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

"unbridled control" over unlawful business practices miss the mark for two reasons:

<u>First</u>, the UCL claim is based entirely on allegations against "Hashfast," Compl. ¶¶ 58-60. Likewise, plaintiff's arguments are based on conclusory "facts" regarding "Individual Defendants" and their alleged participation that cannot be found anywhere in the Complaint.[6] This is patently insufficient under Rule 9(b). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation omitted). Indeed, the only reference to any defendant-specific allegation relates to defendant *deCastro*, not Barber. Opp. at 12:17-19.

<u>Second</u>, plaintiff admits his UCL claim is "premised on the unfair practice of selling a product while making misleading claims about the ***availability of the product***." Opp. at 11:10-12 (emphasis added). The Complaint, however, is devoid of any specific factual allegations showing that **Barber** exercised "unbridled control" over any statement regarding "the availability of the product," and plaintiff does not cite any. *Emery v. Visa International Service Assoc.*, 95 Cal.App.4th 952, 960 (2002) ("A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500.") (quoting *People v. Toomey*, 157 Cal.App.3d 1, 15 (1984)).[7]

### 2. The UCL's Limited Remedies Are Not Available Against Barber

Plaintiff's UCL claim against Barber fails for the additional reason that the only monetary remedy available under the UCL—restitution—is not available against Barber. In

---

[6] See, e.g., Opp. at 11:12-13 ("Individual Defendants participated and exercised control over the practices in question"), at 11:14-16 ("Individual Defendants made numerous public statements relating to the availability of the product and the terms of the transaction, and one of the Individual Defendants held the domain name through which the product was advertised").

[7] Plaintiff's allegations against Barber are a far cry from the "overwhelming evidence" the court found sufficient to impose personal liability under the UCL in *Toomey*. In *Toomey*, the court held the president and operating officer was the "moving force behind the entire coupon sales program" at issue based on his active involvement in every facet of the program. *Toomey*, *supra*, 157 Cal.App.3d at 15. By way of contrast, as noted above, the entire Complaint in this case mentions Barber once and does not allege any facts supporting an inference Barber exercised "unbridled control" over any unlawful business practice.

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA 94104
415-693-9155

addition to damages (which are not available under the UCL), plaintiff seeks restitution in the amount "Hashfast has been unjustly enriched." Compl. ¶ 60. "Although it is well established that an owner or officer of a corporation may be individually liable under the UCL if he or she actively and directly participates in the unfair business practice, *it does not necessarily follow that all of the remedies imposed with respect to the corporation are equally applicable to the individual*." *Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1458 (2008) (emphasis added), *abrogated on other grounds by Martinez v. Combs*, 49 Cal.4th 35 (2010).

In dismissing plaintiff's UCL claim against the individual defendants, the court in *Bradstreet* explained the rationale for the rule:

> The problem with requiring [individual] defendants, rather than the [corporate employer] to pay unpaid wages as restitution is that the labor intervener performed was not for defendants personally, but for the employers, the [corporate employer]. Defendants did not personally obtain the benefit of those services, and the duty to pay wages was owed by the corporations as employers, not by defendants as owners, officers or managers.

*Id*. at 1458 (emphasis added).

The same rationale applies to plaintiff's attempt to obtain restitution *from Barber* of funds he alleges were paid *to Hashfast*. To paraphrase *Bradstreet*: "an order requiring [Barber] to pay the [refund] would not be 'restitutionary as it would not replace any money or property that [Barber] took directly from' [plaintiff]." *Id*. at 1460 (citation omitted).

### C. Plaintiff's Derivative Liability Theories Are Unavailing

Tacitly conceding he has failed to plead a fraud claim against Barber based on his own alleged conduct, plaintiff argues he has adequately alleged a factual basis for holding Barber personally liable for the alleged misrepresentations by other Hashfast employees. Not so.

#### 1. Plaintiff's "Fraud By Hindsight" Damage Theory Fails

The gist of plaintiff's Complaint is that he paid $11,200 for two Bitcoin mining machines, but suffered damages when the "product [he] ordered from HashFast was not delivered in a timely fashion." Compl. at 1:22-23 [Introduction]. "Although HashFast represented at the time [plaintiff] placed his order, in August 2013, that delivery would occur between October 20, 2013 and October 30, 2013," the theory goes, "HashFast failed to make

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA 94104
415-693-9155

7.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

timely delivery." *Id*. at 1:26-2:3. Put simply, the Court need not determine if derivative liability exists against Barber, because plaintiff's fraud theory fails in the first instance.[8]

Courts have not hesitated to dismiss fraud claims predicated on the late release of a product as "fraud by hindsight." In a similar case involving alleged misrepresentations regarding the release date of a product, the court dismissed the claims on the pleadings for failure to plead facts alleging fraud with particularity under Rules 12(b)(6) and 9(b):

> Plaintiffs' conclusory allegations regarding the delays in testing for [the product], lacking supporting facts, are tantamount to fraud by hindsight, which is insufficient to state a [fraud] claim….Plaintiffs fail to allege facts that show that the statements were unfounded at the time they were made….Accordingly, the Court finds that plaintiffs' allegations regarding the new products…do not state a claim of fraud sufficient to withstand defendants' Rule 9(b) motion.

*Borow v. nView Corp.*, 829 F Supp. 828, 834-35 (E.D. Va. 1993).

The court in *Borow* could just as easily been referring to this case. Just as in *Borow*, plaintiff here does not allege *any facts* showing that any alleged statement by Barber or any Hashfast employee before August 10, 2013, projecting Hashfast would begin shipping mining machines two months later (October 20-30, 2013), in order of purchase, was "false" when made. See also *Aguinaldo*, *supra*, at *5 ("Broken promises may be actionable as a fraud, but the plaintiff must allege *with specificity* that the promisor did not intend to perform at the time the promise was made.") (emphasis added) (citations omitted). Plaintiff offers a competing narrative, Opp. 5:18-6:16, but no specific facts showing a lack of intent to perform.[9]

Indeed, courts are especially suspect of such claims in the context of products in

---

[8] To be clear, Hashfast never represented shipments would "occur" during the October 20-30, 2013, timeframe. Plaintiff's "late shipment" theory rests on the allegation that shipments would "begin" during this timeframe, and only "in order of purchase." Compl. ¶ 17.

[9] To compensate for the lack of specific factual allegations in this regard, plaintiff suggests Hashfast was *motivated* to make false statements regarding the timeline it projected shipments would begin to sell more Bitcoin mining machines. Opp. at 2:17 (intent of "Defendants" was to "string[] [plaintiff] along"). Even if this argument were supported by facts (it is not), it fails. *Berliner*, 783 F. Supp. at 712 (rejecting allegations that defendant had incentive to defraud "to dissuade customers from purchasing other products," because "a motive for fraud is not a substitute for showing that fraud was actually committed").

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA  94104
415-693-9155

8.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

development.  "Especially where, as here, a product is understood to be in development, plaintiff may not assert merely that, because the product did not come out when projected, plans for an earlier release were false." *Borow, supra,* at 833 (quoting *Berliner v. Lotus Dev. Corp.*, 783 F.Supp. 708, 710 (D. Mass. 1992)).  The Complaint here alleges Bitcoin mining machines were in the development phase, Compl. ¶¶ 13, 15, but alleges ***no facts*** showing any statements regarding the delivery date for the product were false.  *Borow* and *Berliner* are on point.

### 2. Plaintiff's Conclusory Alter Ego Allegations Are Inadequate

The Complaint alleges, in conclusory fashion, that "defendants, and each of them, were an owner, a co-owner, agent, representative and/or alter ego of their co-defendants," Compl. ¶ 4.  This is insufficient.  *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each.") (applying California law); *Leek v. Cooper*, 194 Cal.App.4th 399, 415 (2011) (to establish alter ego, plaintiff "must allege ***sufficient facts*** to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor").

### 3. Plaintiff's "Vicarious Liability" Theory Fails

Finally, plaintiff argues Barber's status as a corporate officer subjects him to personal liability for the torts of the corporation.  Not so.  Judge Patel's opinion in *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941 (N.D. Cal. 2003), is instructive.  In dismissing a tort claim against a corporate officer, Judge Patel held:

> [M]ere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other "unreasonable participation" in the unlawful conduct by the individual….[T]he court holds that plaintiff fails to allege sufficient specific conduct by [defendant] to state a claim….While plaintiff argues that [defendant] participated directly in the tortious conduct, Compl. ¶¶ 21, 31, 33, 34, nowhere does the complaint sufficiently allege that [defendant] acted beyond his capacity as a corporate officer….

*Id*. at 950-951 (citing *PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368, 1389 (2000)).

The same result is warranted here.  Just as in *Accuimage*, the Complaint here alleges ***no facts*** showing "unreasonable participation" in any unlawful conduct by Barber beyond his

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA  94104
415-693-9155

9.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

capacity as a Hashfast officer. Again, the fraud and UCL claims never mention Barber. The entire Complaint mentions him once. Plaintiff's naked assertions in his opposition regarding the active participation in tortious conduct by "the Individual Defendants" are not facts, cannot be found anywhere in the Complaint itself, are not accompanied by any citation to the Complaint, and do not differentiate between the individual defendants. Plaintiff's argument premised on Barber's "status as founder[] and executive[]" of Hashfast, Opp. at 2:2, must fail.[10]

### C. The Court Should Deny Leave To File An Amended Complaint

Plaintiff's request for leave to amend should be denied. Of the evidence he claims to have "unearthed" in the bankruptcy proceedings, none would cure the pleading defects described above, and plaintiff fails to explain how it would. As such, even it were proper to consider such evidence on this motion, which it is not, plaintiff has not come close to meeting his burden to show that justice requires yet another round of pleading and motion practice.

Under the circumstances, justice favors denying amendment. In light of the foregoing, the only conceivable reason plaintiff would amend the complaint is to drag this moribund case out even longer and impose greater costs on the parties and the Court in hopes of extracting a windfall settlement for what is, at best, nothing more than a garden variety breach of contract claim against Hashfast over the delayed release of a product in development.

### III. CONCLUSION

Based on the foregoing, Barber respectfully requests the Court grant this motion with prejudice, as none of the pleading defects can be cured by amendment.

Dated: February 23, 2015                                                PINEDOLAW


                                                          /s/  Craig A. Pinedo
                                                          CRAIG A. PINEDO

                                                          Attorneys for Defendant SIMON BARBER

---

[10] *Accuimage* predates the more rigid pleading standard set forth in *Iqbal* and *Twombly*, which made clear the court need not accept unreasonable inferences or legal conclusions cast as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Plaintiff here has pled the very type of claim *Iqbal* and *Twombly* instruct courts to weed out.

PINEDOLAW
425 California Street
19th Floor
San Francisco, CA 94104
415-693-9155

10.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS