UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI,<br><br>        Plaintiff,<br><br>    v.<br><br>HASHFAST TECHNOLOGIES LLC, et al.,<br><br>        Defendants. | Case No. 5:14-cv-00087-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

This action is about Bitcoin[1] and "Baby Jets."  Plaintiff Pete Morici ("Plaintiff") alleges that he placed an order with Defendants Hashfast Technologies LLC and/or Hashfast LLC (the "Hashfast Entities") for two Bitcoin mining computers, fittingly named "Baby Jets," but did not receive them when promised.  When he finally did receive a shipment, he was no longer interested in "Baby Jets" and requested a refund.  He did not receive one, though, because he would not sign

---

[1] According to Plaintiff's Complaint, and for those who are not familiar with it:

> Bitcoin is a peer-to-peer payment network that uses digital currency known as "Bitcoin" (abbreviated as "BTC"). The Bitcoin network is decentralized, with no authority overseeing its operation, and uses open-source encryption software for transactions . . . .

> Payment transactions are processed by a network of private computers distributed throughout the world which, typically, have been specially configured for processing Bitcoin transactions.  These computers are commonly referred to as "Bitcoin computers," and the operators of such computers are known as "miners."  Miners are partially compensated for the work they perform by receiving fees for the Bitcoin transactions that they process through their Bitcoin computers.

See Compl., Docket Item No. 1, at ¶¶ 9-10.

United States District Court
Northern District of California

1    a release.

2         Plaintiff filed the Complaint underlying this case on January 7, 2014, against the Hashfast

3    Entities and its officers, Simon Barber ("Barber") and Eduardo deCastro ("deCastro")[2] for breach

4    of contract, fraud, violation of the Unfair Competition Law ("UCL"), California Business and

5    Professions Code § 17200, and declaratory relief.  Presently before the court is a Motion to

6    Dismiss filed by Barber and deCastro.[3]  See Docket Item No. 34.  Plaintiff has filed written

7    opposition to the motion.  See Docket Item No. 35.

8         Federal jurisdiction arises under 28 U.S.C. § 1332.  Having carefully reviewed the parties'

9    arguments, the court finds this matter suitable for decision without oral argument pursuant to Civil

10   Local Rule 7-1(b).  The hearing scheduled for March 5, 2015, will therefore be vacated and the

11   Motion to Dismiss will be granted for the reasons explained below.

12   **I.    FACTUAL BACKGROUND**

13        Plaintiff is a resident of Maryland and, importantly for this lawsuit, is a member of the

14   Bitcoin community.  See Compl., Docket Item No. 1, at ¶¶ 1, 15.  So are Barber, deCastro, and the

15   Hashfast Entities.  Id. at ¶ 15.  They develop specialized computers to conduct Bitcoin mining.  Id.

16   at ¶ 13.

17        In conjunction with their enthusiasm for Bitcoin, Plaintiff and Defendants were

18   participants in an internet message board knowns as Bitcoin Talk.  Id. at ¶ 15.  Starting in July,

19   2013, Defendants made several posts about their soon-to-be-launched Bitcoin mining computer

20   (the aforementioned "Baby Jet"), and further posted, on August 5th and August 8, 2013, that they

21   would begin shipping the product in October, 2013.  Id. at ¶¶ 16-17.

22        On August 10, 2013, Plaintiff visited Defendants' website and decided he wanted to

23   purchase a "Baby Jet" after viewing the computer's technical specifications.  Id. at ¶ 19.  He relied

24   on a statement on the website which listed the "Baby Jet" model as "in stock," and noted that

25   _____

26   [2] Barber, deCastro and the Hashfast Entities are referred to collectively as "Defendants."

27   [3] This case has been stayed with respect to the Hashfast Entities due to ongoing bankruptcy
     proceedings.  See Docket Item No. 23.

28   Case No.: 5:14-cv-00087-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1   shipments of the product would begin "October 20-30." Id. at ¶ 20.  Since the website could not

2   process orders electronically, Plaintiff ended up placing an order manually during which process

3   he was assured that the October, 2013, delivery dates were "firm." Id. at ¶¶ 22-23.  He ordered

4   two "Baby Jets" for a total transaction cost of $11,507.38. Id. at ¶ 23.  Plaintiff paid a deposit of

5   110.647885 BTC that same day. Id. at ¶ 26.

6          Plaintiff explains that the delivery date of the "Baby Jet" was crucial due to how Bitcoin

7   works.  Bitcoin miners are incentivized to process payment transactions "by allowing miners to

8   create new Bitcoins for themselves based on the number of 'blocks' discovered." Id. at ¶ 11.

9   "Blocks are files containing data regarding Bitcoin transactions that have yet to be recorded in the

10  public ledger," and are discovered by "calculating a SHA256 hash, an algorithm that is very

11  difficult to solve, over and over again until the miner finds an input that matches an expected

12  output." Id.  Since a miner's chances of discovering a Bitcoin relative to another miner is "based

13  on the miner's hash rate relative to the total hash rate of all Bitcoin miners on the network,"

14  miners are continuously seeking to increase their rate of processing through acquisition of the

15  latest technology. Id.  However, because the "difficulty of Bitcoin mining is continually adjusted

16  based on the rate at which blocks are created," "a Bitcoin mining computer continually becomes

17  less valuable over time, as it becomes relatively less efficient at processing Bitcoin blocks." Id. at

18  ¶ 12.  "Eventually, without upgrading technology, the electricity required for processing will cost

19  a miner more than the Bitcoin computer is able to generate." Id.

20         Despite previous reassurances, Defendants informed Plaintiff on October 23, 2013, that his

21  order would be delayed. Id. at ¶ 39.  On November 7, 2013, Defendants told Plaintiff that his

22  order would be delayed further and would not be shipped until mid-December. Id. at ¶ 41.  In

23  response, Plaintiff notified Defendants on November 11, 2013, that he was cancelling his order,

24  and requested a full refund of his deposit in Bitcoin. Id. at ¶ 43.  Defendants did not respond to

25  Plaintiff's notification until over a month later. Id. at ¶ 44.

26         On December 27, 2013, Defendants sent an email to customers stating that "Baby Jet"

27  shipments were "on track" for December 31st, but that customers interested in a refund "could

28
    Case No.: 5:14-cv-00087-EJD
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

3

1  initiate refunds and be paid Bitcoin calculated at the exchange rate on the date of the refund." <u>Id.</u>

2  at ¶ 45.  This statement surprised Plaintiff, since Defendants had previously represented that

3  refunds would be paid in Bitcoin.  <u>Id.</u> at ¶¶ 25, 45.

4  On December 31, 2013, Defendants sent another email to Plaintiff stating it still would not

5  be able to fulfill his order until a later date.  <u>Id.</u> at ¶ 46.  Attached to the email was a "detailed and

6  onerous" release that had to be completed in order to obtain a refund.  <u>Id.</u> at ¶ 47.

7  Defendants eventually did send a shipment to Plaintiff, which he alleges was partial and

8  "too late." <u>Id.</u> at ¶ 48.  He therefore refused it and cancelled the order.  <u>Id.</u>  This action followed.

9  ## II.     LEGAL STANDARD

10  Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

11  specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

12  it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

13  complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

14  upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is

15  appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

16  a cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th

17  Cir. 2008).  Moreover, the factual allegations "must be enough to raise a right to relief above the

18  speculative level" such that the claim "is plausible on its face." <u>Twombly</u>, 550 U.S. at 556-57.

19  Causes of action based in fraud require more detail.  "In alleging fraud or mistake, a party

20  must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc.

21  9(b).  These allegations must be "specific enough to give defendants notice of the particular

22  misconduct which is alleged to constitute the fraud charged so that they can defend against the

23  charge and not just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d

24  727, 731 (9th Cir.1985).  To that end, the allegations must contain "an account of the time, place,

25  and specific content of the false representations as well as the identities of the parties to the

26  misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir.2007).  In other words,

27  claims of fraudulent conduct must generally contain more specific facts than is necessary to

28

United States District Court
Northern District of California

4

Case No.: <u>5:14-cv-00087-EJD</u>
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1  support other causes of action.

2      When deciding whether to grant a motion to dismiss, the court generally "may not consider

3  any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

4  1542, 1555 n. 19 (9th Cir.1990). However, the court may consider material submitted as part of

5  the complaint or relied upon in the complaint, and may also consider material subject to judicial

6  notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir.2001).

7      In addition, the court must generally accept as true all "well-pleaded factual allegations."

8  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the

9  light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1988).

10 However, "courts are not bound to accept as true a legal conclusion couched as a factual

11 allegation." Id.

## III.  DISCUSSION

13     Barber and deCastro argue for dismissal of all claims in the Complaint. However, Plaintiff

14 indicates that the claims for breach of contract and declaratory relief are not being asserted against

15 Barber and deCastro. See Opp'n, Docket Item No. 35, at pp. 3:26-4:1. Thus, the court examines

16 only the fraud and UCL claims.

### A.  Fraud

18     Barber and deCastro argue that the fraud claim must be dismissed as asserted against them

19 because the factual allegations do not satisfy the heightened pleading standard imposed by Rule

20 9(b). Specifically, they contend that Plaintiff improperly lumped all of the defendants into one

21 designation in the Complaint - namely, "Hashfast" - and then failed to differentiate the fraudulent

22 conduct attributable to each defendant. The court agrees with Barber and deCastro that the claim

23 for fraud is deficient under Rule 9(b).

24     A plaintiff alleging fraud under California law must plead facts demonstrating five

25 elements: (1) a misrepresentation; (2) the speaker's knowledge of falsity; (3) the intent to defraud

26 or induce reliance; (4) justifiable reliance; and (5) resulting damage. See, e.g., Lazar v. Super. Ct.,

27 12 Cal. 4th 631, 638 (1996).

28

1    In federal court, it is undisputed that these elements, save for perhaps certain aspects of the

2    second and third,[4] must be plead with particularity.  The purpose of this requirement is to ensure

3    that adequate notice is provided to the parties accused of fraudulent conduct in order to allow for a

4    meaningful defense.  Indeed, "[w]ithout such specificity, defendants in these cases would be put to

5    an unfair disadvantage, since at the early stages of the proceedings they could do no more than

6    generally deny any wrongdoing."  Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995).

7    Rule 9(b)'s heightened pleading requirement also acts as a barrier to weak or unfounded -

8    and potentially costly - claims of fraudulent conduct.  See Bly-Magee v. California, 236 F.3d

9    1014, 1018 (9th Cir. 2001).  Because they must provide more than just the superficial "short and

10   plain statement" permitted for other claims, plaintiffs who seek to assert fraud must consider

11   whether the facts known at the time of filing can withstand a Rule 9 challenge.  Indeed, by

12   requiring extra detail, "the rule requires the plaintiff to conduct a precomplaint investigation in

13   sufficient depth to assure that the charge of fraud is responsible and supported, rather than

14   defamatory and extortionate."  Ackerman v. Nw. Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir.

15   1969).

16   It is therefore unsurprising that allegations suggesting that "everyone did everything" or

17   that "all defendants made every misrepresentation" are insufficient.  See Destfino v. Reiswig, 630

18   F.3d 952, 958 (9th Cir. 2011).  Although "there is no absolute requirement that where several

19   defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify

20   false statements made by each and every defendant," plaintiff must nonetheless offer enough

21   factual matter to establish each defendant's participation in the fraudulent scheme.  Swartz, 476

22   F.3d at 764 (emphasis preserved).  In other words, "[i]n the context of a fraud suit involving

23   multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in

24   the alleged fraudulent scheme.'"  Id. (quoting Moore v. Kayport Package Express, Inc., 885 F.2d

25   531, 541 (9th Cir. 1989)).

26

27   ───────────────

     [4] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."
     Fed. R. Civ. P. 9(b).

28   Case No.: 5:14-cv-00087-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    Here, after collectively defining all of the named defendants, including individual

2    defendants Barber and deCastro, as "Hashfast," Plaintiff attributes nearly every fraudulent

3    statement to this "Hashfast" conglomerate without distinguishing which entity or individual was

4    actually responsible for the misrepresentation.  For example, Plaintiff alleges that "Hashfast"

5    stated the "Baby Jets" would ship in October, 2013.  <u>See</u> Compl., at ¶ 17.  Similarly, he alleges

6    that "Hashfast" represented that "Baby Jets" were "in stock" and that "Hashfast" misrepresented

7    the computing power of its product.  <u>Id</u>. at ¶¶ 20, 33.  But under this style of pleading, Barber and

8    deCastro are left to wonder which statements they are alleged to have made as individuals, and in

9    turn, which statements they must defend against as individuals.  Indeed, it cannot be, without

10   something more, that both are responsible for making each and every statement ascribed to

11   "Hashfast," since Plaintiff's definition of "Hashfast" includes two business entities in addition to

12   Barber and deCastro.

13          In opposition, Plaintiff clarifies that the "something more" - or the fact that makes Barber

14   and deCastro liable for every misrepresentation of "Hashfast" - is their positions as corporate

15   officers or directors, which he alleges in the Complaint.  He further alleges that "Hashfast" was a

16   participant in Bitcoin Talk and made several posts about the launch of "Baby Jet."

17          These allegations are insufficient as pled because they are not specific enough to satisfy

18   Rule 9(b).  Indeed, as Plaintiff's own authorities establish, "[t]o maintain a tort claim against a

19   director in his or her personal capacity, a plaintiff must first show that the director *specifically*

20   authorized, directed or participated in the allegedly tortious conduct; or that although they

21   *specifically* knew or reasonably should have known that some hazardous condition or activity

22   under their control could injure plaintiff, they negligently failed to take or order appropriate action

23   to avoid the harm."  <u>Frances T. v . Village Green Owners Ass'n</u>, 42 Cal. 3d 490, 508 (1986)

24   (emphasis added and internal citations omitted).  What is missing from Plaintiff's Complaint is the

25   "specific" part, which is required both by the legal standard for director liability as it exists under

26   California law and by Rule 9(b).  These allegations are important because, in general, directors are

27   jointly liable with the corporation only "if they personally directed or participated in the tortious

28

7

United States District Court
Northern District of California

1    conduct." Id. at 504.

2         Nor has Plaintiff alleged sufficient facts under Rule 9(b) to establish that Barber and

3    deCastro were the agents of the Hashfast entities.  "To allege an agency relationship, a plaintiff

4    must allege: (1) that the agent or apparent agent holds power to alter legal relations between

5    principal and third persons and between principal and himself; (2) that the agent is a fiduciary with

6    respect to matters within scope of agency; and (3) that the principal has right to control conduct of

7    agent with respect to matters entrusted to him."  Palomares v. Bear Stearns Residential Mortg.

8    Corp., No. CV 07-1899 WQH (BLM), 2008 U.S. Dist. LEXIS 19407, at *11, 2008 WL 686683

9    (S.D. Cal. Mar. 13, 2008) (citing Garlock Sealing Techs. LLC v. NAK Sealing Techs. Corp., 148

10   Cal. App. 4th 937, 965 (2007)).  And to be sure, the agency relationship must be pleaded with

11   particularity when a claim for fraud, brought in federal court, purports to impose liability on such a

12   theory.  See RPost Holdings, Inc. v. Trustifi Corp., No. CV 11-2118 PSG (SHx), 2011 U.S. Dist.

13   LEXIS 117260, at *9-10, 2011 WL 4802372 (C.D. Cal. Oct. 11, 2011) (rejecting Plaintiff's

14   argument that agency allegations are not subject to Rule 9(b) because it "ignores the purpose of

15   Rule 9, which is to give fair notice of fraud-based claims so a defendant may respond

16   accordingly"); Jackson v. Fischer, No. C 11-2753 PJH, 2013 U.S. Dist. LEXIS 179233, at *53,

17   2013 WL 6732872 WL (N.D. Cal. Dec. 20, 2013) ("[W]here a plaintiff alleges that a defendant is

18   liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency

19   relationship be pled with particularity.").  Plaintiff's conclusory and formulaic agency allegations,

20   which merely state that "defendants, and each of them, were an owner, a co-owner, an agent

21   and/or later ego of their co-defendants," are not enough and have been rejected by other courts as

22   insufficient.  See, e.g., Buchanan v. Neighbors Van Lines, No. CV 10-6206 PSG (RCx), 2010 U.S.

23   Dist. LEXIS 130511, at *7-8, 2010 WL 4916644 (C.D. Cal. Nov. 29, 2010).[5]

24         Moreover, the statements that are specifically attributed to Barber and deCastro in the

25   _____

26   [5] Plaintiff also alleges that the domain name hasfast.com is registered to deCastro.  See Compl., at
     ¶ 18.  That allegation still is not enough under Rule 9(b) to impose director liability or show

27   agency because it does not describe the extent of deCastro's involvement in the Hashfast Entities
     or his participation the fraudulent scheme.

28                                                          8
     Case No.: 5:14-cv-00087-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1   Complaint cannot support a claim for fraud against either individual based on the factual

2   allegations overall.  Specific to Barber, Plaintiff alleges he posted a statement on Bitcoin Talk on

3   August 10, 2013, in which he advised that refunds would be issued in Bitcoin.  See Compl., at ¶

4   25.  As to deCastro, Plaintiff alleges he posted a statement on Bitcoin Talk on August 11, 2013,

5   that "Hashfast" would meet its October, 2013, shipping deadline and would protect its customers

6   against "hashrate increases."  Id. at ¶ 37.  But Plaintiff does not allege that he relied on these

7   statements when he decided to order "Baby Jets," and, notably, these allegations follow those

8   describing how he placed his order.

9        Accordingly, the claim for fraud against Barber and deCastro will be dismissed.  Plaintiff

10  will be permitted leave to amend because he may be able to supply additional factual content to

11  satisfy the Rule 9(b) pleading standard.

12      **B.    UCL**

13       The court now addresses the UCL claim.  Plaintiff clarifies that this claim is "premised on

14  the unfair practice of selling a product while making misleading claims about the availability of

15  the product."  See Opp'n, at 11:11-12.

16       A business practice is "unfair" under the UCL if it causes substantial consumer injury, is

17  not outweighed by any countervailing benefit to consumers or to competition, and is not an injury

18  the consumers themselves could have reasonably avoided.  In re Apple In-App Purchase Litig.,

19  855 F. Supp. 2d 1030, 1040 (N.D. Cal. 2012).  Plaintiff's clarification about the scope of this

20  claim - which is focused on some of the same "misleading" statements as the claim for fraud -

21  subjects it to Rule 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)

22  (holding that UCL claims based on a "unified course of fraudulent conduct" must meet the

23  particularity requirement of Rule 9(b)).

24       The UCL claim is deficiently plead for the same reasons described above.  Plaintiff's use

25  of the "Hashfast" moniker for all defendants, corporate and individual, is especially problematic

26  for this claim because an "unfair practices claim under section 17200 cannot be predicated on

27  vicarious liability."  Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960 (2002).

28

United States District Court
Northern District of California

9

Case No.: 5:14-cv-00087-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1   Furthermore, this claim is not saved by Plaintiff's agency allegations because, again, they are

2   nothing more than formulaic conclusion.

3        Thus, the UCL claim asserted against Barber and deCastro will also be dismissed with

4   leave to amend.

5   **IV.   ORDER**

6        Based on the foregoing, Barber and deCastro's Motion to Dismiss (Docket Item No. 34) is

7   GRANTED.  The claim for fraud and the claim under the UCL are each DISMISSED WITH

8   LEAVE TO AMEND.  Any amended complaint shall be filed on or before **March 16, 2015.**

9        The hearing scheduled for March 5, 2015, is VACATED, and the motion to appear

10   telephonically (Docket Item No. 57) is DENIED AS MOOT.

11

12        **IT IS SO ORDERED.**

13   Dated:  February 27, 2015

14

15   EDWARD J. DAVILA
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:14-cv-00087-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS