1  CRAIG A. PINEDO (Cal. Bar No. 191337)
   Email: cpinedo@pinedolaw.com
2  PINEDOLAW
   275 Battery Street, Suite 200
3  San Francisco, CA  94111
   Telephone:   415-693-9155
4  Fax No.:     415-524-7564

5  Attorneys for Defendant SIMON BARBER

8             UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

13 PETE MORICI, an individual,            Case No.  14-CV-00087-EJD

14              Plaintiff,                **DEFENDANT SIMON BARBER'S NOTICE
                                          OF MOTION AND MOTION TO DISMISS
15      v.                                FIRST AMENDED COMPLAINT;
                                          MEMORANDUM OF POINTS AND
16 HASHFAST TECHNOLOGIES LLC, a           AUTHORITIES IN SUPPORT THEREOF**
   California limited liability company,
17 HASHFAST LLC, a Delaware limited       Date:       July 30, 2015
   liability company, SIMON BARBER, an    Time:       9:00 a.m.
18 individual, and EDUARDO deCASTRO,      Courtroom:  4, 5th Floor
   an individual,                                     280 South 1st Street
19                                                    San Jose, CA  95113
                Defendants.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ II

I.   PRELIMINARY STATEMENT ....................................................................................... 5

II.  STATEMENT OF ALLEGED FACTS ............................................................................. 6

III. THE LEGAL STANDARD ............................................................................................... 7

IV.  ARGUMENT ..................................................................................................................... 8

    A.  Plaintiff's Fraud Claim (Second Claim For Relief) Against Barber Fails ............... 8

        1.  Plaintiff Still Fails To Allege a Plausible Fraud Theory ............................ 8

        2.  Plaintiff Still Fails To Plead His Fraud Claim With Specificity .............. 11

            a.  "In Stock" ..................................................................................... 12

            b.  Delivery of BabyJets Would Begin "October 20-30" ........... 13

            c.  Refunds "Will Be Given In Bitcoin" ...................................... 13

    B.  Plaintiff's UCL Claim (Third Claim For Relief) Against Barber Fails .................. 16

        1.  Plaintiff's UCL Claim Is Not Plead With Sufficient Particularity ............ 16

        2.  The UCL's Limited Remedies Are Not Available Against Barber ........... 18

V.   CONCLUSION ................................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F.Supp.2d 941 (N.D. Cal. 2003) ................................................................................. 18

*Aguinaldo v. Ocwen Loan Servicing, LLC*,
  No. 12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sept. 4, 2012) ............................ 14-15

*Ashcroft v. Iqbal*,
  __ U.S. __, 129 S. Ct. 1937 (2009) .................................................................................. 7-8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 7-8

*Berliner v. Lotus Dev. Corp.*,
  783 F.Supp. 708 (D. Mass. 1992) .................................................................................. 9-11

*Borow v. nView Corp.*,
  829 F. Supp. 828 (E.D. Va. 1993) .................................................................................. 9-11

*Bradstreet v. Wong*,
  161 Cal.App.4th 1440 (2008) ............................................................................................ 19

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ................................................................................................ 7

*Emery v. Visa International Service Assoc.*,
  95 Cal.App.4th 952 (2002) ................................................................................................ 17

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................................... 16

*Martinez v. Combs*,
  49 Cal.4th 35 (2010) ........................................................................................................ 19

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ........................................................................................... 7-8

*People v. Toomey*,
  157 Cal.App.3d 1 (1984) .................................................................................................. 17

*PMC, Inc. v. Kadisha*,
  78 Cal.App.4th 1368 (2000) ............................................................................................. 18

*Small v. Fritz Companies, Inc.*,
  30 Cal.4th 167 (2003) ....................................................................................................... 10

*Smith v. Allstate Ins. Co.*,
  160 F. Supp. 2d 1150 (S.D. Cal. 2001) ............................................................................. 14

*Sullins. v. Exxon/Mobil Corp.*,
   No. 08-04927, 2010 WL 338091 (N.D. Cal. Jan. 20, 2010) ................................................... 14

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................................. 17

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
   2 Cal.App.4th 153 (1991) ....................................................................................................... 14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................................ 16

TO PLAINTIFF PETE MORICI AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on July 30, 2015, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 4 of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, individual defendant Simon Barber (Barber) shall move the Court for an Order dismissing with prejudice all claims asserted against him in plaintiff Pete Morici's (plaintiff) First Amended Complaint (FAC) on the grounds that plaintiff failed to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  This motion is based upon this Notice of Motion and accompanying Memorandum of Points and Authorities in support thereof, the complete pleadings and records on file herein, the accompanying Request for Judicial Notice (RJN) and all exhibits attached thereto, and such other evidence and argument as may be presented at the hearing on this Motion.

## RELIEF REQUESTED

Barber requests an order dismissing with prejudice each of plaintiff's claims asserted against him in the FAC.

## STATEMENT OF ISSUES TO BE DECIDED

Defendant Barber's motion to dismiss presents the Court with the following issues for decision:

1. Whether plaintiff's allegations in support of his Second Claim for Relief against Barber fail to state a claim for relief.

2. Whether plaintiff's allegations in support of his Second Claim for Relief against Barber are plead with specificity.

3. Whether plaintiff's allegations in support of his Third Claim for Relief against Barber fail to state a claim for relief.

4. Whether plaintiff's allegations in support of his Third Claim for Relief against Barber are plead with specificity.

5. Whether the monetary relief plaintiff seeks in his Third Claim for Relief against Barber is available to plaintiff under Business & Professions Code section 17203.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA  94111
415-693-9155

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Simon Barber (Barber) respectfully submits this memorandum in support of his motion to dismiss the First Amended Complaint (FAC) filed by plaintiff Pete Morici.

### I. PRELIMINARY STATEMENT

Plaintiff is a Maryland resident suing to collect a refund of the $11,200 deposit he paid to pre-order two Bitcoin mining machines (so-called "BabyJets") from the Hashfast defendants in 2013. In addition to his claims for breach of contract and declaratory relief against the Hashfast defendants, plaintiff asserts claims for fraud and unfair competition against individual defendants Simon Barber and Eduardo deCastro. In granting Barber's motion to dismiss the Complaint and dismissing all claims against him, this Court concluded the allegations in the Complaint were insufficient as a matter of law to establish that Barber engaged in any conduct that could give rise to a claim for fraud or unfair competition. Dkt. 58. Although the Court granted plaintiff another opportunity to replead his claims against Barber, it was crystal clear what would be required: *specific* factual allegations sufficient to support holding Barber personally liable for plaintiff's fraud-based claims.

Notwithstanding this Court's clear instruction, plaintiff's FAC continues to define "defendants" collectively, alleging that "[w]herever appearing in this complaint, each and every reference to defendants, or any of them, is intended to be and shall be a reference to all defendants hereto, and to each of them, unless said reference is otherwise specifically qualified." Dkt. 59 [FAC] ¶ 5. In other words, every reference to "Hashfast," "defendants," or even to defendant deCastro by name, necessarily includes Barber, leaving him to wonder which claims he must defend against individually or may deny generally—precisely what this Court ordered plaintiff *not* to do in his amended pleading. The FAC also contains many of the same allegations against "Hashfast" this Court already found deficient under Rule 9(b). Rule 9(b) requires early dismissal of complaints that cannot meet its heightened pleading requirement to ensure they are not defamatory and extortionate. *Fourteen months into this litigation*, the FAC resorts to the same pleading tactics this Court has already rejected once.

But even if these conclusory allegations, devoid of the specific facts plaintiff was

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

instructed to plead, are accepted as true, plaintiff still does not—and cannot—allege any statement specifically attributed to Barber that can support a claim for fraud or unfair competition against him. For instance, this Court concluded plaintiff had failed to allege he relied on the statement that refunds would be paid in Bitcoin when he placed his order for two BabyJets—facts uniquely within his knowledge. Nothing has changed. Plaintiff still does not allege any facts showing he saw, let alone relied on this or any other statement by Barber before he placed his order for two BabyJets on August 10, 2013. In the eight paragraphs of the FAC dedicated to "[plaintiff's] reliance on false statements," Barber is referenced once.

For these and other reasons, the FAC fails to state any claims against Barber. Plaintiff's attempt to intimidate Barber with accusations of fraud without any colorable legal basis to do so must come to an end, and thus all claims against Barber should be dismissed with prejudice.

## II. STATEMENT OF ALLEGED FACTS

***Plaintiff***. Plaintiff Pete Morici is a Maryland resident. FAC ¶ 1. He alleges he paid $11,200 to purchase two Bitcoin mining machines, *id*. ¶ 41, and now seeks a refund because the mining machines were "not delivered in a timely fashion," *id*. at 1:24, *i.e.*, by the October 20-30, 2013, time period that Hashfast had initially projected it would begin shipments when plaintiff placed his pre-order for the machines on August 10, 2013.

***Plaintiff's fraud-based claims***. In addition to his breach of contract claim against the Hashfast entities premised on the late delivery of the machines, FAC ¶ 75, plaintiff alleges the same statements regarding the projected delivery date for the machines support a claim for fraud against the individual defendants, Eduardo de Castro (Hashfast's CEO) and Simon Barber (Hashfast's CTO). Plaintiff does not allege he ever spoke to or communicated in any way with either individual defendant. Nor does he specifically allege he saw or read any allegedly false statement attributed to Barber before placing his order. Instead, according to plaintiff, defendants made false statements to prospective customers when Hashfast projected in August 2013 that it would begin shipping its mining machines October 20-30, 2013; when the Hashfast.com website (owned and operated by defendant deCastro) used the words "in stock"; and when defendants represented that refunds would be made in Bitcoin. FAC ¶ 79.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

6.

BARBER'S MOTION TO DISMISS FAC

***Prayer.*** Plaintiff seeks "restitution" of the deposit he paid to Hashfast ($11,200), "[d]amages and all other available remedies caused by Defendants' fraudulent and misleading statements," rescission "at [plaintiff's] election," and "[a]n order requiring Hashfast to place [plaintiff] in the same position as he would have been prior to placing the order." FAC, Prayer.

***Prior proceedings.*** The individual defendants (Barber and deCastro) previously moved to dismiss the original Complaint and all claims against them. Dkt. 34. On February 27, 2015, this Court dismissed all claims against the individual defendants and granted plaintiff leave to replead specific facts sufficient to hold the individual defendants personally liable for fraud and violation of the UCL. Dkt. 58. On March 16, 2015, plaintiff filed his FAC. Dkt. 59.

As we show below, plaintiff's FAC does not come close to curing the pleading defects raised in this Court's previous order or in Barber's previous motion to dismiss. Instead, the FAC relies on the same discredited fraud theory that other courts have labeled "fraud by hindsight," the same collective definition of "defendants" that this Court specifically rejected, the same conclusory allegations regarding Barber's alleged participation in any allegedly unlawful activity by Hashfast, and seeks remedies against Barber that are not available to him.

### III. THE LEGAL STANDARD

A court must accept all factual allegations pleaded in the complaint as true (*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)), but it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("[B]are assertions…amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are not entitled to an assumption of truth (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 559 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

1  assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations

2  omitted); *Moss*, 572 F.3d at 969 ("[F]or a complaint to survive a motion to dismiss, the non-

3  conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

4  suggestive of a claim entitling the plaintiff to relief." (citing *Iqbal* and *Twombly*). "[W]hen the

5  allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this

6  basic deficiency should…be exposed at the point of minimum expenditure of time and money

7  by the parties and the court.'" *Twombly*, 559 U.S. at 546 (citations omitted).

## IV. ARGUMENT

### A. Plaintiff's Fraud Claim (Second Claim For Relief) Against Barber Fails

#### 1. Plaintiff Still Fails To Allege A Plausible Fraud Theory

Insofar as plaintiff's fraud claim is based on Hashfast's statements regarding the projected timeframe BabyJet shipments would begin shipping, it fails to plead a plausible legal theory. Courts have a name for—and routinely reject—fraud claims, such as this one, predicated on the late shipment of a product in development: "fraud by hindsight."

Plaintiff alleges that, in early August 2013, Hashfast representatives projected BabyJet shipments would begin "October 20-30, in order of purchase," FAC ¶ 31 & Ex. C. Plaintiff further alleges that, on October 23, 2013, more than two months after plaintiff placed his order, Hashfast revised the projected shipping date to mid-November 2013. FAC ¶ 62. On November 7, 2013, Hashfast revised the projected shipping date to mid-December. *Id*. ¶ 63. Plaintiff alleges he was informed of both revisions by email.[1] *Id*. On November 11, 2013, four days after the second revision, plaintiff alleges he had "concerns he had been defrauded" and sent Hashfast an email cancelling his order and requesting a refund. FAC ¶ 65. Notably, plaintiff offers no factual basis, beyond the delay itself, for his concerns he had been defrauded. Now,

---

[1] Plaintiff alleges, "none of the email notices sent by Hashfast contained any reference to [plaintiff's] cancellation or refund rights." FAC ¶ 64. To the contrary, the terms of sale he alleges he received in August made clear the only guaranteed delivery date was December 31, 2013 (RJN, Ex. B at § 2(a)), after which customers could cancel and request a refund for any undelivered product. Any other delivery dates "are approximate only." *Id*. at § 2(b). Even then, under the terms of sale, customers could cancel and receive a refund only after providing Hashfast with written notice of late delivery and ten (10) days to cure. *Id*.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

8.

BARBER'S MOTION TO DISMISS FAC

with the benefit of hindsight, he alleges the statements in August 2013 regarding an "October 20-30" shipping date were "false at the time they were made." FAC ¶ 81.[2]

"Especially where, as here, a product is understood to be in development, plaintiff may not assert merely that, because the product did not come out when projected, plans for an earlier release were false." *Borow v. nView Corp.*, 829 F. Supp. 828, 833 (E.D. Va. 1993) (quoting *Berliner v. Lotus Dev. Corp.*, 783 F.Supp. 708, 710 (D. Mass. 1992)). In *Borow* and *Berliner*, the courts examined far more detailed allegations regarding projected shipping dates of products in development and concluded they were insufficient to support a reasonable inference that the projections were false when made. Their analysis is instructive.

In *Borow*, plaintiffs alleged defendant and its officers made misrepresentations regarding the release date of a new product called nSIGHT. The court dismissed the initial complaint on the ground that it had failed to plead fraud with the particularity required by Rule 9(b). In their 66-page amended complaint, plaintiffs cited "in great detail" a series of announcements regarding the products, including when the product would "begin shipping." *Id*. at 833-34. In dismissing the amended complaint with prejudice, the court rejected plaintiff's theory as tantamount to "fraud by hindsight," which is insufficient under Rule 9(b):

> On December 17, 1991, in [defendant's] Preliminary Prospectus, defendants stated that nSIGHT was scheduled to begin shipping in January. Three days after the end of January, on February 3, 1992, defendants stated that nSIGHT would begin shipping in the first quarter. Plaintiffs identify no facts or circumstances that suggest this projection was false when made. Plaintiffs infer the falsity of this projection from defendants' update on February 3, 1992, that shipping [of another product] would not begin until the second quarter. Plaintiffs conclude that, because defendants later informed the market that they had encountered testing problems with nSIGHT, defendants must have known in December and January that their product would encounter testing problems.
>
> Thus, with regard to nSIGHT, plaintiffs make their allegations with the benefit of hindsight. Knowing now that nSIGHT ultimately was shipped later in 1992 than originally forecast, and knowing now—through defendants' public statements and disclosures—that nSIGHT at some point encountered testing

---

[2]  To be clear, Hashfast never represented shipments would "occur" during the October 20-30, 2013, timeframe. Plaintiff's "late shipment" theory rests on the allegation that shipments would "begin" during this timeframe, and only "in order of purchase." FAC ¶ 31 & Ex. C.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA  94111
415-693-9155

9.

BARBER'S MOTION TO DISMISS FAC

> problems, plaintiffs have concluded that defendants knew of these testing problems as early as December, 1991. According to plaintiffs, because defendants later announced that testing problems had occurred, they must have known of these testing problems in December, 1991, and, therefore, defendants' statements in the Preliminary Prospectus must have been intentionally false and misleading.
>
> Plaintiffs' conclusory allegations regarding the delays in testing for nSIGHT, lacking supporting facts, are tantamount to fraud by hindsight, which is insufficient to state a [fraud] claim….Plaintiffs fail to allege facts that show that the statements were unfounded at the time they were made….
>
> Accordingly, the Court finds that plaintiffs' allegations regarding the new products…do not state a claim of fraud sufficient to withstand defendants' Rule 9(b) motion.

*Borow*, 829 F. Supp. at 834-35.

In *Berliner*, the court rejected a similar fraud theory. In that case, plaintiffs alleged defendants made false statements regarding the projected date for the release of a new software program, Lotus 1-2-3. The court rejected plaintiff's attempt to "infer falsity" from an announcement one month later that the program would be released two quarters later than initially projected. The court also rejected plaintiff's attempt to infer falsity from the facts that (1) Lotus had not begun beta-testing the software, a prerequisite to its distribution, when it made its initial projection, and (2) Lotus had an "incentive to defraud" the public by announcing an early release date to dissuade customers from purchasing another product. The court held none of the alleged circumstances were supported by facts sufficient to give rise to a reasonable inference that the projections were false when made. *Berliner*, 783 F. Supp. at 712.

This case is factually indistinguishable from *Borow* and *Berliner*. Just as in those cases, plaintiff here does not allege any facts showing the projection in early August 2013 that shipping would commence "October 20-30," was false when made. Nor is there any factual basis to infer the reason for the delay in the October 23 email to plaintiff was false or known to Barber more than two months earlier. Plaintiff's fraud theory rests entirely on the conclusory allegation, devoid of facts or any attempt to differentiate between defendants, that "Hashfast, Barber and deCastro knew the statements were false at the time they were made." FAC ¶ 81.

Plaintiff's new allegations regarding the negotiations between Hashfast and one of its

10.

vendors, Uniquify, do not alter the result.  *See* FAC ¶¶ 25-27.  Specifically, plaintiff alleges that, as a result of "their" participation in these negotiations, the individual defendants, collectively, "knew that BabyJets could not be delivered to Hashfast customers until, at the earliest, mid-November 2013."  FAC ¶ 79.  The FAC, however, alleges *no facts* with respect to Uniquify that would support an inference that Hashfast's projection was false when made, *i.e.*, that commencing shipments by October 30, 2013, was "impossible."  FAC ¶ 27.

Indeed, the allegations and judicially noticeable facts establish just the opposite.  In the FAC, plaintiff references and relies upon a Statement of Work (SOW), dated July 1, 2013, which he alleges shows the G1 chip would not "tape-out" (which plaintiff defines to mean the date the chip design would be completed) until September 15, 2013, resulting in a finished product in mid-November.  FAC ¶¶ 26-27.  Plaintiff failed to attach a copy of the SOW to the FAC, and for good reason.  On its face, the SOW contemplates tape-out as early as August 12, 2013, resulting in a finished product in *mid-October 2013*.  RJN, Ex. A at p. 15.

Moreover, the facts alleged in the FAC are consistent with tape-out in early to mid-August.  The FAC alleges that due to the close proximity between Uniquify and Hashfast, including shared office space, the individual defendants had personal knowledge "regarding whether Hashfast would be able to meet its promised deadlines" and, based on this knowledge, informed customers "the delivery date would be earlier than was possible."  FAC ¶ 27.  For instance, as of July 18, 2013, Hashfast represented to potential purchasers that production of the BabyJets was "ahead of schedule."  FAC ¶ 29.  On August 11, 2013, the day after plaintiff placed his order, Hashfast reported that the chip design was "almost complete."  FAC, Ex. H.  By way of contrast, the FAC alleges *no facts* showing that, as of August 10, 2013, the development of the BabyJets was anything other than represented:  ahead of schedule.

*Borow* and *Berliner* are on point and, in the end, dispositive of plaintiff's fraud claim.

**2. Plaintiff Still Fails To Plead His Fraud Claim With Specificity**

Plaintiff's fraud claim "against all defendants" is predicated on three allegedly "false" statements:  (1) BabyJets were "in stock" as of August 10, 2013, (2) "delivery of BabyJets would be made in October 2013," and (3) "refunds would be provided in Bitcoin."  FAC ¶ 79.

11.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

To state a claim for common law fraud, plaintiff must allege the following elements with particularity:  (1) a misrepresentation of existing fact; (2) knowledge of falsity (or "scienter"); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173 (2003); Fed. R. Civ. P. 9(b).

Now, as before, none of these alleged statements support a fraud claim against Barber.

### a.     "In Stock"

Plaintiff does not—and cannot—allege the facts necessary to hold Barber personally liable for fraud based on the appearance of the phrase "in stock" on the company website.  In his previous Complaint, plaintiff attributed this statement to "Hashfast." Compl. ¶ 20.  The Court found this allegation was insufficient to hold Barber personally liable.  Order at 7:5-12. Plaintiff now attributes this statement to "the site," which he alleges is owned and controlled ***by defendant deCastro*** (not Barber).  FAC ¶ 35.  Having failed to allege a specific factual basis for holding Barber responsible for all statements made by "the site," this claim fails against Barber.

In addition, and in any event, the allegation that plaintiff somehow relied upon a statement that BabyJets were "in stock" is implausible.  Plaintiff does not allege he actually saw any statement that BabyJets were "in stock" before making his purchase on August 10, 2013. Nor is there any factual basis to infer that he did.  The screen shot from the Hashfast.com webpage attached to the FAC is undated.  FAC, Ex. E.  There was no actual reliance.

Nor would any reliance be justifiable.  At the same time plaintiff claims to have relied on the "in stock" default setting on the website shopping cart, he (1) alleges he knew the projected delivery date was more than ***two months later***, and (2) attaches an August 9, 2013 thread on the Bitcoin Talk forum in which plaintiff alleges he participated, where Barber stated the BabyJet chip design is "almost complete."  FAC, Ex. H.[3]  In this same thread, Barber disclosed to the Bitcoin community, including plaintiff, that Hashfast is "starting sales now

---

[3]     Notably, in response to Barber's status report, another participant in the Bitcoin Talk forum—who was privy to all posts, as opposed to those hand-picked by plaintiff—did not accuse anyone of fraud, as one would expect if anyone reasonably interpreted the shopping cart setting for the pre-order of BabyJets to mean BabyJets were completed and "in stock."  Instead, he wrote, "Thanks for the explanation and history.  I am looking forward to the email updates." FAC, Ex. H [August 11, 2013, 3:06 am, entry from jspielberg].

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA  94111
415-693-9155

12.

BARBER'S MOTION TO DISMISS FAC

because *we're at the point where…the calendar of remaining items is fairly fixed*, and we're confident we can deliver," not because it had 503 completed BabyJet units in stock. *Id.* (emphasis added). Plaintiff alleges it is this very fact—*i.e.*, that the G1 chip was incomplete—that rendered the "in stock" statement "false." FAC ¶ 35. Yet, on August 15, nearly a week after Barber's post, plaintiff alleges he made a "follow-up query" to Hashfast, but not to *cancel* his order. Rather, to *confirm* the transaction was complete. FAC ¶ 45.

In short, plaintiff has failed to plead the specific facts necessary to hold Barber personally liable for fraud based on the phrase "in stock" on the company website.

### b. Delivery of BabyJets Would Begin "October 20-30"

Not only does the projection that shipments would begin "October 20-30" fail to give rise to a plausible fraud theory, it cannot support a fraud claim for two additional reasons:

<u>First</u>, the allegations do not establish actual or justifiable reliance. Plaintiff could not have justifiably relied on any promise of delivery by October 30, 2013, because plaintiff's order confirmation and terms of sale made clear that this date was "approximate only," and the only "guaranteed delivery date" was December 31, 2013. RJN, Ex. B at § 2(a). In any event, the facts demonstrate he did not actually rely upon this statement, either. Upon receiving notice on October 23, 2013, that shipments would be delayed until mid-November 2013, plaintiff took no action consistent with reliance. Under the terms of sale he received, he could have elected to cancel and request a refund after providing Hashfast notice and an opportunity to cure. He did neither. It was only when Hashfast modified the projected shipping date to mid-December that plaintiff cancelled his order and requested a refund. FAC ¶ 65.

<u>Second</u>, any damage plaintiff claims to have suffered as a result of not receiving his BabyJets by October 30 is purely speculative. Again, upon being informed his shipments would not arrive by October 30, he took no action. It was not until he received notice of a further delay that he waited four days to cancel his order and request a refund. Even then, plaintiff fails to allege specific facts showing he suffered any injury from the delay.

### c. Refunds "Will Be Given In Bitcoin"

Next, plaintiff alleges Barber is liable for fraud based on the following alleged

13.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA  94111
415-693-9155

statement: "Orders are taken in [Bitcoin], in the unlikely event we get to refunds they will be given in [Bitcoin]."  FAC ¶ 43, Ex. F.  There are several problems with this claim.

### i. No "false promise" (or damage)

At the threshold, the statement that refunds "will be given" in Bitcoin is a nonactionable commitment to take action in the future.  "Statements that are predictions of future events or commitments to take or refrain from taking action in the future are not actionable fraud." *Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 12-CV-01393-EJD, 2012 WL 3835080, at *5 (N.D. Cal. Sept. 4, 2012) (Davila, J.) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 158 (1991)).  "In that regard, the failure to fulfill a promise to take…future action generally cannot form the basis of a fraud claim." *Id.* (citing *Sullins. v. Exxon/Mobil Corp.*, No. 08-04927, 2010 WL 338091, at *2 (N.D. Cal. Jan. 20, 2010)).

Moreover, plaintiff still alleges ***no facts*** showing this statement was false when made. *Aguinaldo*, *supra*, at *2 ("the plaintiff must plead facts explaining why the statement was false when made") (citing *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001)).  In *Aguinaldo*, this Court dismissed plaintiffs' fraud claims because they failed to "specifically show[] defendants did not intend to perform on the alleged promises at the time they were made." *Aguinaldo*, *supra*, at *5.  The same is true here.  Plaintiff alleges ***no facts*** showing Barber (or anyone) did not intend to perform.

Indeed, in his prior Complaint, he alleged just the opposite:  that Hashfast ***did offer to pay refunds in Bitcoin*** at the Bitcoin/dollar exchange rate on the date of refund.  Dkt. 1 [Compl.] ¶ 45.  Thus, it is not enough to allege Hashfast promised to pay refunds *in Bitcoin*, then offered to pay refunds *in Bitcoin*.  The FAC fails to allege specific facts showing the statement was false.  Nor does the FAC allege Barber knew plaintiff interpreted the alleged statement to mean that Hashfast would refund the same number of Bitcoin, that Barber knew plaintiff's subjective interpretation was false, that Barber intended to defraud and induce reliance by plaintiff, and that plaintiff relied on this misunderstanding.

In his FAC, plaintiff changed the word "Bitcoin" to "U.S. Dollars" and now alleges just the opposite of what he plead in his original Complaint:  that Hashfast promised refunds in

14.

BARBER'S MOTION TO DISMISS FAC

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

Bitcoin, then offered to pay refunds in U.S. dollars. This new allegation directly contradicts his prior allegation that refunds were offered in Bitcoin and should be ignored. But even if the Court accepts the new allegation, plaintiff runs into a new problem: no damages. The only way plaintiff could conceivably suffer damages as a result of receiving a refund in U.S. dollars instead of the Bitcoin equivalent is if he had alleged he was promised the same number of Bitcoin—and relied on it—which he does not and cannot truthfully allege.[4]

### ii. No actual or justifiable reliance

In its Order, the Court found "plaintiff does not allege that he relied on these statements when he decided to order 'Baby Jets,' and, notably, these allegations follow those describing how he placed his order." Order at 9:2-8. Nothing has changed.

Plaintiff still alleges *no facts* showing he actually and justifiably relied on any statement by Barber or anyone else regarding refunds in Bitcoin.[5] The allegations that "Hashfast represented that refunds would be paid in Bitcoin," and that "[plaintiff] relied on such representations," FAC ¶43, do not state a claim against Barber for reasons this Court has already explained: allegations against "Hashfast" are insufficient to hold Barber liable.

Moreover, plaintiff still does not allege *he* saw, let alone took or refrained from taking any action based on, the alleged statement that refunds will be given in Bitcoin, and suffered harm as a result. The FAC itself merely alleges "[a]nother customer" was "advised specifically that refunds would be paid in BTC." FAC ¶ 43, Ex. G. The FAC does not allege *plaintiff* was so advised before placing his order, or that he relied on this statement. Here again, the allegations demonstrate just the opposite: that plaintiff intended to pay in *dollars* all along and

---

[4] This pleading defect also defeats jurisdiction. Plaintiff does not allege any factual basis for meeting the $75,000 amount in controversy requirement on an $11,200 refund claim. If the difference is attributable solely to the increased value of Bitcoin in the interim, to reap this windfall, plaintiff is required to plead facts he knows he cannot plead truthfully, including that he was promised a refund in the same number of Bitcoin he paid and he relied on it.

[5] The FAC contains several references to Hashfast's Miner Protection Program (MPP). On its face, however, the FAC establishes plaintiff never relied on any alleged misrepresentations regarding the MPP, as the MPP was "announced on August 13, 2013," FAC ¶ 49. Plaintiff purchased his machines 3 days earlier, *id.* ¶ 43, and thus could not have relied on any statement concerning the MPP.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

15.

BARBER'S MOTION TO DISMISS FAC

only paid in Bitcoin after he was informed that the only payment option at the time was in Bitcoin: "Had credit card processing been made available by Hashfast, *[plaintiff] would have opted to pay using his credit card*." FAC ¶ 42 (emphasis added).

In short, the allegations establish that plaintiff's fraud theory predicated on this statement is, at best, pure speculation. The more likely explanation is that plaintiff's current position is the result of a substantial increase in the value of Bitcoin in the interim and his willingness to plead nearly anything to obtain a windfall he never expected under the guise of seeking a refund of the $11,200 deposit he paid for the two BabyJets.

### B. Plaintiff's UCL Claim (Third Claim For Relief) Against Barber Fails

In support of his UCL claim, plaintiff alleges that "[t]he acts and practices of HashFast constitute unlawful business acts and practices," FAC ¶ 85, and that "Barber and deCastro personally participated in the foregoing activities" in four ways: (1) making misrepresentations regarding the delivery deadline and refund terms for the BabyJets (while knowing that these deadlines and terms would not be satisfied), (2) implementing the scheme to fund production using orders that they knew Hashfast could not timely fulfill, (3) "enriching themselves using the sales proceeds from customers who were deceived as to delivery dates, and (4) failing to provide [plaintiff] the refund as promised and required by law." There are multiple problems with plaintiff's UCL claim against Barber, any one of which is a ground for dismissal.

#### 1. Plaintiff's UCL Claim Is Not Plead With Sufficient Particularity

Plaintiff has clarified that his UCL claim is "premised on the unfair practice of selling a product while making misleading claims about the *availability of the product*." Dkt. 58 at 9:13-15 (emphasis added). As such, his UCL claim is subject to Rule 9(b). *Id.* at 9:19-23. Thus, under *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), his UCL claim "as a *whole* must satisfy the particularity requirement of rule 9(b)." *Id*. at 1127 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (emphasis in original). This means plaintiff's "entire complaint must therefore be pleaded with particularity." *Id.*

As noted above, plaintiff has failed to plead the essential elements of his predicate fraud

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

16.

BARBER'S MOTION TO DISMISS FAC

claim with specificity. *See* § IV.A., above. As his fraud claim goes, so goes his UCL claim.[6]

In any event, plaintiff's conclusory allegations regarding Barber's "personal participation" in the allegedly unlawful business practices still miss the mark for two reasons:

<u>First</u>, despite the Court's instruction that plaintiff's UCL claim may not simply lump multiple defendants together or rely on formulaic conclusions, Dkt. 58 at 9:24-10:2, that is precisely what he has done. The FAC still alleges the "acts and practices *of Hashfast* as alleged herein constitute unlawful business acts and practices" under the UCL, and that "*Hashfast* has engaged in unlawful business acts and practices as alleged above…." FAC ¶ 85 (emphasis added). The FAC further alleges "*Barber and deCastro* personally participated in the foregoing activities," and "*Barber and deCastro*…were responsible for statements made on the Hashfast website and via online fora…." FAC ¶ 86. And to ensure maximum confusion, he alleges the reference to any defendant is a reference to all of them. FAC ¶ 5. These allegations are insufficient under Rule 9(b) for reasons this Court already explained. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation omitted).

<u>Second</u>, the FAC is still devoid of any specific factual allegations showing that *Barber* exercised "unbridled control" over Hashfast's projections regarding "the availability of the product." *Emery v. Visa International Service Assoc.*, 95 Cal.App.4th 952, 960 (2002) ("A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500.") (quoting *People v. Toomey*, 157 Cal.App.3d 1, 15 (1984)).[7]

---

[6] Beyond the predicate fraud claim, the FAC contains no specific allegations establishing a violation of the "unlawful," unfair" or "fraudulent" prongs of the UCL.

[7] Plaintiff's allegations against Barber are a far cry from the "overwhelming evidence" the court found sufficient to impose personal liability under the UCL in *Toomey*. In *Toomey*, the court held the president and operating officer was the "moving force behind the entire coupon sales program" at issue based on his active involvement in every facet of the program. *Toomey, supra*, 157 Cal.App.3d at 15. By way of contrast, as noted above, the entire FAC in this case attributes only one allegedly "false" statement regarding the availability of the product to

17.

BARBER'S MOTION TO DISMISS FAC

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

In the end, plaintiff's UCL claim against Barber is based on conclusory allegations about control arising out of Barber's status as a Hashfast officer and director.  Identifying his role in the corporation and alleging he was "responsible for statements made on the Hashfast website and via online fora," FAC ¶ 86, does not make it plausible that Barber is personally liable, any more so than it would make any officer responsible for the torts allegedly committed by their corporation.  Judge Patel's opinion in *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941 (N.D. Cal. 2003), is instructive in this regard.

In dismissing tort claims against a corporate officer, Judge Patel held:

> [M]ere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other "unreasonable participation" in the unlawful conduct by the individual….[T]he court holds that plaintiff fails to allege sufficient specific conduct by [defendant] to state a claim….While plaintiff argues that [defendant] participated directly in the tortious conduct, Compl. ¶¶ 21, 31, 33, 34, nowhere does the complaint sufficiently allege that [defendant] acted beyond his capacity as a corporate officer….

*Id.* at 950-951 (citing *PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368, 1389 (2000)).

The same result is warranted here.  After two attempts, the FAC alleges **no facts** showing "unreasonable participation" in any unlawful conduct by Barber beyond his capacity as a Hashfast officer.  Again, the only statement regarding product availability the FAC attributes to Barber is the projection that shipments would begin October 20-30, 2013, which does not support a fraud claim for all the reasons explained above.

### 2. The UCL's Limited Remedies Are Not Available Against Barber

Plaintiff's UCL claim against Barber fails for the additional reason that the only monetary remedy available under the UCL—restitution—is not available against Barber.  In addition to damages (which are not available under the UCL), plaintiff seeks restitution "of funds paid by [plaintiff] *to Hashfast*."  FAC ¶ 88 (emphasis added).  "Although it is well established that an owner or officer of a corporation may be individually liable under the UCL if he or she actively and directly participates in the unfair business practice, *it does not necessarily follow that all of the remedies imposed with respect to the corporation are equally applicable*

---

Barber and does not allege any facts supporting an inference Barber exercised "unbridled control" over any unlawful business practice.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA  94111
415-693-9155

*to the individual*." *Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1458 (2008) (emphasis added), *abrogated on other grounds by Martinez v. Combs*, 49 Cal.4th 35 (2010).

In dismissing plaintiff's UCL claim against the individual defendants, the court in *Bradstreet* explained the rationale for the rule:

> The problem with requiring [individual] defendants, rather than the [corporate employer] to pay unpaid wages as restitution is that the labor intervener performed was not for defendants personally, but for the employers, the [corporate employer]. Defendants did not personally obtain the benefit of those services, and the duty to pay wages was owed by the corporations as employers, not by defendants as owners, officers or managers.

*Id*. at 1458 (emphasis added).

The same rationale applies to plaintiff's attempt to obtain restitution ***from Barber*** of funds he alleges were paid ***to Hashfast***. To paraphrase *Bradstreet*: "an order requiring [Barber] to pay the [refund] would not be 'restitutionary as it would not replace any money or property that [Barber] took directly from' [plaintiff]." *Id*. at 1460 (citation omitted).

## V. CONCLUSION

Based on the foregoing, Barber respectfully requests the Court grant this motion with prejudice.

Dated: April 10, 2015                                    PINEDOLAW


                                                         /s/  Craig A. Pinedo
                                                         CRAIG A. PINEDO

                                                         Attorneys for Defendant SIMON BARBER

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

19.

BARBER'S MOTION TO DISMISS FAC