

HashFast Technologies, Inc.
("Hashfast")
97 South Second Street #175
San Jose, 95113 United States

| DATE |
|---|
| August 18, 2013 |

## Order Confirmation

ORDER NUMBER: M002
Please have the Order Number appear on all related
Correspondence and shipping papers

**To:**           **("Buyer")**
Peter Morici
6N516 Ferson Woods Dr
Saint Charles, IL 60175

**Ship To:**
Peter Morici
1430 Patapsco Street
Baltimore, MD 21230

| QTY | PRODUCT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| [2] | Baby Jet | Buyer purchases Baby Jet unit(s) incorporating (20) GN ASICs @ 400 Ghash at nominal clock speed (nominal voltage).<br><br>Payment:<br><br>100% via **BTC**<br><br>In addition, for delivery 2 units UPS 2nd Day Air. Expected shipping date: October 30, 2013* | 110.67773274 BTC<br>[$11,200 USD] | |
| | | | SUBTOTAL | |
| | | | SHIPPING | $307.38 |
| | | | TOTAL | 110.67773274 BTC<br>[$11,507.38 US Dollars] |

- Baby Jet Delivery Dates. All of the 550 Baby Jet units from HashFast's first production batch are guaranteed for delivery by December 31, 2013. If Buyer ordered one or more units of such Baby Jets, and HashFast does not deliver such units by that date, then Buyer may cancel the undelivered portion of the order at Buyer's request and HashFast will refund the payment for the units that Buyer purchased but did not receive and cancelled. This cancellation and refund is Buyer's sole and exclusive remedy for HashFast failing to deliver by the December 31, 2013 guaranteed delivery date, and Buyer must cancel the order by January 15, 2014 to avail itself of this remedy. Buyer to pay all taxes, duties and shipping costs.

Buyer to pay all taxes, duties and shipping costs.

ADDITIONAL TERMS AND CONDITIONS

This Order Confirmation and the sales of all product, licenses and services by Hashfast are be governed by the Hashfast Terms of Sale attached to this Order Confirmation, or otherwise made available upon request.

## HASHFAST TERMS OF SALE

1. OFFER, QUOTATION, ACKNOWLEDGEMENT OR CONFIRMATION. These terms and conditions of sale (the "Terms") apply to and form an integral part of: (a) all quotations and offers (hereinafter both referred to as "Offer") of Hashfast Technologies, Inc. ("Hashfast") or by its subsidiaries or other affiliates (each, an "Affiliate") to Buyer, (b) all acceptances, acknowledgements or confirmations by Hashfast (hereinafter all referred to as "Confirmation") of any order of Buyer, including orders of Buyer resulting from any pricing or other framework agreement between any Buyer and Hashfast, (c) any agreement resulting from such Offer or Confirmation, and (d) any agreement sent by Hashfast incorporating these Terms by reference (both types of agreements referred to under (c) and (d) shall hereinafter be referred to as an "Agreement") regarding the sale by Hashfast and purchase by Buyer of goods or licenses to software ("Products").

These Terms shall constitute all of the terms and conditions of any Offer, Confirmation and Agreement between Hashfast and Buyer relating to the sale by Hashfast and purchase by Buyer of Products. Acceptance by Buyer of an Offer may be evidenced by Buyer or its representative's (i) written or verbal assent, (ii) acceptance of delivery of the Products or the first installment of the Products (if applicable), or (iii) payment or partial payment, or (iv) other conduct constituting acceptance. Hashfast' Offers are open for acceptance within the period stated by Hashfast in the Offer or, when no period is stated, within ten (10) days from the date of the Offer, but any Offer may be withdrawn or revoked by Hashfast at any time prior to Buyer's acceptance. No Offer, Confirmation or Agreement constitutes an acceptance by Hashfast of any other terms and conditions, and Hashfast does not intend to enter into an Agreement other than under these Terms.

2. PURCHASE AND PAYMENT.

(a) Guaranteed Baby Jet Delivery Dates. All of the 550 Baby Jet units from Hashfast's first production batch are guaranteed for delivery by December 31, 2013. If Buyer ordered one or more units of such Baby Jets, and Hashfast does not deliver such units by that date, then Buyer may cancel the undelivered portion of the order at Buyer's request and Hashfast will refund the payment for the units that Buyer purchased but did not receive and cancelled. This cancellation and refund is Buyer's sole and exclusive remedy for Hashfast failing to deliver by the December 31, 2013 guaranteed delivery date, and Buyer must cancel the order by January 15, 2014 to avail itself of this remedy.

(b) Other Delivery Dates. Except for the delivery dates described in Section 3(a) above and delivery dates explicitly guaranteed using the words "guaranteed delivery" in the order confirmation sent by Hashfast: (i) delivery dates communicated or acknowledged by Hashfast are approximate only; (ii) Hashfast shall not be liable for, nor shall Hashfast be in breach of its obligations to Buyer because of any delivery made within a reasonable time before or after the stated delivery date; and (iii) Buyer will give Hashfast written notice of failure to deliver and ten (10) days within which to cure. In any case, Buyer's sole and exclusive remedy after such cure period or guaranteed delivery date is to cancel the affected and undelivered portions of the order, and receive a refund for the undelivered portions that were cancelled.

(c) Products shall be delivered EXWORKS (Incoterms 2000) Hashfast' manufacturing facility, or other facility as designated by Hashfast, unless otherwise agreed in writing between Hashfast and Buyer.

(d) In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast' invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed. If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date. Delivery may also be contingent on full payment. No order, Agreement or any part thereof may be rescheduled or cancelled without Hashfast' prior written consent except for cancellations permitted under this Section 3.

3. DELIVERY AND QUANTITIES.

(a) Products shall be delivered EXWORKS (Incoterms 2000) Hashfast' manufacturing facility, or other facility as designated by Hashfast, unless otherwise agreed in writing between Hashfast and Buyer. Except for delivery dates explicitly guaranteed in the Order or Confirmation, delivery dates communicated or acknowledged by Hashfast are approximate only, and Hashfast shall not be liable for, nor shall Hashfast be in breach of its obligations to Buyer because of any delivery made within a reasonable time before or after the stated delivery date. Timely delivery requires Buyer to provide all necessary order and delivery information sufficiently prior to the agreed delivery date.

(b) In the event Buyer contests delivery, the Buyer must request a proof of delivery from Hashfast within ten (10) days of the date of Hashfast' invoice or guaranteed delivery date (whichever occurs first), otherwise delivery shall be deemed completed. If Buyer fails to take delivery, then Hashfast may deliver the Products in consignment at Buyer's costs and expenses. No order, Agreement or any part thereof may be rescheduled or cancelled without Hashfast' prior written consent.

(c) Buyer will give Hashfast written notice of failure to deliver and thirty (30) days within which to cure, unless the Order or Confirmation explicitly guarantees a delivery date. In any case, Buyer's sole and exclusive remedy after such cure period or guaranteed delivery date is to cancel the affected and undelivered portions of the order.

4. RIGHTS IN SOFTWARE, DOCUMENTATION AND INTELLECTUAL PROPERTY. All intellectual property rights covering Products including without limitation any and all software or documentation or data included in, with or comprising Products, and all ownership rights in and to such intellectual property rights, software, documentation and data, shall remain solely and exclusively with Hashfast or its third party suppliers, whether or not it was developed specifically for the Buyer. Payment by Buyer of non-recurring charges, as may be made to Hashfast for special design, engineering or production materials required for Hashfast' performance on orders deviating from Hashfast's established product line, shall not convey title to either the design or special materials, but title shall remain in Hashfast. Except for licenses explicitly identified in an Offer or Confirmation, no rights or licenses are granted, or implied by estoppel or otherwise, under any intellectual property rights of Hashfast or its Affiliates or any intellectual property residing in the Products, including software or documentation or any data furnished by Hashfast, except for the license under Hashfast's intellectual property rights to operate the Products delivered by Hashfast to Buyer for their ordinary function, and subject to the provisions set forth herein. None of the software, data or electronic files embedded into the Products or accompanying the Products are sold to Buyer. Notwithstanding anything to the contrary herein, these Terms shall not be construed as conferring any license, right or immunity, either directly or by implication, estoppel or otherwise to Buyer or any third party: (a) with respect to any trademark, trade or brand name, a corporate name of Hashfast or its Affiliate(s), or any other name or mark, or contraction abbreviation or simulation thereof; (b) covering a standard set by a standard setting body or agreed to between at least two companies; or (c) if Hashfast has informed Buyer or has published (in a datasheet concerning the Product or elsewhere) a statement that a separate license is needed or useful. The absence of such a statement in a given version of the datasheet is of no consequence whatsoever if a subsequent version of the datasheet does contain such a statement. Notwithstanding anything to the contrary herein, these Terms shall not be construed as obligating Hashfast or its Affiliate(s) to furnish any manufacturing or technical information.

Buyer shall not duplicate, copy or distribute software or documentation except as specifically provided pursuant to a separate, written license duly executed by Hashfast. Unless otherwise specifically provided in writing and signed by Hashfast, Buyer shall not have the right to any software source code. Buyer shall not: (a) modify, adapt, alter, translate, or create derivative works from, the software; (b) assign, sublicense, lease, rent, loan, transfer, disclose, or otherwise make available the software; (c) merge or incorporate the software with or into any other software; or (d) reverse assemble, decompile, disassemble, or otherwise attempt to derive the source code for the Software without written authorization from Hashfast. If Hashfast licenses Buyer to make copies of software or documentation, then Buyer shall reproduce, without any amendments or changes thereto, any proprietary rights legends of Hashfast or its third party suppliers in any software or documentation provided by Hashfast. Signatures required under these Terms do not include electronic signatures as may otherwise be permitted by applicable law.

Buyer's rights under the Agreement are conditioned upon Buyer not performing

any actions that would result in the Product or any derivative work thereof to be licensed as "Open Source Software", for example, that would require a Product to be disclosed or distributed in source code form, be licensed for the purpose of making derivative works, or redistributable at no charge.

5. CUSTOM PRODUCT. Hashfast shall have exclusive rights to goods designed and manufactured for the unique needs of Buyer, to Buyer's specifications or requirements, such as an ASIC to specific clock rate or thermal specifications ("Custom Product"). Hashfast shall retain title to and possession of designs, masks and database tapes. Individual segments or parts of Custom Product designs, including standard cells, megacells, or base arrays, are the property of Hashfast and may be used by Hashfast in other designs and may not be used by Buyer except as a part of Custom Product designed and manufactured by Hashfast. Prices or schedules are subject to increase by Hashfast if any specifications are revised or supplemented or there are unforeseen difficulties with the design.

6. COMMERCIAL USE. Buyer represents and agrees that the Products it purchases are for its own internal, commercial use, and not for resale purposes. These Terms do not grant distribution rights as a reseller for Hashfast, which must be agreed to separately.

7. LIMITED PRODUCT WARRANTY AND DISCLAIMER.

(a) WARRANTY AGAINST DEFECTS. Hashfast warrants that under normal use the Products (excluding those referred to in Section 7(b) below) shall, at the time of delivery to Buyer and be substantially free from defects in material or workmanship and shall substantially conform to Hashfast's specifications for such Product. Buyer will notify Hashfast in writing of any non-conforming Products within ten (10) days of delivery, otherwise Hashfast will have no further obligation or warranty for such Products. Such notice will describe in reasonable detail the non-conformance claimed by Buyer. Delivered Product will be deemed accepted and conforming unless Buyer provides such notice within the ten (10) day period.

(b) HASHFAST' SOLE AND EXCLUSIVE OBLIGATION, AND BUYER'S SOLE AND EXCLUSIVE RIGHT, WITH RESPECT TO CLAIMS UNDER ITS WARRANTIES SHALL BE LIMITED TO THE REPLACEMENT OR REPAIR OF A DEFECTIVE OR NON-CONFORMING PRODUCT, OR IF HASHFAST CANNOT REPAIR OR REPLACE SUCH PRODUCT AFTER USING COMMERCIALLY REASONABLE EFFORTS, THEN A REFUND TO BUYER FOR THE PURCHASE PRICE THEREOF. HASHFAST WILL HAVE A REASONABLE TIME TO REPAIR, REPLACE OR REFUND. THE NON-CONFORMING OR DEFECTIVE PRODUCTS SHALL BECOME HASHFAST' PROPERTY AS SOON AS THEY ARE RETURNED FOR REPLACEMENT OR REFUND.

(c) At Hashfast's request, Buyer will ship Products returned under warranty claims to Hashfast's designated facility in conformance with Hashfast's then-current Return Material Authorization policy and are accompanied by a statement of the reason for the return on a Return Material Authorization form issued by Hashfast. Where warranty adjustment is made, Hashfast will pay for freight expenses. Buyer shall pay for returned Products that are not defective or non-conforming together with the freight, testing and handling costs associated therewith. Except as provided in this Section 7, Hashfast has no obligation to accept returns.

(d) Notwithstanding the foregoing, Hashfast shall have no obligations for breach of warranty if the alleged defect or non-conformance is found to have occurred as a result of environmental or stress testing, misuse, neglect, improper installation, accident or as a result of improper repair, operation at voltages other than as specified by Hashfast, use with equipment other than that sold by Hashfast, alteration, modification, storage, transportation or improper handling. Further, a computing Product will be deemed to operate within its specifications if it varies within ten (10%) more or less than the performance stated in its specifications when operated at the nominal voltage specified by Hashfast.

(e) THE WARRANTY GRANTED ABOVE SHALL EXTEND DIRECTLY TO BUYER AND NOT TO BUYER'S CUSTOMERS, AGENTS OR REPRESENTATIVES. THE EXPRESS WARRANTY GRANTED ABOVE IS IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR NON-INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS. ALL OTHER WARRANTIES WHETHER EXPRESSED OR IMPLIED ARE HEREBY SPECIFICALLY DISCLAIMED BY HASHFAST.

(f) Except as provided by Section 9, the foregoing states the entire liability of Hashfast, and Buyer's sole and exclusive remedies, in connection with defect or non-conforming Products.

8. LIMITATION OF LIABILITY.

(a) EXCEPT AS PROVIDED IN SECTION 9, NOTWITHSTANDING ANYTHING TO THE CONTRARY, HASHFAST SHALL IN NO CASE BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS OR LOST SAVINGS) ARISING OUT OF ANY AGREEMENT WHETHER OR NOT SUCH DAMAGES ARE BASED ON TORT, WARRANTY, CONTRACT OR ANY OTHER LEGAL THEORY – EVEN IF HASHFAST HAS BEEN ADVISED, OR IS AWARE, OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL HASHFAST BE LIABLE FOR EXCESS PROCUREMENT COSTS AND REWORK CHARGES.

(b) EXCEPT AS PROVIDED IN SECTION 9, HASHFAST' AGGREGATE LIABILITY TOWARDS BUYER UNDER ANY AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO: (1) THE GREATER OF (A) THE AMOUNT ACTUALLY RECEIVED BY HASHFAST IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO ANY LIABILITY FOR THE PRODUCTS CAUSING ANY LIABILITY OR (B) $5,000 U.S. DOLLARS; OR (2) IN THE CASE OF LIABILITY FOR DELAY OR NON-DELIVERY OF PRODUCTS, THE PURCHASE PRICE PAID FOR SUCH PRODUCTS.

(c) Any claim for damages must be brought by Buyer within ninety (90) days of the date of the event giving rise to any such claim, and any lawsuit relative to any such claim must be filed within one (1) year of the date of the claim. THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 8 WILL BE READ TO APPLY TO ANY LIABILITY OF HASHFAST AFFILIATES, AS AGGREGATED WITH THE LIABILITY OF HASHFAST.

9. APPLICABLE LAW EXCEPTIONS. NOTHING IN SECTIONS 7 OR 8 SHALL EXCLUDE OR LIMIT HASHFAST'S WARRANTY OR LIABILITY FOR LOSSES TO THE EXTENT THAT THEY MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR CONDITIONS OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE, BREACH OF CONTRACT, BREACH OF IMPLIED TERMS, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ONLY THE EXCLUSIONS AND LIMITATIONS THAT ARE LAWFULLY APPLIED TO BUYER WILL APPLY TO BUYER, AND HASHFAST'S LIABILITY WILL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. The limitations liability set forth in Section 8 shall not apply to death or personal injury caused by the negligence of Hashfast.

10. CONFIDENTIALITY. Buyer acknowledges that all technical, commercial and financial data disclosed to Buyer by Hashfast is the confidential information of Hashfast. Buyer shall not disclose any such confidential information to any third party and shall not use any such confidential information for any purpose other than as agreed by the parties and in conformance with the purchase transaction contemplated herein.

11. COMPLIANCE WITH LAWS. Each party hereto represents that it its duly authorized to enter into the Agreement and represents that with respect to its performance hereunder, and that each will comply with all applicable federal, state and local laws.

12. EXPORT. Buyer acknowledges that the Products and services provided under these Terms are subject to the customs and export control laws and regulations of the United States ("U.S."), may be rendered or performed either in the U.S., in countries outside the U.S., or outside of the borders of the country in which Buyer is located, and may also be subject to the customs and export laws and regulations of the country in which the Products or services are received. Hashfast's acceptance of any order is contingent upon the issuance of any applicable export license required by the U.S. Government or any other applicable national government, or obtaining an exception to such license; Hashfast is not liable for delays or failure to deliver resulting from your failure to obtain such license or to provide such certification.

13. REGULATORY REQUIREMENTS. Hashfast is not responsible for determining whether any Product satisfies the local regulatory requirements of the country (other than the U.S.A.) to which such Products are to be delivered, and Hashfast shall not be obligated to provide any Product where the resulting Products do not satisfy the local regulatory requirements.

14. ASSIGNMENT AND SETOFF. Buyer shall not assign any rights or obligations under the Agreement without the prior written consent of Hashfast. Buyer hereby waives any and all rights to offset existing and future claims against any payments due for Products sold under the Agreement or under any other agreement that Buyer and Hashfast may have and agrees to pay the amounts hereunder regardless of any claimed offset which may be asserted by Buyer or on its behalf.

15. GOVERNING LAW AND ARBITRATION.

(a) ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, its agents, employees, principals, successors, assigns, affiliates, subsidiaries, arising from or relating to the purchase of Product, these Terms, its interpretation or the breach, termination or validity thereof, Hashfast's advertising (each, a "Dispute") shall be governed by the laws of the State of California and the Federal Laws of the U.S.A., each without regard to conflicts of law. The parties agree that the UN Convention for the International Sale of Goods will have no force or effect on this Agreement.

(b) ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT) BETWEEN BUYER AND HASHFAST, its agents, employees, principals, successors, assigns, affiliates, subsidiaries, arising from or relating to the purchase of Product, these Terms, its interpretation or the breach, termination or validity thereof, Hashfast's advertising, SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION.

(c) THE ARBITRATION WILL BE CONDUCTED IN IN SANTA CLARA COUNTY, CALIFORNIA, U.S.A.

(d) The arbitrator shall have exclusive authority to resolve any dispute relating to arbitrability or enforceability of this arbitration provision including any unconscionability challenge or any other challenge that the arbitration provision or the Agreement is void, voidable or otherwise invalid. The arbitration shall be administered by the American Arbitration Association (AAA) or JAMS (or a substitute forum if both are unavailable). Arbitration proceedings shall be governed by this provision and the applicable procedures of the selected arbitration administrator, including any applicable procedures for consumer-related disputes, in effect at the time the claim is filed. The arbitrator(s) will not have the jurisdiction or power to award punitive damages, treble damages or any other damages which are not compensatory, even if permitted under the laws of the California or any other applicable law. Unless otherwise directed by the arbitrator(s), the parties will bear their own costs and expenses that are reasonable and necessary to participate in such arbitration, including attorneys' fees.

(e) NEITHER BUYER NOR HASHFAST SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER BUYERS, OR ARBITRATE OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A CLASS REPRESENTATIVE, CLASS MEMBER OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration).

(f) The arbitrator shall be empowered to grant whatever relief would be available in court under law or in equity. This transaction shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA). Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.

(g) Notwithstanding any other provision in this Section 15 to the contrary, either party will at all times be entitled to seek and obtain injunctive relief in relation to infringement or threatened infringement of its intellectual property rights, in in relation to misappropriation of its trade secrets, in any court having jurisdiction.

16. BREACH AND TERMINATION. Without prejudice to any rights or remedies Hashfast may have under the Agreement or at law, Hashfast may, by written notice to Buyer, terminate with immediate effect the Agreement, or any part thereof, without any liability whatsoever, if: (i) Buyer fails to make payment for any Products to Hashfast when due; (ii) Buyer fails to accept conforming Products supplied hereunder; (iii) a voluntary or involuntary petition in bankruptcy or winding up is filed against Buyer, any proceedings in insolvency or bankruptcy (including reorganization) are instituted against Buyer, a trustee or receiver is appointed over Buyer, any assignment is made for the benefit of creditors of Buyer; or (iv) Buyer violates or breaches any of the provisions of these Terms. Upon occurrence of any of the events referred to above under (i) through (iv), all payments to be made by Buyer under the Agreement shall become immediately due and payable. In the event of cancellation, termination or expiration of any Agreement, the following terms and conditions will survive: Sections 1, 2, 3(b)-(c), 4, 5, 6, 7 (as to limitations, disclaimers, and exclusions), and 8-24.

17. PRODUCT AND PRODUCTION CHANGES. Hashfast reserves the right to make at any time Product or production changes. In such event, such changes shall not on the whole negatively affect the performance characteristics of Products that have been ordered but not yet delivered.

18. U.S. GOVERNMENT RESTRICTED RIGHTS. The software and documentation provided with the Products, if any, are "commercial items" as that term is defined at 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the software and documentation with only those rights set forth herein. Contractor/manufacturer of Hashfast-branded software is Hashfast Technologies LLC, 97 South Second Street #175, San Jose, 95113 United States.

19. FORCE MAJEURE. Hashfast party will not be deemed in default of an Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, war, civil war, insurrections, strikes, fires, floods, earthquakes, labor disputes, epidemics, governmental regulations, freight embargoes, natural disaster, act of government, or any other cause beyond its reasonable control

20. ENTIRE AGREEMENT; SEVERABILITY. These Terms and any Agreement are the entire agreement between buyer and Hashfast with respect to its subject matter and supersedes all prior oral and written understandings, communications, or agreements between buyer and Hashfast. No agreement is made between Buyer and any Affliate. No amendment to or modification of these Terms or any Agreement, in whole or in part, will be valid or binding against Hashfast unless it is in writing and manually executed by an authorized representative of Hashfast. If any provision of these Terms or an Agreement should be found to be void or unenforceable, such provision will be stricken or modified, but only to the extent necessary to comply with the law, and the remainder of the provisions will remain in full force and effect.

21. REJECTION OF OTHER TERMS, ACCEPTANCE BY AGENTS. Any specifications and any terms or conditions set forth on any document or documents issued by Buyer either before or after issuance of any offer, order confirmation, or other document by Hashfast are hereby explicitly rejected and disregarded by Hashfast, and any such document shall be wholly inapplicable to any sale made by Hashfast and shall not be binding in any way on Hashfast.

22. CONTRACT CONSTRUCTION. In the event that any provision(s) of the Agreement or these Terms shall be held invalid or unenforceable by a court of competent jurisdiction or by any future legislative or administrative action, such holding or action shall not negate the validity or enforceability of any other provisions hereof. The word "or" as used in this Agreement has the meaning equivalent to "and/or". The terms 'include', 'includes' and 'including' will be deemed to be immediately followed by the phrase "without limitation."

23. WAIVER. The failure on the part of either party to exercise, or any delay in exercising, any right or remedy shall not operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy arising therefrom preclude any other or future exercise thereof or the exercise of any other right or remedy or by any related document or by law.

24. NOTICES. All notices or communications to be given under this Agreement shall be in writing and shall be deemed delivered upon delivery in person, by facsimile communication with written confirmation, by courier service with its confirmation of delivery to the proper address, or by United States certified, registered, first class or equivalent mail with written confirmation of receipt; each as addressed to the parties at their addresses set forth on the Offer or Confirmation, and as Hashfast may update from time to time.

25. RELATIONSHIP OF PARTIES. The parties are independent contractors. No provision of these Terms will or shall be deemed to create an association, trust, partnership, joint venture or other entity or similar legal relationship between Hashfast and Buyer, or impose a trust, partnership or fiduciary duty, obligation, or liability on or with respect to such entities. Neither party will have any rights, power or authority to act or create an obligation, express or implied, on behalf of another party except as specified in these Terms.

HASHFAST TERMS OF SALE - Revised August 5, 2013