1
2
3
4
5
6
7

Venkat Balasubramani (SBN 189192)
FOCAL PLLC
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax:     (206) 260-3966
Email: venkat@focallaw.com
Attorney for Plaintiff
PETE MORICI

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12
13
14
15
16
17
18

PETE MORICI, an individual,

               Plaintiff,

        v.

HASHFAST TECHNOLOGIES LLC, a
California limited liability company,
HASHFAST LLC, a Delaware limited
liability company, SIMON BARBER, an
individual, and EDUARDO deCASTRO, an
individual,

               Defendants.

Case No. 5:14-cv-00087-EJD

**PLAINTIFF PETE MORICI'S
OPPOSITION TO DEFENDANT SIMON
BARBER'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

Date:        June 4, 2015
Time:        9:00 AM
Courtroom: 4, 5th Floor
             280 South 1st St.
             San Jose, CA 95113

19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 5

II.    STATEMENT OF ISSUES .................................................................................. 6

III.   FACTUAL ALLEGATIONS .............................................................................. 6

IV.    PROCEDURAL BACKGROUND....................................................................... 8

V.     ARGUMENT ....................................................................................................... 8

  A.   This Court Should Either Reject Barber's Request for Judicial Notice or Admit  Morici's
Evidence That Barber Is Deliberately Misleading the Court.......................................... 9

    1.   Morici objects to Barber's request for judicial notice........................................... 9

    2.   The disputed SOW does not require resolution of the Motion in Barber's favor. ............... 10

  B.   The FAC Alleges All Elements of Fraud with Adequate Specificity ..................................... 11

    1.   Morici adequately alleges fraud based on the promised delivery schedule. ........................ 11

    2.   This is not a "fraud by hindsight" case. .............................................................. 12

    3.   Barber's reliance on the terms of service is misplaced. ....................................... 14

  C.   Barber's Arguments Regarding the Bitcoin Refund and Items "In Stock" Are Meritless ...... 15

    1.   Barber Personally Promised "Refunds" in Bitcoin, But His Motion Denies the    Common
Meaning of "Refund"................................................................................... 15

    2.   Barber's arguments that "in stock" was not misleading are incorrect. ................................ 17

  D.   The FAC Alleges a Valid UCL Claim Against Barber.............**Error! Bookmark not defined.**

    1.   Barber has liability under the UCL for his own statements. ................................. 18

    2.   Barber also has liability because he was the moving force of HashFast's violations......... 19

    3.   Barber's arguments regarding available remedies are off the mark.................................... 20

V.     CONCLUSION................................................................................................ 20

1

2

## **TABLE OF AUTHORITIES**

### **CASES**

*Am. Specialty Health Group, Inc. v. Healthways, Inc.*, No.: 11-CV-02819 BEN (KSC), 2012 U.S.
Dist. LEXIS 147522, *15 (S.D. Cal. Oct. 12, 2012) ...................................................... 17

*Berliner v. Lotus Dev. Corp.*, 783 F.Supp. 708, 710 (D. Mass. 1992) .............................. 13

*Borow v. nVIEW Corp.*, 829 F. Supp. 828, 833 (E.D. Va. 1993) .............................. 12, 13

*Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1458 (2008) ...................................................... 20

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).......................... 9, 11

*Chelini v. Nieri*, 32 Cal. 2d 480, 487 (1948)................................................................. 11, 14

*Cleveland v. United States*, 546 F. Supp. 2d 732, 778 (N.D. Cal. 2008)................................ 9

*Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011) ......................... 9, 14

*DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1223 (S.D. Cal. 2001) .................................. 12

*Foman v. Davis*, 371 U.S. 178, 182  (1962) ........................................................................ 20

*Hollingsworth v. Lewis*, 93 Cal. App. 526, 528 (Cal. App. 1928)...................................... 16

*In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1040 (N.D. Cal. 2012) ................ 18

*In re Glenfed Inc. Securities Litigation*, 42 F.3d 1541, 1550 (9th Cir. 1994) ...................... 8

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) ........................................ 17

*Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996) .............................................. 11, 13, 16

*Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ........................................................ 9

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ...................................................... 8

*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1138 (9th Cir. 2001)......... 10

*People v. Toomey*, 157 Cal. App. 3d 1, 22 (1984)................................................................. 19

*People v. Witzerman*, 29 Cal. App. 3d 169, 180-181 (1972)................................................ 19

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, 2011 U.S. Dist. LEXIS 148592, 12 (N.D. Cal. Nov.
8, 2011) .................................................................................................................. 17

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 128 (2d Cir. 2012)....................................... 14

*Shahar v. Hotwire, Inc.*, 2013 U.S. Dist. LEXIS 104585, 14 (N.D. Cal. July 25, 2013) .................. 10

*Tech Data Corp. v. AU Optronics Corp.*, 2012 U.S. Dist. LEXIS 112781, 61 (N.D. Cal. Aug. 6,
2012) ...................................................................................................................... 10

*Wilkins v. NBC*, 71 Cal. App. 4th 1066, 1081 (1999)......................................................... 8

*ZooBuh, Inc. v. Better Broadcasting, LLC*, No.: 2:11cv00516-DN (D. Utah May 31, 2013) ............ 17

**Statutes**

16 C.F.R. 435.2(a)(1)(ii) ................................................................................................................ 14

Cal. Bus. & Prof. Code § 17203 ..................................................................................................... 19

Cal. Bus. and Prof. Code §17200, et seq. ........................................................................................ 8

Cal. Civ. Code § 1723 ..................................................................................................................... 18

Fed. R. Civ. P. 15 ............................................................................................................................ 20

Fed. R. Evid 201(b) ........................................................................................................................... 9

# I.     INTRODUCTION

Plaintiff Pete Morici ("Morici") brings claims against Simon Barber ("Barber") alleging that as founder and Chief Technology Officer of HashFast Technologies, Inc. and its related entity HashFast LLC ("HashFast"), Barber intentionally misrepresented the availability, delivery dates and refund terms of "Baby Jet" Bitcoin mining computers that Morici ordered from HashFast. As with everyone in the Bitcoin community, the delivery date was of crucial importance to Morici, and Barber's pointed misstatements regarding this key issue provide a more-than-adequate basis for alleging fraud.

Barber tries to characterize this as a "fraud by hindsight" case, but it is far from it. Morici alleges that Barber knew at the time he made the statements regarding the timing of delivery that the dates in question were nearly impossible to achieve. Prior to making his decision to purchase the BabyJet computers, Morici viewed and relied upon several false assurances that were made directly by Barber (as well as by HashFast representatives under the direction or supervision of Barber) regarding the delivery dates for the BabyJets, and refund terms. Barber had information available to him, contemporaneous with the false assurances, that the BabyJet computers could not be completed in time to meet the delivery dates promised. This satisfies the standard for claims of fraud and unfair competition under California law.

In his Motion to Dismiss ("Motion", Dkt. No. 61), Barber mischaracterizes the allegations in Morici's First Amended Complaint ("FAC", Dkt. No. 59). The Court previously noted that the original complaint "lumped all of the defendants into one designation in the Complaint - namely, 'Hashfast' - and then failed to differentiate the fraudulent conduct attributable to each defendant." (Dkt. No. 58 at 5:20-22.) In contrast, the FAC includes (1) specific allegations about Barber's fraudulent statements and (2) allegations that he was the moving force behind certain HashFast statements. Barber is thus incorrect that the FAC does not remedy the deficiencies in the original complaint. Barber's claim that Morici does not allege reliance on "any . . . statement by Barber before he placed his order for two BabyJets on August 10, 2013" (Motion at 6:6-7) is similarly incorrect. Morici's FAC meets all required standards. The Court should deny Barber's Motion in its entirety.

## II.    STATEMENT OF ISSUES

1.      Should the Court reject Barber's request for judicial notice, which seeks to admit into evidence an unauthenticated partial exhibit.

2.      In the event the Court grants Barber's request for judicial notice, should the Court also admit Morici's properly authenticated exhibit, which refutes Barber's contentions regarding his exhibit.

3.      Should the Court deny Barber's request to dismiss Morici's fraud and UCL claims, given that Morici's FAC contains specific allegations of all elements of fraud and unfair competition with respect to Barber in his individual capacity and as a moving force in HashFast's own fraud.

4.      Should the Court reject Barber's argument that Morici may not obtain any UCL relief whatsoever against Barber, despite the contrary provisions of the UCL statute and case law.

## III.    FACTUAL ALLEGATIONS

**Barber's Fraudulent Representations**: On July 18, 2013, Barber personally and actively participated in the public marketing plan for the BabyJet by posting a link on the HashFast website to a "Status Report" allegedly written by Uniquify, Inc. ("Uniquify") regarding the G1 chip used in BabyJet Bitcoin mining machines. (FAC ¶ 29.) The "status report" was intended to convey to prospective customers that the production of the BabyJets would be ahead of schedule ("we have been able to shorten the projected time to tapeout from an original estimate of 12 weeks to just 6 weeks . . ."). (*Id.*; FAC Ex.A.) On August 8, 2013, Barber posted that "HashFast is launching sales of the BabyJet [mining product]," and further stated "Shipments begin: October 20th-30th . . . ." (FAC ¶ 31; *Id*. Ex. C.)

In a public post on the Bitcoin Talk forum made on August 10, 2013, the day Morici placed his order, Barber advised that "Orders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC." (FAC ¶ 43.)[1]

---

[1]  Morici's FAC contains other allegations concerning Barber's false statements. For example, it alleges that Barber directed Hashfast staffer John Skrodenis, who repeated the misleading statements Barber made about the BabyJet delivery date (FAC ¶ 39). However, since Barber has moved to dismiss the claims against him *in their entirety, not in part* (Motion, p. 4), this opposition brief

**Barber's Knowledge of Falsity**: When Barber posted on August 8 that delivery would begin in October, he knew his statement was false because he was aware that delivery in October was nearly impossible given the timeline for development of the G1 chip agreed to in Hashfast's contract with Uniquify, the "SOW I". (FAC ¶ 33.) Further, Barber had knowledge that the funds collected from customers were used to pay vendors and other third parties. (FAC ¶ 20.) Therefore, Barber knew that in the event refunds became necessary, HashFast would not be able to return the Bitcoin paid by customers such as Morici.

**Barber's Intent to Induce Reliance**: The FAC alleges that Barber knew that the above false statements would induce potential customers, including Morici, to purchase BabyJets, and that the statements were made for that purpose. (FAC ¶ 33.)

**Morici's Justifiable Reliance on Barber's Statements**: Morici was a participant in the internet forum where Barber posted the above statements. (FAC ¶ 28.) In the FAC, directly above the paragraphs that describe Barber's personal false statements, the FAC includes the header "FALSE STATEMENTS MADE TO MORICI THAT INDUCED HIS ORDER". (*Id*. at 9:11.) As mentioned, Barber falsely claimed that delivery of BabyJets would be made in October 2013. (*Id*. ¶ 79.) Morici reasonably relied on this statement, among other false claims made by Defendants, including that "refunds [would] be given in BTC [Bitcoin]". (*Id*. ¶ 82; ¶ 43; *Id*. at 2:2-5.)

**Damage Resulting from Barber's Misrepresentations**: Morici was damaged because he relied on the false statements Barber personally made. (FAC ¶ 83.) Morici purchased two BabyJets on August 10, 2013 "with the expectation and understanding that his computers would be delivered in October" — which to him, was a critical term of the transaction. (*Id*. ¶¶ 38, 41, 48.) Morici did not receive the BabyJets in October, and his subsequent attempt to obtain a refund was futile. (*Id*. at 2:18-24.) Moreover, Morici was not given back the Bitcoin that he paid, as promised. (FAC ¶¶ 65-67.)

---

focuses on Barber's personal statements that most obviously refute his arguments in the Motion. Morici does not withdraw or concede the inefficacy of any of the allegations in the FAC.

## IV.   PROCEDURAL BACKGROUND

Morici brought claims against the individual and entity defendants for breach of contract, fraud, unfair business practices under Cal. Bus. and Prof. Code §17200, et seq., and declaratory relief. Defendants filed a motion to dismiss, seeking dismissal of various claims. (Dkt. No. 34.) While the initially filed motion to dismiss was pending, both HashFast entities entered bankruptcy proceedings, and Defendants filed a notice of bankruptcy and suggestion for a stay (as to all defendants). (Dkt. No. 22.) The Court stayed this lawsuit as to all defendants (Dkt. No. 23), but at Morici's request granted relief from stay as to the Individual Defendants.[2] (Dkt. No. 29.) The stay was ultimately lifted, and the Court granted the individual defendants' motion to dismiss on the basis that the initial complaint did not adequately specify which defendants made which misleading statements. Morici filed an Amended Complaint on March 16, 2015. (Dkt. No. 59.) Barber moved to dismiss the Amended Complaint. (Dkt. No. 61.)

## V.   ARGUMENT

Under California law, fraud consists of: (1) a representation; (2) that is known to be false; (3) made with the intent to defraud; (4) that induces reliance; and (5) causes damage. *Wilkins v. NBC*, 71 Cal. App. 4th 1066, 1081 (1999). In federal court, a claim for fraud must meet the heightened pleading requirements of Rule 9 (*i.e.*, allege the "who, what when, where" of the statements); however, a plaintiff is not required to allege the facts giving rise to an inference of scienter with particularity. *In re Glenfed Inc. Securities Litigation*, 42 F.3d 1541, 1550 (9th Cir. 1994). Rule 9(b)'s pleading requirements are relaxed when it comes to matters "particularly within the opposing party's knowledge." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Indeed, a plaintiff "cannot be expected to have personal knowledge" regarding an opposing party's state of mind. *Id.*

---

[2] Barber apparently laments that the litigation has been ongoing for "fourteen months". (Motion, p.5.) But of course delay, if any, was not occasioned by Morici, but rather by Barber himself who sought protection of the stay that would normally be only applicable to the corporate defendants.

**A.      This Court Should Either Reject Barber's Request for Judicial Notice or Admit Morici's Evidence That Barber Is Deliberately Misleading the Court**

As Barber admits in the Motion, a court must accept all factual allegations pleaded in the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (cited in Motion at 7:17-18). And the FAC alleges that when Barber posted on August 8 that delivery would begin in October, he knew his statement was false because he was aware that delivery in October was impossible given the timeline for development of the G1 chip agreed to in the Uniqify SOW I. (FAC ¶ 33.)  Barber seeks to disprove this allegation by requesting judicial notice of a partial, unauthenticated copy of what purports to be the July 1, 2013 Statement of Work agreement ("SOW") referenced in the FAC. (*See* FAC ¶ 26.) The FAC alleges that Barber signed the SOW, which was an agreement between Hashfast and Uniqify (FAC ¶¶ 25-26). But Barber's Request for Judicial Notice ("RJN", Dkt. No. 62) does not meet the standards required by Rule 201(b). Under that rule the court may notice "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid 201(b).

*1.      Morici objects to Barber's request for judicial notice.*

Barber's purported SOW is subject to competing interpretations, and comes from a source whose accuracy can easily be questioned. To begin with, the RJN is signed by Barber's lawyer — not Barber — and the RJN fails to provide foundation indicating that Barber's lawyer is capable of authenticating the SOW. This is sufficient reason to reject Barber's request. *See*, *e.g.*, *Cleveland v. United States*, 546 F. Supp. 2d 732, 778 (N.D. Cal. 2008) (sustaining objection to judicial notice of documents that were not authenticated); *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (court may not take judicial notice of a fact that is "subject to reasonable dispute"); *see also Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011) (rejecting Facebook's request to take judicial notice of various Terms of Use documents because "substantial questions . . . remain in this instance as to when various versions of the documents may have appeared on the website and the extent to which they necessarily bound all plaintiffs"). Also, while Barber has requested judicial notice of this document (as well as permission to file it under seal) he has never produced for Morici a copy of the entire SOW from which Barber extrapolates this alleged schedule for the tape-out. This

requires that Barber's purported SOW be stricken.

   2. *The disputed SOW does not require resolution of the Motion in Barber's favor.*

  Barber's purported SOW is not properly the subject of judicial notice for another reason — it is an agreement the effect of which the parties dispute, and in any event which requires the testimony of Uniquify representatives to interpret. Thus, without any countervailing allegations on Morici's part, the SOW Barber relies on would not warrant resolution of the motion in his favor. *See Shahar v. Hotwire, Inc.*, 2013 U.S. Dist. LEXIS 104585, 14 (N.D. Cal. July 25, 2013) ("interpreting the contract . . .  and determining the parties' intent are factual questions improper for resolution on . . . motion to dismiss"); *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1138 (9th Cir. 2001) ("Under California law . . . the interpretation of contract terms generally[] is a question of the intent of the parties and is typically a question of fact for the jury.").[3] Barber is essentially asking this Court to decide a key factual issue in his favor by accepting Barber's one-sided view of the SOW — an improper request since the SOW's terms are in dispute. Courts have recognized that it is an "improper use of judicial notice to construe… disputed terms in favor of the defendant on a motion to dismiss." *Tech Data Corp. v. AU Optronics Corp.*, 2012 U.S. Dist. LEXIS 112781, 61 (N.D. Cal. Aug. 6, 2012).

  But if the Court for some reason decides to grant Barber's request and take judicial notice of the SOW, Morici submits countervailing evidence (the declaration of Robert Smith of Uniquify) that at a minimum shows a factual dispute.[4] Mr. Smith's declaration properly authenticates the SOW (he is a senior vice president of Uniquify, which is a party to the SOW). He affirms that Barber's claim of a contemplated August 12, 2013 tape-out date, "resulting in a finished product in mid-October 2013" (see Motion at 11:12-13) is "simply false". (Smith Decl. ¶ 7.) Mr. Smith explains that:

---

 [3] HashFast Technologies LLC is a limited liability company organized and existing under the laws of the State of California." (FAC ¶ 2.) Morici has asserted claims under California law, and Barber has not made any choice of law arguments to the contrary.

 [4] Morici submits the Smith Declaration with this opposition solely to authenticate the SOW properly and to address Barber's misstatements regarding it. If Barber's Motion is converted to one for summary judgment — which is premature at this stage of litigation — then "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See* Fed.R.Civ.P. 12(d).

> The relevant agreement specified September 15, 2013 as the deadline for tape-out. The August 12, 2013 date mentioned in Section 10.4 of SOW I was merely the top tier (and most unlikely) date on the bonus schedule devised by HashFast in order to incentivize a faster completion of the design for the G1. This date was nearly impossible to achieve and it was *never anticipated* on the part of Uniquify *that it could be achieved*.

Smith Decl. ¶ 7 (emphasis added).

The FAC alleges that when Barber publicly posted that the BabyJet delivery would begin in October (FAC ¶ 31; *Id*. Ex. C.), he knew that date was not feasible given the SOW timeline (FAC ¶ 33). The allegations in the complaint are the focus of a motion to dismiss. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). Barber's unauthenticated, partial SOW, as well as his misleading arguments regarding its interpretation should be dealt with in the discovery period. Nevertheless, to the extent the Court is inclined to consider it, it does not undermine Morici's claims (particularly at the motion to dismiss stage).

**B.     The FAC Alleges All Elements of Fraud with Adequate Specificity**

A plaintiff alleging fraud under California law must plead facts demonstrating five elements: (1) a misrepresentation; (2) the speaker's knowledge of falsity; (3) the intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. *See, e.g., Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996). A statement regarding a date-certain for performance or delivery can support a fraud claim, where, as here, the promisor has doubts about his or her ability to perform. *Chelini v. Nieri*, 32 Cal. 2d 480, 487 (1948) ("tort of deceit" adequately pled where plaintiff alleges defendant induced plaintiff to enter into an agreement that defendant knew he could not perform).

1.     *Morici adequately alleges fraud based on the promised delivery schedule.*

Morici's FAC meets this standard. In August 2013, Barber posted a misleading statement that BabyJets would be shipped beginning in October 2013. (FAC ¶ 31; *Id*. Ex. C.) Based on the timeline of the SOW that Barber personally signed, Barber knew this statement was false at the time he made it. (FAC ¶¶ 26, 33.) He made it with the intent to induce customers like Morici to purchase BabyJets. (*Id*.) Morici justifiably relied on Barber's misleading statements. (FAC at 9:11; *Id*. ¶¶ 28, 79, 82.) And Morici suffered damage because of those statements — he purchased BabyJets in August based on Barber's misleading statements that shipping would begin in October. (FAC ¶¶ 38,

PLAINTIFF'S OPP TO DEF BARBER'S MOT TO DISMISS- 11                Case No. 5:14-cv-00087-EJD

41, 48, 79, 81, 83.) "[A]cquisition of the latest technology is crucial for miners, and to those who purchase and sell Bitcoin mining equipment, the timing of shipment is inherently important." (FAC ¶ 12.) The new allegations in the FAC specifically address Barber's conduct and include all five elements of fraud. They allege that Morici was misled in August 2013, and placed an order to his detriment then, because of knowingly false statements Barber made earlier in the same month, August 2013, as well as in July 2013. (FAC ¶¶ 29, 31.)

"[A] complaint can explain why a statement was false or misleading when made by identifying either (1) inconsistent contemporaneous statements or (2) inconsistent contemporaneous information (such as an internal report) that was made by or was available to the defendants." *DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1223 (S.D. Cal. 2001) (internal citation omitted). Barber made false and misleading statements prior to Morici's purchase of BabyJets, and when Barber made them he had inconsistent contemporaneous information. The FAC specifically alleges both. At the time Barber made assurances of delivery, specifically stating that "shipments begin: Oct 20th-30th" (in order to raise operating capital to begin production in the first place) he knew that delivery of the BabyJets could not plausibly happen within this timeframe. (FAC ¶¶ 25-27.)

     2.     *This is not a "fraud by hindsight" case.*

Barber expends considerable energy on an argument ("fraud by hindsight") based on two securities fraud cases from Virginia and Massachusetts. (Motion at 8-11.) Both cases involved delivery or release dates that were clearly projections but that ultimately did not come to pass. The court in both cases said that mere delayed delivery alone is not sufficient to raise an inference of fraud.

Barber's Virginia case actually supports Morici's fraud claim. There the court wrote that "to survive a Rule 9(b) motion, plaintiffs must point in the complaint to *some reason* that the difference between the rosy projections and later results is attributable to fraud." *Borow v. nVIEW Corp.*, 829 F. Supp. 828, 833 (E.D. Va. 1993) (emphasis added). In the *Borow* complaint, there appears to have been no equivalent of the allegation here (*i.e.*, that Barber misled Morici into believing BabyJets would ship in October, although Barber had previously signed an SOW which made him aware, at

the time when he made the misleading statement, that they would not ship in October). Accordingly, Barber's reliance on *Borow* is off point.

Nor does *Berliner v. Lotus Dev. Corp.*, 783 F.Supp. 708, 710 (D. Mass. 1992) provide Barber any support. In *Berliner*, the court wrote:

> On February 25, 1988, Lotus announced that Release 3.0 would be available "late" in the second quarter of 1988 (as opposed to "in the second quarter of 1988") . . . *The complaint identifies no facts or circumstances that suggest that this projection was false when made*.

*Berliner*, 783 F. Supp. at 710 (emphasis added). Again, the FAC in this case does identify such facts. In August 2013, Barber knew that the terms of the SOW (which Barber had signed the previous month) would result in BabyJets being shipped much later than October 2013, yet Barber misrepresented to the public (including, specifically, Morici) that shipping would begin in October. These are specific facts that suggest that Barber's statement was false when made.

Unlike the plaintiffs in *Borow* and *Berliner*, Morici alleges that Barber made representations regarding performance (*i.e.*, the delivery date) that Barber knew definitively, at the time the statements were made, could not be achieved. To the contrary, Morici alleges that Barber had full knowledge that his promised delivery date was virtually impossible — *i.e.*, the microchip processor for the BabyJet would not be available for assembly into the final product until well after the shipping date that Morici relied on when he made his purchase. (*See*, *e.g.*, FAC ¶¶ 25-27 (Barber's knowledge that chip would not be available in time to meet an October delivery date); FAC ¶31 (Barber's own statement that shipments would begin in October); and FAC ¶¶ 35-37 (Morici's reliance on Barber's statements).)

Under California law—regardless of what out-of-district courts may hold in securities fraud cases—the allegations in Morici's FAC more than adequately support a claim of fraud. Barber knew that HashFast would not be able to meet the promised delivery deadlines for the BabyJets yet he made assurances otherwise. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."); *Chelini v. Nieri*, 32 Cal. 2d 480, 487 (1948) ("tort of deceit" adequately pled where plaintiff alleges

defendant induced plaintiff to enter into an agreement that defendant knew he could not perform).

### 3. Barber's reliance on the terms of service is misplaced.

Barber also argues that Morici could not have been misled into placing an order for BabyJets on August 10, 2013 by pointing to a statement Barber made two days earlier, on August 8, 2013. (Motion at 9:1-2: "with the benefit of hindsight, he [Morici] alleges the statements in August 2013 regarding an 'October 20-30' shipping date were 'false at the time they were made'.") Why couldn't Morici have been misled on August 10, 2013 by Barber's August 8 statement, according to Barber? Because in October 2013, Hashfast pushed the shipping date back to November, and in November 2013 Hashfast delayed it again until December. (Motion at 8:16-19.) Why is Morici expected to have had knowledge in August 2013 of these future postponements, months before they occurred? Barber never says, because it is impossible for Morici to have known what Hashfast would do in the future.

In support of his novel theory of precognition, Barber refers to another unauthenticated document attached to his RJN—an order confirmation dated August 18, 2013—eight days after Morici placed his order for BabyJets. (Motion at 8 n. 1; RJN Ex. B; FAC ¶¶ 38, 41, 48.) Barber argues that Morici could not have been misled on August 10, because in the following week (i.e., *the week after Morici was misled by Barber's statements* on and before August 10), Morici would receive terms of sale that were different from what Barber posted on August 8. (Motion at 8 n. 1.) As a matter of law, it is clear that terms sent after-the-fact (*i.e.*, post-transaction) cannot bind a consumer in these circumstances. *See generally Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 128 (2d Cir. 2012); *see also* 16 C.F.R. 435.2(a)(1)(ii) (requiring clear disclosure of delivery dates for internet and mail order sales). Additionally, Barber's request to take judicial notice of the terms of sale is improper for the same reason his request to take judicial notice of the SOW is improper: the terms of sale are also subject to dispute and both their authenticity and legal effect are questioned. *See Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011) (rejecting Facebook's request to take judicial notice of various Terms of Use documents because "substantial questions . . . remain in this instance as to when various versions of the documents may have appeared on the website and the extent to which they necessarily bound all plaintiffs").

Barber also suggests that Morici could not have been deceived in August 2013 because, according to Barber, Morici "took no action consistent with reliance" in late October 2013. (Motion at 13:17-18 and 13:23-24.) Barber provides no authority in support of this argument, because there is none. How does Morici's alleged "failure to take action" in late October prove that Morici was not deceived two-and-a-half months earlier? Barber does not explain. And once again, he raises topics that should be dealt with in the discovery period. At this point, it is inappropriate to dismiss Morici's complaint because of Barber's personal beliefs about what action Morici should have taken months after Barber defrauded him.

Morici has made clear and specific allegations against Barber on all five elements of a fraud claim. The Court should deny Barber's request to dismiss that claim.

## C.   Barber's Arguments Regarding the Bitcoin Refund and Items "In Stock" Are Meritless

In addition to the core allegation that Barber knowingly misstated the delivery date, Morici also alleges that Barber made misstatements regarding the form of refund (if any) that would be provided and was responsible for stating that the BabyJet machines were "in stock" at the time of purchase. Although Morici need not raise additional allegations beyond the delivery date, both of these allegations are also sufficient to state fraud claims.

### 1.   *Barber Personally Promised "Refunds" in Bitcoin, But His Motion Denies the Common Meaning of "Refund".*

As the allegations summarized in Section III above indicate, Barber guaranteed refunds in Bitcoins while knowing his company Hashfast could not deliver on that guarantee. Barber's argument that the FAC "*alleges no facts* showing this statement was false when made" (Motion at 14:12; emphasis original) is mistaken. (*See, e.g.*, FAC ¶¶ 20, 44.) Morici also relied on this false guarantee to his detriment. (FAC ¶ 43.)

Barber makes much of Morici's attribution of false statements to "Hashfast" in paragraph 43 of the FAC — but Barber ignores the clear allegation that Barber himself made those statements:

> HashFast represented that refunds would be paid in Bitcoin and Morici relied on such representations. In a public post on Bitcoin Talk made on August 10, 2013, the day Mr. Morici placed his order, *Barber advised* that "Orders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC."

(FAC ¶ 43; emphasis added.)

Morici paid Hashfast 110.647885 Bitcoins (BTC) (FAC ¶ 45), but after canceling his order he never received a refund of what he paid — 110.647885 BTC. (FAC ¶¶ 65, 70.) The very word "refund" — which Barber used in his August 10 post —  means a guarantee to pay back what the customer originally paid:

> If we turn to any of the dictionaries we find that one of "the ordinary and popular" meanings of the word refund is to repay. (See New Standard, Webster's New International and Century.) When interpreting the meaning of words used in a contract the court should give to the words used "their ordinary and popular" meaning. (Civ. Code, sec. 1644.)

*Hollingsworth v. Lewis*, 93 Cal. App. 526, 528 (Cal. App. 1928). And Barber's false promise to refund in Bitcoin implied to consumers that they would receive refunds in Bitcoin. *Lazar*, 12 Cal. 4th at 638 ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud").

Remarkably, Barber argues that a "refund" of 110.647885 Bitcoins could mean payment of fewer Bitcoins than the customer originally paid.[5] (Motion 15:3-6; *Id*. 14:23-24.) But the plain meaning of "refund" means to pay back what the customer gave you. Barber is assuming the right to pay Morici in any currency of Barber's choosing, using whatever exchange rate is most favorable to Barber. Barber did not promise that BabyJet refunds would be made "in U.S. dollars that equal, on the day of our choosing, the purchase price for the Bitcoins the customer originally paid." He said they would be made in Bitcoin, and that means paying back what the customer originally paid — not a supposed U.S. dollar "equivalent" that is in truth worth much less than a refund of the number of Bitcoins Morici paid.

---

[5] Barber makes a lackluster argument that his arguments around the refund language somehow undermines the Court's subject matter jurisdiction. This assumes incorrectly of course that Morici did not suffer any damages other than a refund. In any event, Morici can assert a good faith basis for damages that well exceed the jurisdictional threshold.

1

2.      *Barber's arguments that "in stock" was not misleading are incorrect.*

2

Barber alleges that Morici cannot state a claim for the website statements to the effect that

3

HashFast had BabyJets "in stock" because this cannot be attributed to Barber and it is also not

4

misleading. (Motion at 12.) This is incorrect.

5

Morici's FAC alleges that Barber can be held responsible for the website statements because

6

he was the one who was involved in negotiating the procurement of the BabyJet machines and would

7

thus have knowledge regarding whether or not they were "in stock". (FAC ¶ 35.) It is a matter of

8

common sense that a website offering products which its prospective consumers are clamoring for,

9

which advertises that they are "in stock" to induce purchases, is making an actionable statement. *See*

10

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) ("a consumer who relies on a product

11

label and challenges a misrepresentation contained therein can satisfy the standing requirement of

12

section 17204 by alleging . . . that he or she would not have bought the product but for the

13

misrepresentation"). Morici alleges that he viewed and relied on the foregoing representation. (FAC

14

¶ 37.)

15

To the extent Barber alleges that the statement was not misleading as a matter of law, he cites

16

no authority whatsoever for this proposition. While he argues that a product to be shipped in the

17

future can never be accurately described as "in stock" at the time it is ordered, he tellingly does not

18

cite any authority for this proposition. He additionally points to stray statements in a Bitcoin Talk

19

forum thread that he argues constitute disclosure that the product was "in development" and not "in

20

stock". Again, these are not necessarily inconsistent with an item being inaccurately described as "in

21

stock," but even if they were, the statements in question are not the type of conspicuous disclaimers

22

that would neutralize otherwise misleading claims. *Am. Specialty Health Group, Inc. v. Healthways,*

23

*Inc.*, No.: 11-CV-02819 BEN (KSC), 2012 U.S. Dist. LEXIS 147522, *15 (S.D. Cal. Oct. 12, 2012)

24

("[d]isclaimers or qualifications in any particular ad are not adequate to avoid liability unless they

25

are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to

26

leave an accurate impression"); *ZooBuh, Inc. v. Better Broadcasting, LLC*, No.: 2:11cv00516-DN

27

(D. Utah May 31, 2013) (remotely hosted images cannot provide clear and conspicuous disclosure in

28

email).

1    The question of course is whether a reasonable consumer in Morici's position would be

2    misled, and this is a question of fact under California law. *Rezner v. Bayerishe Hypo-Und*

3    *Vereinsbank AG*, 2011 U.S. Dist. LEXIS 148592, 12 (N.D. Cal. Nov. 8, 2011) ("California courts

4    generally view whether a reasonable consumer would likely be deceived by a given business practice

5    as a question of fact which requires weighing of the evidence").

6    **D.    The FAC Alleges a Valid UCL Claim Against Barber**

7         *1.    Barber has liability under the UCL for his own statements.*

8         A business practice is "unfair" under the UCL if it causes substantial consumer injury, is not

9    outweighed by any countervailing benefit to consumers or to competition, and is not an injury the

10   consumers themselves could have reasonably avoided. *In re Apple In-App Purchase Litig.*, 855 F.

11   Supp. 2d 1030, 1040 (N.D. Cal. 2012). As he concedes, Barber's deception of Morici based on the

12   statements regarding delivery dates, refunds being provided in Bitcoin, and BabyJet miners being "in

13   stock" alone is sufficient to meet this standard to the extent they state a claim for fraud. *See* Motion

14   at 17:1 ("[a]s his fraud claim goes, so goes his UCL claim").

15        Barber's fraud was inherently unfair, not outweighed by a countervailing benefit, and not an

16   injury Morici could have reasonably avoided. Barber's actions also (independently) constitute unfair

17   competition because they violate a California statute that requires merchants to be clear about any

18   no-refund policies and provide refunds upon request. *See* Cal. Civ. Code § 1723 (requiring refund

19   policies to be conspicuously posted).

20        Barber's 17200 arguments here are easily dismissed. He claims that the FAC "lump[s]

21   multiple defendants together".  (Motion at 17:4-5.) While the FAC does make some references to

22   actions taken by multiple defendants (which is proper, since some actions were taken by multiple

23   defendants), Barber ignores specific allegations such as these:

24        Barber and deCastro personally participated in the foregoing activities, for example
25        by making misrepresentations regarding the delivery deadline and refund terms for
          the BabyJets (while knowing that these deadlines and terms would not be satisfied).

26   (FAC ¶ 86.) This clearly includes Barber's personal statements regarding an October shipment date,

27   as the UCL claim "incorporates by reference all preceding paragraphs of the Complaint". (FAC ¶

28   84.) Barber's knowing misrepresentations about the delivery deadline for BabyJets caused injury to

Morici, a consumer who purchased BabyJets. Barber's argument that " plaintiff's UCL claim against Barber is based on conclusory allegations about control arising out of Barber's status as a Hashfast officer and director" (Motion at 18:1-2) is simply incorrect, as the above allegations show.

        **2.**        *Barber also has liability because he was the moving force of HashFast's violations.*

Barber also bears independent liability because of his widespread involvement and control over HashFast. *See People v. Witzerman*, 29 Cal. App. 3d 169, 180-181 (1972) (concluding that partners in a sales agency could be held liable for engaging in misleading business practices because they actively participated in the sale of "cattle care contracts" based on misrepresentations); *People v. Toomey*, 157 Cal. App. 3d 1, 22 (1984) (finding that president could be held personally responsible for the sales of discount coupon books by the company's employees and distributors due to his extensive involvement). *Toomey* is instructive; there, the court found the following to be sufficient to state a claim for personal liability:

> [Toomey] orchestrated all aspects of the business. Overwhelming evidence shows that he prepared the solicitation scripts, determined the content of coupon packages to be sold, and directed the refund policy which the company followed.

*Id.*

The Court previously dismissed these claims on the basis that the allegations in the original complaint were vague and based on a theory of vicarious liability. In contrast, the FAC contains specific allegations regarding Barber's widespread involvement and control over the acts in question. Barber generated the overall business plan for HashFast and was compensated for this. (FAC ¶ 19.) Barber signed the SOW with Uniquify that gave him knowledge of HashFast's inability to fulfil the October shipping date that he promised would occur. (FAC ¶¶ 25, 26.) Barber posted an update in the form of a "Status Report" that was a part of public marketing of the BabyJet computers. And of course, Barber made specific statements on the Bitcoin Talk online forum regarding the delivery date, as well as the refunds that would be provided. (FAC ¶¶ 31, 43.) To be sure, deCastro, Barber's other co-founder was also extensively involved, but the foregoing allegations detail Barber's own extensive involvement and the control over the unfair trade practices in question. This level of involvement was sufficient in *Toomey* and *Witzerman* and should likewise be sufficient here.

*3.     Barber's arguments regarding available remedies are off the mark.*

And Barber's argument that no UCL remedies apply to him as an individual is unavailing.

Cal. Bus. & Prof. Code § 17203 provides as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. **The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition**, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

*Id*. (emphasis added). Barber skips over the above words in bold and ignores Morici's request for "[r]estitution **and other relief available** under Cal. Bus. & Prof. Code §§ 17200, et seq." (FAC at 21:15-16; emphasis added.) This Court has the power — although Barber suggests it does not — to make any order or judgment that prevents Barber from engaging in fraudulent, unfairly competitive marketing practices and to order ancillary relief. Moreover, Morici is entitled to restitution from Barber—the key is whether Barber personally benefited from the unfair competition at issue. *See Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1458 (2008). The FAC contains allegations that Barber did benefit. (FAC ¶ 73 ("Barber . . . used the proceeds from sales of still undelivered BabyJet units to take salary bonuses".) This is sufficient to allow the Court grant relief as to Barber under § 17203.

## V.     CONCLUSION

Barber misstates the allegations in the FAC and cites authorities that do not foreclose Morici's claims. Morici makes specific allegations regarding Barber's misleading statement that satisfy the elements of fraud as well as state a UCL claim. Barber raises several arguments that are more appropriately resolved at the summary judgment stage. The Court should sustain Morici's evidentiary objections, deny Barber's Request for Judicial Notice, and deny his Motion in its entirety. Should the Court grant Barber's Motion, Morici respectfully requests leave to file a Second Amended Complaint. *See* Fed. R. Civ. P. 15; *Foman v. Davis*, 371 U.S. 178, 182  (1962) ("leave to amend shall be 'freely given when justice so requires'").

Dated: May 1, 2015.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

FOCAL PLLC

By: *s/Venkat Balasubramani*
Venkat Balasubramani, SBN 189192

Attorneys for Plaintiff
PETE MORICI