UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual, | Case No. 5:14-cv-00087-EJD |
| Plaintiff, | **DECLARATION OF ROBERT SMITH OF UNIQUIFY, INC.** |
| v. | |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual, | |
| Defendants. | |

I, Robert Smith, declare as follows:

1. I make this declaration based on personal knowledge of facts about which I am competent to testify.

2. I have been Senior Vice President, Marketing & Business Development for Uniquify, Inc. since 2011 to the present. My LinkedIn profile with my career history can be found here: <https://www.linkedin.com/in/robertpsmith>.

3. In the course of my duties for Uniquify, I perform brand development, positioning, strategy and business development activities, including negotiating contracts with clients on behalf of Uniquify. As a consequence, I am aware of production timelines and schedules.

4. In June of 2013, Uniquify was contacted by Simon Barber of HashFast Technologies, Inc. regarding design and production services for the "G1" or "Golden Nonce" chip. At that time, I

1  personally oversaw discussions between former Uniquify employee Marshall Gingold and Mr.
2  Barber regarding technical design specifications and pricing schedules (embodied in Statement of
3  Work agreement (("*SOW I*") attached in partially redacted form hereto as **Exhibit A**) as well as a
4  production timeline (embodied in Statement of Work agreement ("*SOW II*") attached in partially
5  redacted form hereto as **Exhibit A**).

6       5.     On July 1, 2013, Mr. Barber signed the SOW I with Uniquify for design of the G1
7  chip. Prior to the signing of the SOW I, I worked on the business terms and the language regarding
8  design specifications and delivery timelines for the G1 chip. The contract specified that the G1 chip
9  would not "tape-out" until September 15, 2013 (*i.e.*, Uniquify would not present the first complete
10  design for the chip until that date). Although HashFast offered Uniquify a set of tiered bonuses in
11  order to incentivize expedited delivery of the G1 design, September 15, 2013 was the mutually
12  agreed upon date for the design tape-out of the G1 chip.

13       6.     Based on the dates for completion of the design phase under SOW I, the earliest
14  HashFast could have begun production of the G1 under SOW II is August 29, 2013. This timeline
15  would have made the first product samples available to HashFast no earlier than November 14,
16  2013.

17       7.     At no time did Uniquify delay delivery of the G1 chip to HashFast. The design for the
18  G1 chip was delivered in accordance with the timeline agreed to by both parties as established in the
19  SOW I. I understand Mr. Barber contends in his motion that the relevant agreement between
20  HashFast and Uniquify "contemplates tape-out as early as August 12, 2013, resulting in a finished
21  product in mid-October 2013." This is simply false. The relevant agreement specified September 15,
22  2013 as the deadline for tape-out. The August 12, 2013 date mentioned in Section 10.4 of SOW I
23  was merely the top tier (and most unlikely) date on the bonus schedule devised by HashFast in order
24  to incentivize a faster completion of the design for the G1. This date was nearly impossible to
25  achieve and it was never anticipated on the part of Uniquify that it could be achieved.

26       8.     The super hot lot production schedule, the SOW II, had the wafers coming out of fab
27  on November 1, 2013. After the end of the lot fab out step, the wafers still needed to be cut and
28  packaged into the casings that are typically associated with computer chips. That assembly step,

1  done by a specialized company using highly specialized equipment, was not scheduled to take place
2  until November 13, 2013. The computer chips would then still need to be shipped and incorporated
3  into completed BabyJet units, therefore making it impossible that HashFast could have met any
4  delivery date in October. Both Messrs. Barber and deCastro were well aware of (i.e., had personal
5  knowledge) of this.
6       I certify under penalty of perjury of the laws of the United States and the State of California
7  that the foregoing is true and correct to the best of my knowledge.
8       Executed this 24th day of April, 2015, at San Francisco, California.

                                                Bob Smith