1  CRAIG A. PINEDO (Cal. Bar No. 191337)
   Email: cpinedo@pinedolaw.com
2  PINEDOLAW
   275 Battery Street, Suite 200
3  San Francisco, CA 94111
   Telephone:   415-693-9155
4  Fax No.:     415-524-7564

5  Attorneys for Defendant SIMON BARBER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual,<br><br>        Defendants. | Case No. 14-CV-00087-EJD<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT SIMON BARBER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:      June 4, 2015<br>Time:     9:00 a.m.<br>Courtroom: 4, 5th Floor<br>              280 South 1st Street<br>              San Jose, CA 95113 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... II

I. INTRODUCTION ........................................................................................................ 4

II. REPLY ARGUMENTS ................................................................................................ 5

    A. Plaintiff's Fraud Claim Against Barber Fails ................................................... 5

        1. Plaintiff's "Core" Fraud Theory Is Not Plausible. .................................... 5

        2. Plaintiff's Fraud Theories Are Not Alleged With Sufficient Particularity ............. 8

            a. "In Stock" ........................................................................................ 8

            b. Shipments of BabyJets Would Begin "October 20-30, In Order of Purchase" ................................................................. 10

            c. Refunds "Will Be Given In Bitcoin" ............................................ 12

    B. Plaintiff's UCL Claim Against Barber Fails ........................................................ 13

    C. The Court Should Deny Plaintiff Leave To File A Third Complaint .................... 16

III. CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguinaldo v. Ocwen Loan Servicing, LLC*,
    No. 12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sept. 4, 2012) .................................. 12

*Ashcroft v. Iqbal*,
    __ U.S. __, 129 S. Ct. 1937 (2009) .......................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 7, 12

*Berliner v. Lotus Dev. Corp.*,
    783 F.Supp. 708 (D. Mass. 1992) ......................................................................................... 6, 8

*Borow v. nView Corp.*,
    829 F. Supp. 828 (E.D. Va. 1993) ......................................................................................... 6, 8

*Bradstreet v. Wong*,
    161 Cal.App.4th 1440 (2008) ............................................................................................ 14-15

*DeMarco v. Depotech Corp.*,
    149 F.Supp.2d 1212 (S.D. Cal. 2001) ................................................................................. 8, 15

*Grodensky v. Artichoke Joe's Casino*,
    171 Cal.App.4th 1399 (2009) .................................................................................................. 15

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) .............................................................................................................. 9

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) .............................................................................................................. 9

*Madrid v. Perot Systems Corp.*,
    130 Cal.App.4th 440 (2005) .............................................................................................. 14-15

*Martinez v. Combs*,
    49 Cal.4th 35 (2010) .............................................................................................................. 19

*People v. Toomey*,
    157 Cal.App.3d 1 (1984) ........................................................................................................ 14

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
    2011 U.S. Dist. LEXIS 148592 (N.D. Cal. Nov. 8, 2011) ........................................................ 9

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) .................................................................................................. 16

## I.    INTRODUCTION

This is a "fraud by hindsight" case, concerning the projected date that Hashfast would begin shipping "BabyJet" Bitcoin mining machines, a product the parties agree was still in development when the projection was made. Plaintiff alleges he paid the Bitcoin equivalent of an $11,200 deposit for two BabyJets and was damaged in some unspecified way when the two BabyJets he pre-ordered were not delivered by the date Hashfast initially projected. Plaintiff admits this is the "core" allegation upon which his fraud and UCL claims against Hashfast and two of its officers are based. The problem is, after two tries, plaintiff still has not plead the specific facts necessary to hold Mr. Barber, Hashfast's former CTO, personally liable for the refund plaintiff rejected when it was offered (because he refused to sign a release), let alone the inflated amount "well in excess" of the $75,000 jurisdictional minimum he purports to seek.

Plaintiff argues he "has made clear and specific allegations against Barber on all five elements" of his fraud claims, Opp. at 15:9-10, but largely ignores Mr. Barber's showing as to why the FAC fails to plead the essential elements for each of his fraud theories. Indeed, in most cases, he simply cites to the FAC and leaves it to the Court to figure out for itself why the allegation is sufficient or relies upon the same conclusory and formulaic allegations this Court has already rejected. In the end, the FAC is devoid of specific facts showing any statement attributed to Mr. Barber was false when made, that Mr. Barber did not intend to perform any alleged promise, or that plaintiff actually and justifiably relied on any such statement. His derivative UCL claim fails for all the same reasons, and for the additional reason that he has failed to state a viable claim for restitution or injunctive relief under the UCL. Respectfully, the FAC has not come close to pleading the specific facts necessary to comply with Rule 9(b).

Tacitly conceding his allegations miss the mark, plaintiff attempts to manufacture a factual dispute by offering *evidence* to support his naked allegation that Mr. Barber knew the projection that Hashfast would begin shipping BabyJets "October 20-30, in order of purchase," was "impossible" when made on August 8, 2013. This is procedurally improper, especially when the claimed conflict is between the new evidence offered *by plaintiff* and the Statement of Work (SOW) that *plaintiff* incorporated by reference in the FAC. This Court can consider

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

3

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

documents relied upon by plaintiff in the FAC without converting this motion into a summary judgment motion. Regardless, the evidence plaintiff offers **supports dismissal**. It shows "tapeout" of the G1 chip occurred August 29, 2013, *i.e.*, 17 days *earlier* than the September 15, 2013, date upon which plaintiff's fraud theory relies for its allegation that shipments occur two months after tapeout (*i.e.*, November 15, 2013) and thus, that Mr. Barber "knew" shipments of BabyJets could not begin by October 30, 2013. Two months after August 29, 2013, is **October 29, 2013**, which is within the "October 20-30," projected window. More fundamentally, Mr. Smith's declaration does nothing to dispute his own contemporaneous statements attached to the FAC (and thus assumed to be true), that, as of the time Hashfast projected shipments would commence "October 20-30," tapeout was six weeks ahead of schedule and on track for completion in mid-August 2013, resulting in shipments to customers **in mid-October 2013**. Not only does the factual predicate for plaintiff's fraud theory fail, the facts show the projection was correct, and certainly not "false" or unreasonable at the time it was made.

In short, plaintiff's lawsuit is a cynical and thinly-veiled attempt to dress up the fact that a new product was released later than projected, as "fraud" by its officers, in an effort to reap a windfall of at least 7 times the amount he paid under the guise of merely seeking a refund. This case is a "theory in search of facts" that has already consumed substantial party and Court resources for the past fifteen months. After two tries, and despite the aid of substantial party and non-party discovery, plaintiff still has not alleged the specific facts necessary to hold Mr. Barber personally liable and has offered *no reason* for a third opportunity.

The Court should grant Mr. Barber's motion to dismiss, this time with prejudice.

## II. ARGUMENTS IN REPLY

### A. Plaintiff's Fraud Claim Against Mr. Barber Fails

#### 1. Plaintiff's "Core" Fraud Theory Is Not Plausible

In his opening memorandum, Mr. Barber showed that (1) plaintiff's primary fraud theory is predicated on statements regarding the projected timeframe BabyJet shipments would begin, *i.e.*, "October 20-30, in order of purchase," (2) plaintiff has alleged no facts, specific or otherwise, showing this statement was false when made or that Mr. Barber knew this statement

4.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

1  was false, and (3) under *Borow* and *Berliner*, the FAC is predicated on the discredited theory of

2  "fraud by hindsight."  Mem. at 8:10-11:24.  Plaintiff raises three arguments in support of his

3  "core" fraud theory, Opp. at 15:12, none meritorious.

4  <u>First</u>, plaintiff argues Mr. Barber knew this projection was false when he made it

5  "[b]ased on the timeline of the SOW that Barber personally signed," *i.e.*, that "the G1 chip

6  would not 'tape-out' until September 15, 2013."  Opp. at 11:24.  The parties agree the proper

7  focus is on the facts known at the time the allegedly false statement was made.  This is

8  plaintiff's undoing.  Mr. Barber signed the SOW on Hashfast's behalf on July 1, 2013.  The

9  FAC alleges the allegedly "false" statement, *i.e.*, that BabyJet shipments would commence

10 "October 20-30, <u>in order of purchase</u>," was made on August 8, 2013—***five weeks after*** the

11 SOW.  FAC ¶ 31 & Ex. C.[1]  Plaintiff offers *no facts* from which the Court can infer Mr. Barber

12 knew, on August 8, 2013, that it would be impossible that shipments would begin "October 20-

13 30" based on the timeline in the SOW executed five weeks earlier.

14 To the contrary, in the intervening weeks between the SOW and the projection that

15 shipments would commence October 20-30, the project was proceeding ahead of schedule.  On

16 July 18, 2013, Uniquify's Bob Smith issued a press release, entitled "Statement from

17 Uniquify—***confirming August tapeout*** and design targets."  FAC, Ex. A (emphasis added).

18 The statement read, "Working closely together on a daily basis ***we have been able to shorten***

19 ***the projected time to tapeout from an original estimate of 12 weeks to just 6 weeks***—a 50%

20 reduction."  *Id*. (emphasis added).[2]  Thus, just two weeks after the SOW, Mr. Smith—the other

---

[1] In every reference to this allegedly false statement, plaintiff truncates the actual statement to omit the underlined portion, *i.e.*, that shipments would proceed "in order of purchase."  Plaintiff alleges he was placed in "Batch 1," but does not allege any facts showing this entitled him to delivery on October 30 or within any specific timeframe thereafter (other than the December 31, 2013 "guaranteed delivery date" set forth in his order confirmation).

[2] Plaintiff's attempt to avoid dismissal by offering the Smith Declaration to manufacture a factual dispute is not well-taken.  The Smith Declaration is hearsay, irrelevant, lacks foundation (as to what Mr. Barber had "personal knowledge" of), and may not be considered on a pleading motion.  It also purports to attach excerpts of an "SOW II," signed by defendant deCastro and dated September 11, 2013, and contains other extraneous material postdating plaintiff's order by more than a month (Smith Decl. ¶ 8).  Even if it were proper to consider it (it is not), Mr. Smith's declaration merely takes issue with the statement that the SOW "contemplates" tapeout as early as August 12, 2013, which it does on its face.  What Mr. Smith does not and cannot dispute is that ***he*** represented to the public two weeks after the SOW that tapeout was six weeks

5.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

signatory to the SOW—was projecting the time to tapeout at six weeks (mid-August). Under the two-month timeline from tapeout to finished product alleged in the FAC, the parties were on pace to begin production of BabyJets in mid-October. *See* FAC ¶¶ 26-27. As established in our opening brief, but worth restating, plaintiff must allege specific facts showing the projection was false when made, not merely mistaken. Mem. at 9:3-10:27. If Uniquify projected an August tapeout on July 18, how can it be that a projection three weeks later predicated on the same timeline is fraudulent? There are simply no *facts* to infer falsity or that Mr. Barber knew his projection was "false" when made on August 8, 2013.[3]

      Second, plaintiff argues this is not a "fraud by hindsight" case because he has plead sufficient facts to survive a Rule 9(b) motion, *i.e.*, specific facts showing "some reason" that the difference between the "projections and later results is attributable to fraud." In his prior Complaint, plaintiff offered no reason. The reason offered by plaintiff in his FAC is because the SOW made Mr. Barber aware at the time he made the projection that BabyJets would not begin shipping in October. Opp. at 12:26-13:2. As noted above, however, the facts support the opposite inference. Indeed, in the end, tapeout did occur ahead of schedule, *i.e.*, on August 29, 2013, instead of the September 15, 2013. Docket Item No. 81-1 at p. 5 [indicating "Tape Out" on August 29, 2013]. That tapeout ultimately occurred two weeks ahead of schedule instead of six weeks, as Uniquify itself had projected after the SOW, is not fraud and only underscores what plaintiff was told in the terms of sale he acknowledges receiving: projected delivery dates are "approximate only." RJN, Ex. B at § 2(b). They are not promises and cannot support a fraud claim based on conclusory allegations that the defendant "must have known" it would not

---

ahead of schedule, shortening the projected time to tapeout from 12 weeks (end of September, 2013) to six weeks (mid-August, 2013). FAC, Ex. A. There is no factual dispute, let alone one that justifies converting this motion to a summary judgment motion.

[3] Although Rule 9(b) permits "malice, intent, knowledge, and other conditions of a person's mind" to be alleged generally, this does not excuse plaintiff from pleading facts sufficient to state a claim for relief that is plausible on its face, *i.e.*, not merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)("In the context of Rule 9, [the word "generally"] is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8….Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss.").

come to fruition. This case falls squarely within the holdings of *Borow* and *Berliner*, where the courts analyzed—and rejected—far more detailed fraud claims against company officers predicated on missed projections for the delivery of products in development.

In attempting to distinguish *Borow* and *Berliner* as "out-of-district…securities fraud cases," plaintiff cites his own such case, but that case also supports dismissal. In *DeMarco v. Depotech Corp.*, 149 F.Supp.2d 1212 (S.D. Cal. 2001), the court reiterated the requirement under Rule 9(b) that a complaint "must set forth an explanation as to why the statement was false and misleading when made," and may not "plead fraud by hindsight." *Id.* at 1223. *DeMarco* dismissed the fraud claims in that case on the ground that plaintiff failed to meet its burden for any of the statements at issue. So too here: the FAC contains no facts or plausible explanation as to why, as of August 8, it was impossible to begin shipments by October 30.

Stripped of his belated, conclusory—and false—allegation that Mr. Barber knew the projection was false based on the timeline set forth in the SOW, plaintiff's fraud theory rests entirely on the premise that the initial projection was "false" at the time it was made because it did not come to fruition nearly three months later. In other words: fraud by hindsight.

**2. Plaintiff's Fraud Theories Are Not Alleged With Sufficient Particularity**

Not only does plaintiff's "core" fraud allegation fail to state a plausible fraud theory, it fails to meet the pleading requirements of Rule 9(b) necessary to establish reliance and damages. The same is true for his backup fraud theories predicated on the alleged statements that BabyJets were "in stock" and that refunds "will be paid in Bitcoin."

In opposition, plaintiff argues he "has made clear and specific allegations against Barber on all five elements of a fraud claim." Opp. at 15:9-10. He is wrong.

**a. "In Stock"**

In his opening memorandum, Mr. Barber established that (1) plaintiff has not alleged a specific factual basis for holding Mr. Barber liable for all statements made by "the site," (2) plaintiff does not allege he actually saw any statement that BabyJets were "in stock" before making the decision to pre-order two BabyJets, and (3) any reliance would not be justifiable.

In opposition, ***plaintiff does not dispute that he never saw the "in stock" statement***

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

7.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

*when he placed his order*. See Opp. at 7:11-17 (no mention of "in stock" statement under heading, "Morici's justifiable reliance on Barber's statements"), at 17:1-18:5 (no mention of seeing "in stock" statement before placing his order). Nor is this surprising, as plaintiff placed his order over the telephone, not on the website. FAC ¶ 38. Perhaps this is why he attempts to change the test from whether *he* saw and reasonably relied on the "in stock" statement to whether "a reasonable consumer" would have been deceived by it. That is not the standard, at least not here. Plaintiff must plead specific facts showing he actually and reasonably relied on the "in stock" statement, as this Court has found. Dkt. 58 at 5:24-6:6. Plaintiff has failed.[4]

Plaintiff makes two arguments, neither of which has merit:

First, plaintiff argues Mr. Barber is liable for all statements on "the site" based on his "involve[ment] in negotiating the procurement of the BabyJet machines." Opp. at 17:6. Beyond declaring the matter to be "common sense," plaintiff offers no facts or legal authority that support holding Mr. Barber personally liable, as required. Opp. at 17:7-9. The FAC alleges defendant deCastro "had express control over the statements posted on that website." FAC ¶ 34.[5] By way of contrast, the FAC alleges *no facts* regarding Mr. Barber's involvement in any allegedly false statement made on the website. *See* FAC ¶¶ 34-37.

Plaintiff's reliance on *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011), is misplaced. That case addressed *standing* under the UCL, and supports dismissal. It held that a consumer who alleges he or she would not have bought a product but for a misrepresentation on a product label has standing under the UCL. *Id*. at 330. Plaintiff here does not allege he would

---

[4] Mr. Barber does not believe it is necessary or appropriate to convert this motion to a summary judgment motion based on plaintiff's improper submission of evidence. If, in the unlikely event the Court is inclined to do so, Mr. Barber offers an email from plaintiff, dated ***August 9, 2013***. In that email, plaintiff places his order for two BabyJets and informs Hashfast that he "originally tried" to place his order at approximately "2 a.m. est," *i.e.*, 11 p.m. on August 8, 2013. Barber Reply Declaration, Ex. A. Plaintiff sent this email one day *before* the date he alleges he visited the site, ostensibly "in the course of deciding whether to order" a BabyJet. FAC ¶ 35. Having decided to place his order on August 9, 2013, at the latest, plaintiff could not have relied on any statement on August 10, 2013, despite his conclusory allegation of reliance.

[5] In its prior order, the Court found the allegation regarding the registration of the hashfast.com domain in Mr. deCastro's name did not support a fraud or UCL claim against either individual defendant. Docket Item No. 58 at 8, n. 5.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

8.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

not have purchased the BabyJets but for the "in stock" statement. As noted above, he attempted to order the BabyJets one day before he visited the site. *See* n. 4, above. In any event, the facts demonstrate he knew BabyJets were not "in stock," at least in the sense that they were not completed, and he proceeded with the pre-orders anyway. He was also willing to proceed with the transaction after the first delay. FAC ¶¶ 62-65. It was only when the second delay was announced that plaintiff decided he did not want the BabyJets. Far from helping plaintiff, *Kwikset* provides another ground for dismissal of his UCL claim: no UCL standing.[6]

Second, in arguing the "in stock" statement on the website was intended to defraud potential customers, plaintiff asks the Court to disregard statements published on the Bitcoin Talk forum that are inconsistent with BabyJets being "in stock," *i.e.*, complete, as of August 10, 2013. These include the statements, on an August 9, 2013 thread on the Bitcoin Talk forum, that (1) the BabyJet chip design is "almost complete," and (2) Hashfast is "starting sales now because ***we're at the point where…the calendar of remaining items is fairly fixed***, and we're confident we can deliver," *i.e.*, *not* because it had 503 completed BabyJet units in stock. FAC, Ex. H (emphasis added). These statements were attached to the FAC and can and should be considered by the Court in determining whether the FAC, in its entirety, alleges specific facts sufficient to state a plausible entitlement to relief.

Plaintiff's fallback position that these statements are "not necessarily" inconsistent with BabyJets being "in stock" is belied by the FAC. Plaintiff alleges elsewhere in the FAC that it is this very fact—*i.e.*, that the G1 chip was incomplete—that rendered the "in stock" statement "false." FAC ¶ 35. Moreover, plaintiff does not dispute that, on August 15, nearly a week after Mr. Barber's post, plaintiff made a "follow-up query" to Hashfast, but not to *cancel* his order. Rather, to *confirm* the transaction was complete. FAC ¶ 45.

Plaintiff fraud claim against Mr. Barber based on the two words "in stock" fails.

---

[6] Plaintiff's reliance on *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 2011 U.S. Dist. LEXIS 148592 (N.D. Cal. Nov. 8, 2011), is also misplaced. *Rezner* stands for the proposition that the test under the "fraudulent" prong of the UCL is whether a reasonable consumer is likely to be deceived. That test does not apply to plaintiff's common law fraud claims. In any event, as noted above, plaintiff "must plead and prove actual reliance to satisfy the standing requirement of section 17204." *In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009). He cannot.

9.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

### b. Delivery of BabyJets Would Begin "October 20-30"

In his opening memorandum, Mr. Barber established that, beyond failing to give rise to a plausible fraud theory, the projection that shipments would begin "October 20-30, in order of purchase" fails to state a fraud claim against Mr. Barber for two additional reasons: (1) plaintiff fails to plead specific facts showing actual and justifiable reliance, and (2) any damage was purely speculative. Mem. at 13:9-26. In response, plaintiff merely states that the "new allegations in the FAC…include all five elements of fraud." Opp. at 12:3-4. He is wrong.

<u>First</u>, without explanation or analysis, plaintiff cites paragraphs 28, 79 and 82 to show he "justifiably relied on Barber's misleading statements." They do not, as we show below.

**Paragraph 28**. This paragraph alleges, "Like many members of the Bitcoin community, Mr. Morici was a participant in the internet message board and community known as Bitcoin Talk." On its face, this allegation does not establish reliance.

**Paragraph 79**. This paragraph merely purports to allege what "Barber and deCastro knew," and that they "made statements falsely claiming that…delivery of BabyJets would be made in October 2013." There is no mention of plaintiff, let alone specific facts supporting an inference he read and relied upon any statement that "delivery of BabyJets would be made in October 2013." The actual statement alleged in the FAC is that shipments would "*begin*: October 20-30, *in order of purchase*," FAC ¶ 31 (emphasis added), which is very different than a promise to plaintiff that delivery of *his* BabyJets would be "*made* in October 2013." Thus, if paragraph 79 supports an inference of reliance, it is reliance upon a statement that was never made or alleged anywhere in the FAC.

**Paragraph 82**. This paragraph states, in its entirety: "Morici relied on the statements to his detriment and his reliance was reasonable." This conclusory allegation of reliance on "statements" does not meet plaintiff's burden to plead specific facts showing reliance.

On their face, the above allegations do not establish actual or justifiable reliance.

<u>Second</u>, plaintiff cites six paragraphs as support for the argument that he "suffered damage because of those statements…." Opp. at 11:27. Of these, the only allegation that addresses damages is paragraph 83, which states, in conclusory fashion, "Morici has been

10.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

damaged as a result of such reliance and should be compensated for *any* injury suffered by him." FAC ¶ 83 (emphasis added).  The operative term here is "any."  Plaintiff fails to allege specific facts showing he suffered any legally cognizable injury from the delay.  Any damage to plaintiff as a result of any shipping delay is, at best, purely speculative.[7]

### c. Refunds "Will Be Given In Bitcoin"

In his opening memorandum, Mr. Barber demonstrated plaintiff's fraud theory predicated on the alleged statement on August 10, 2013, that refunds "will be paid in Bitcoin" failed for three reasons: the FAC failed to plead specific facts showing (1) actual and justifiable reliance, (2) a "false promise," and (3) damages.  Mem. at 13:27-16:8.

At the threshold, plaintiff does not dispute he alleges ***no facts*** showing he saw and relied upon the statement that refunds will be paid in Bitcoin.  Instead, he simply refers the Court to paragraph 43 of the FAC, which is also devoid of any specific facts supporting this allegation.  The allegation that he purchased the BabyJets the same day Mr. Barber posted the statement—August 10, 2013—does not support the inference plaintiff relied on the statement.  As noted above, he attempted to place his order one day earlier.  If plaintiff had seen and relied upon this statement, a fact uniquely within his knowledge, he was required to plead it.  He cannot.

Plaintiff's response to Mr. Barber's second argument is equally unavailing.  In response to Mr. Barber's showing that plaintiff has not alleged specific facts showing the statement was false when made, plaintiff merely cites to the FAC, without discussion or analysis, leaving it to the Court to figure it out for itself.[8]  This is patently insufficient to survive a Rule 9(b) motion.

---

[7]  In the preamble, the FAC states, "[t]his is a lawsuit seeking to enforce Morici's right to a refund for a product ordered from Hashfast that was not delivered in a timely fashion."  FAC at 1:23-24.  The FAC, however, fails to plead any factual nexus tying his failure to obtain a refund to the alleged "delay" in receiving his BabyJets.  As the Court correctly noted, "[w]hen [plaintiff] finally did receive a shipment, he was no longer interested in 'Baby Jets' and requested a refund.  He did not receive one, though, because he would not sign a release."  Dkt. 58 at 1:16-2:1.  As it stands, the FAC fails to plead facts showing any specific injury caused by the delay, let alone one that exceeds the $75,000 jurisdictional minimum.

[8]  In those paragraphs, plaintiff merely alleges Hashfast at some point paid Bitcoin to vendors and third parties and concludes from this fact that Hashfast lacked the ability to make refunds in Bitcoin.  Even accepting as true the allegation that Hashfast paid Bitcoin to satisfy liabilities to vendors and third parties, it does not necessarily follow that it lacked the ability to make refunds in Bitcoin as of August 10, 2013, or that Mr. Barber knew this when he made the statement.  Rather, if anything, it reflects the basic fact that Bitcoin, like any form of currency,

11.

*Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 12-CV-01393-EJD, 2012 WL 3835080, at *5 (N.D. Cal. Sept. 4, 2012) (Davila, J.) (dismissing plaintiffs' fraud claims because they failed to "specifically show[] defendants did not intend to perform on the alleged promises at the time they were made."). At best, the statement that refunds "will be paid" in Bitcoin is a nonactionable commitment to take future action. *Id*.

Nor does he attempt to reconcile his new allegation (that Mr. Barber did not intend to perform) with his previous allegation that Hashfast did offer to pay refunds in Bitcoin. Dkt. 1 [Compl.] ¶ 45. Having plead that Hashfast offered refunds in Bitcoin, plaintiff cannot now plead the opposite. Indeed, as this Court previously found, plaintiff was offered a refund. The reason he did not receive one, however, was because he refused to sign a release, not because Hashfast lacked the intent or ability to perform as of August 10, 2013. Dkt. 58 at 1:16-2:1.

But even if the Court accepts the new allegation, plaintiff runs into yet another problem: no damages. The only way plaintiff could conceivably suffer damages as a result of receiving a refund in U.S. dollars instead of the Bitcoin equivalent is if he had alleged specific facts showing he was promised a refund of the same number of Bitcoin if he did not receive his two BabyJets by October 30, 20123—and relied on it—which he does not and cannot truthfully allege. FAC ¶ 42 ("Had credit card processing been made available by Hashfast, ***[plaintiff] would have opted to pay using his credit card***.") (emphasis added).

Plaintiff's fraud claim predicated on the statement that refunds "will be paid" in Bitcoin fails.

### B. Plaintiff's UCL Claim Against Barber Fails

In his opening memorandum, Mr. Barber showed (1) plaintiff's fraud-based UCL claim against Mr. Barber is not plead with sufficient particularity under Rule 9(b) to hold him personally liable, and (2) the UCL's limited remedies are not available against Mr. Barber in any event. Mem. at 16:9-19:13. Plaintiff makes several arguments, all of which fail.

---

are fungible and the fact that companies can and routinely do use revenue to fund their operations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566-68 (2007) (claim for relief not plausible on its face where facts support an alternative, lawful explanation). Where, as here, Rule 9 applies, the bar is even higher. *Id*. at 569, n. 14.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

12.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

First, plaintiff argues his allegations are sufficient "to the extent they state a claim for fraud." Opp. at 18:13. As noted above, however, they do not come close.

Second, plaintiff argues he has properly alleged a UCL claim against Mr. Barber based on his allegation that "**Hashfast** has engaged in unlawful business acts and practices as alleged above, but in particular by…violation [sic] of Cal. Civ. Code § 1723, which requires merchants to 'conspicuously' display any no-refund policies, and to provide refunds to customers who attempt to return goods within 30 days of purchase…." FAC ¶ 85 (emphasis added). Not so. As this Court has already found, allegations against "Hashfast" are insufficient to state a claim against Mr. Barber personally. Dkt. 58 at 7:1-12. This is "especially problematic" for UCL claims, which "cannot be predicated on vicarious liability." *Id.* at 9:24-27.[9]

The allegation in paragraph 86 that "**Barber and deCastro** personally participated in the foregoing activities," the lone example of a specific allegation cited by plaintiff, does not withstand scrutiny under Rule 9(b) for reasons this Court has already explained: Rule 9(b) does not allow a complaint to lump multiple defendants together. This allegation—coupled with the definition of "Hashfast" to include the individual defendants, the allegation that references to one defendant is a reference to all of them (FAC ¶ 5), and the conclusory agency and alter ego allegations—makes it impossible for Mr. Barber to determine which allegations do (and, equally important, do not) apply to him. Dkt. 58 at 9:24-10:2. As it stands, the FAC is an unfocused and rambling assortment of extraneous facts and disconnected legal theories without any real specification of the claims asserted against each defendant. Viewed in the context of documents that plaintiff has incorporated by reference in the FAC (but did not attach and is now attempting to exclude), and an inflated damage claim he argues is "well in excess" of the $75,000 jurisdictional minimum (under the guise of seeking a "refund" on an $11,200 purchase), the FAC crosses the line from implausible to a Rule 11 violation.

---

[9] In any event, the text of section 1723 is different than plaintiff's description. Plaintiff argues section 1723 "requires merchants to be clear about any no-refund policies and provide refunds upon request." Opp. at 18:17-18. That is not what it says. Section 1723 applies to retail sellers who, among other things, have "a policy…of not giving full cash or credit refunds…for at least seven days following purchase of the goods if they are returned and proof of their purchase is presented." Civ. Code § 1723(a). The FAC does not allege the existence of any such policy or that he attempted to return the BabyJets within seven days of purchase.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

13.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

Third, although Mr. Barber was mentioned once in the original Complaint, plaintiff now attempts to characterize Mr. Barber as the "moving force of Hashfast's violations." Opp. at 19:4. Now, as before, plaintiff's attempt to compare Mr. Barber to the defendant in *Toomey* is misguided. In that case, "Toomey *was* in essence, the company." *People v. Toomey*, 157 Cal.App.3d 1, 15 (1984) (emphasis added). Not so here. Plaintiff has clarified that his UCL claim is "premised on the unfair practice of selling a product while making misleading claims about the ***availability of the product***." Dkt. 58 at 9:13-15 (emphasis added). The entire FAC in this case attributes only one allegedly "false" statement regarding the availability of the product to Mr. Barber and does not allege any facts supporting an inference Mr. Barber, as CTO, exercised "unbridled control" over any unlawful business practice.

Finally, plaintiff argues the Court has the power under section 17203 to "make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition." Opp. at 20:2. That is correct, as far as it goes. The problem is, the Court's power to enjoin unfair competition does not apply to completed acts. *Madrid v. Perot Systems Corp.,* 130 Cal.App.4th 440, 465 (2005) (availability of injunctive relief under the UCL "requires a threat that the misconduct to be enjoined is likely to be repeated in the future").

Here, as in *Madrid*, plaintiff alleges no facts showing any ongoing or threatened act of unfair competition. Nor does he dispute an order requiring Mr. Barber to repay the $11,200 deposit plaintiff paid to Hashfast would *not* be restitutionary, as it "would not replace any money or property that [Mr. Barber] took directly from [plaintiff]." *Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1460 (2008) (citation omitted), *abrogated on other grounds by Martinez v. Combs*, 49 Cal.4th 35 (2010). Plaintiff argues, "the key is whether Barber personally benefited from the unfair competition at issue." Opp. at 20:14-16. Not so. In the excerpt plaintiff relies upon, *Bradstreet* held the relief requested from the individual defendants in that was not restitutionary for reasons that are equally applicable here: they did not "acquire[] or ***directly and personally benefit***[] from [plaintiff's] labor without paying for it," nor did they "misappropriate[] for their personal use corporate funds that could have been used to pay her

14.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

wages." *Bradstreet*, 161 Cal.App.4th at 1458. In other words, Mr. Barber cannot be ordered to return money to the plaintiff that he had not directly and personally obtained from plaintiff or misappropriated from Hashfast.

That is not alleged here. At best, plaintiff alleges Mr. Barber *indirectly* benefited in the form of pay received *from Hashfast* in December 2013 (four months after plaintiff paid his deposit to Hashfast). If that were sufficient, the requirement of a benefit taken directly from the plaintiff would have no meaning and *Bradstreet* could not have reached the result it did, as all officers who are paid a salary benefit indirectly from payments to the corporation. On its face, and as applied in subsequent cases, "*Bradstreet* was concerned with the principals of the corporation." *Grodensky v. Artichoke Joe's Casino*, 171 Cal.App.4th 1399, 1430 (2009).

Thus, the same result in *Madrid* is warranted here—dismissal with prejudice:

> Since plaintiff failed to present a viable claim for restitution or injunctive relief (the only remedies available) and failed to propose any amendment that would cure the defect, plaintiff's complaint failed to state a viable UCL claim, and the trial court properly sustained the demurrers without leave to amend.

(*Madrid*, 130 Cal.App.4th at 466.)

### C. The Court Should Deny Plaintiff Leave To File A Third Complaint

Having failed in two opportunities to plead specific facts sufficient to state a claim for relief against Mr. Barber, plaintiff has shown he cannot do so and has not offered any justification for giving him a third chance. For these reasons alone, the Court can and should deny plaintiff another opportunity to amend. *DeMarco*, 149 F.Supp.2d at 1233-1234 (denying leave to amend as futile based on previous amendment and plaintiffs' failure to "identify any specific factual allegations" they would add to a proposed amended complaint).

Moreover, the doors of discovery have been open to plaintiff for more than a year and he has taken full advantage. Plaintiff has used his membership on the creditor's committee in the Hashfast bankruptcy proceedings to obtain discovery in support of his claims against Barber outside the bankruptcy. *See* Docket Item No. 35 at 13:11-15 (the Hashfast bankruptcy has "unearthed numerous facts relevant to Morici's claims against the Individual Defendants").

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

15.

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

Plaintiff has also taken substantial discovery from Mr. Barber and third parties. Mr. Barber's responses to that discovery refuted plaintiff's claims. Putting him through the time and expense of further litigation, including another round of motion practice and additional discovery, would be manifestly unfair and unduly prejudicial. Third party discovery—most notably, the SOW—has only spawned evidence that further undermines plaintiff's claims.

Under the circumstances, justice strongly favors denying amendment. Among the factors courts consider on a motion to amend, "[s]ome courts have stressed prejudice to the opposing party as the key factor." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991). Mr. Barber is the father of two young girls and the sole breadwinner in his family. This case has taken an enormous financial and emotional toll on him and his family, and very soon will threaten his ability to pay the mortgage on their home. Docket Item No. 68 at 7:22-28. As this Court recognized, Rule 9(b) acts as a barrier to weak or unfounded—and potentially costly—claims of fraudulent conduct, as well as to ensure charges of fraud are not defamatory and extortionate. Dkt. 58 at 6:7-15. Plaintiff's frolic through the federal courts for the past fifteen months on what is, at best, an $11,200 refund claim in an attempt to intimidate Mr. Barber without any colorable legal basis to do so must come to an end. Notably, dismissal with prejudice does not leave plaintiff without a remedy. Plaintiff has filed a claim against Hashfast in the bankruptcy proceedings and has taken defendant deCastro's default in this case. If plaintiff's claim belongs anywhere, it is in the bankruptcy court, not here. Plaintiff's willingness to skirt the boundaries of Rule 11 to support a fraud claim against Mr. Barber does not entitle him to special treatment.

### III.  CONCLUSION

Based on the foregoing, Barber respectfully requests the Court grant this motion with prejudice.

Dated: May 15, 2015                                           PINEDOLAW


                                                                      /s/  Craig A. Pinedo
                                                              CRAIG A. PINEDO
                                                              Attorneys for Defendant SIMON BARBER

16.

PINEDOLAW
275 Battery Street
Suite 200
San Francisco, CA 94111
415-693-9155

BARBER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC