UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HASHFAST TECHNOLOGIES LLC, et al.,<br><br>　　　　Defendants. | Case No.  5:14-cv-00087-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 61 |

Within the Bitcoin[1] universe, the term "Baby Jet" refers to computer hardware configured specifically to "mine" the digital currency. Plaintiff Pete Morici ("Plaintiff"), a Bitcoin "miner," ordered two Baby Jets from HashFast Technologies LLC and HashFast LLC (the "HashFast Entities") and paid for his order in Bitcoin. He did not receive them as promised. Nor was he able to obtain a satisfactory refund.

---

[1] According to Plaintiff:

> Bitcoin is a peer-to-peer payment network that uses digital currency known as "Bitcoin" . . . . The Bitcoin network is decentralized, with no authority overseeing its operation, and uses open-source encryption software for transactions . . . .
>
> Payment transactions are processed by a network of private computers distributed throughout the world which, typically, have been specially configured for processing Bitcoin transactions. These computers are commonly referred to as "Bitcoin computers," and the operators of such computers are known as "miners." Miners are partially compensated for the work they perform by receiving fees for the Bitcoin transactions that they process through their Bitcoin computers.

See FAC, at ¶¶ 10, 11.

1

Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

In response, Plaintiff initiated this case on January 7, 2014, against the HashFast Entities and its officers, Simon Barber ("Barber") and Eduardo deCastro ("deCastro") for breach of contract, fraud, violation of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, and declaratory relief. His First Amended Complaint ("FAC") is now the subject of a motion to dismiss filed by Barber. See Docket Item No. 61. Plaintiff opposes the motion. See Docket Item No. 80.[2]

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. A careful review of the FAC reveals that Plaintiff has since resolved the pleading deficiencies that compelled the dismissal of his original Complaint. Thus, save for one fraud theory against Barber which will be dismissed, his claims survive a Rule 12(b)(6) challenge. The Motion to Dismiss will be granted in part and denied in part for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As before, the court begins by identifying the parties to this case. Plaintiff, a Maryland resident, is a member of the Bitcoin community. See FAC, Docket Item No. 59, at ¶¶ 1, 28. HashFast Technologies LLC and HashFast LLC were founded by Barber and deCastro in 2013. Id. at ¶ 3. Barber has served as the CTO of the HashFast Entities since it was formed, and has been the CEO and President of the companies since May, 2014. Id. deCastro was the CEO of the HashFast Entities from their formation in 2013 until May, 2014. Id. After resigning as CEO, deCastro took a position in sales and marketing at HashFast. Id.

### A. Barber, deCastro and the HashFast Entities

Although Barber and deCastro set up the HashFast Entities to serve different functions - Hashfast LLC was created to hold intellectual property and Hashfast Technologies was created to conduct business operations - the companies were treated interchangeably and Barber and deCastro did not meaningfully distinguish between them. Id. at ¶¶ 16, 17. The Hashfast Entities

---

[2] This case has been stayed with respect to the Hashfast Entities due to ongoing bankruptcy proceedings. See Docket Item No. 23.

2
Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

did not have written documentation governing the material aspects of their relationships with one another. Id. at ¶ 17.

As founders, Barber and deCastro exercised control over all operations of the HashFast Entities, including the raising of capital, procurement of supplies, setting production and distribution schedules, negotiating contracts with vendors, and overseeing and implementing marketing plans. Id. at ¶ 18. They also managed over forty employees and "had knowledge of supply chain timing for BabyJet components because they managed all of the engineering resources; reviewed work and approved invoices." Id.

In June, 2013, the HashFast Entities, through Barber and deCastro, began to negotiate a contract with Uniquify, Inc. for design and production of a "G1" or "Golden Nonce" microchip that would be used to power the Baby Jet mining computer. Id. at ¶ 25. These negotiations resulted in a Statement of Work ("SOW") agreement, executed on July 1, 2013. Id. at ¶ 26. According to that agreement, the design for the G1 chip was not scheduled to "tape-out," or be completed, until September 15, 2013, at the earliest. Id. Barber and deCastro were also informed by Uniquify that the time between "tape-out" of the G1 chip and a finished product would exceed two months, even under an expedited production schedule. Id. Based on that timeline, the HashFast Entities were aware they would not be able to provide Baby Jets to customers until mid-November, 2013. Id. at ¶ 27.

Plaintiff also alleges that capitalization of the HashFast Entities was inadequate to undertake the production and development of Bitcoin mining equipment. Id. at ¶ 20. Because of the undercapitalization, Barber and deCastro planned to solicit customer orders and then use those payments to secure vendors who would ultimately produce the machines. Id. Despite an extensive marketing campaign promising the delivery of its products by a certain date, Plaintiff believes Barber and deCastro knew their plan would not allow them to meet the delivery deadlines. Id. at ¶¶ 20, 21.

3
Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

### B. Plaintiff Orders Baby Jets

Plaintiff was a participant on a message board known as Bitcoin Talk. Id. at ¶ 28. So were Barber, deCastro and others who made postings at their direction. Id. at ¶¶ 22-24. On August 5, 2013, a representative of the HashFast Entities posted a statement indicating that shipments of the Baby Jet would be made in late October, 2013. Id. at ¶ 30, Ex. B. On August 8, 2013, Barber posted the following statements: "HashFast is launching sales of the BabyJet," and "Shipments begin: October 20th-30th, in order of purchase." Id. at ¶ 31, Ex. C. On August 8, 2013, another individual allegedly acting on behalf of the HashFast Entities, Marc A. Lowe, posted a statement in relation to the Baby Jet indicating that the HashFast Entities would "offer full refunds by the end of the year if they're late." Id. at ¶ 32. Barber later confirmed in a separate posting that Lowe's statement was true. Id.

Barber also posted a statement on Bitcoin Talk on August 10, 2013, concerning refunds. Id. at ¶ 43, Ex. F. He wrote: "Orders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC." Id.

Other statements were made on the HashFast Entities' website. The site described the Hashfast Entities as a "leader in Bitcoin mining technology," advertised that 503 of 550 Baby Jets were "in stock," and stated that shipments of the Baby Jet would occur by October, 2013. Id. at ¶¶ 34, 35.

Plaintiff decided to order a Baby Jet after reviewing the information. Id. at ¶ 36. Since online ordering was unavailable, he contacted the HashFast Entities on August 10, 2013, and was instructed by John Skrodenis, Vice President of the HashFast Entities, to place his order manually. Id. at ¶ 38. Mr. Skrodenis offered "free shipping" to Plaintiff during in an email. Id. In a subsequent telephone conversation that same day, Mr. Skrodenis responded to a question from Plaintiff concerning the possibility the HasFast Entities would not meet the advertised shipping dates by stating: "that is not going to happen." Id. at ¶ 39. The shipping date was important to Plaintiff because "Bitcoin mining computers lose their value at a rapid rate due to the fact that more powerful computers are needed to effectively 'mine' for Bitcoins as time goes on." Id. at ¶

4
Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

48.

Later that day, Plaintiff placed an order for two Baby Jets at a total cost of $11,200. Id. at ¶ 41. Plaintiff was charged for shipping despite Skrodenis' representation, making the cost $11,507.38. Id. Plaintiff paid for the Baby Jets using Bitcoin ("BTC"), which was the only payment method available at the time. Id. at ¶¶ 41, 42. He paid 107.692308 BTC for the Baby Jets and 2.95557692 BTC for shipping, for a total of 110.67773274 BTC. Id. at ¶ 41. Plaintiff's order was deemed complete on August 15, 2013. Id. at ¶ 45. He received a confirmation on August 19, 2013. Id. at ¶ 46.

### C. The Baby Jets are Delayed

On October 23, 2013, the HashFast Entities informed Plaintiff via email that his order would be delayed because one its vendors allegedly had not supplied components necessary to produce Baby Jets. Id. at ¶ 61. Plaintiff was surprised by this news because it seemed contrary to the representations made to him before he placed an order. Id. The HashFast Entities told Plaintiff he would receive the Baby Jets in mid-November. Id. at ¶ 62. Then, on November 7, 2013, the HashFast Entities delayed the shipment again, this time to mid-December. Id. at ¶ 63.

Plaintiff sent an email to the HashFast Entities at 3:42 p.m. on November 11, 2013, cancelling his order and requesting a full refund in Bitcoin. Id. at ¶ 65. The HashFast Entities did not respond until December 27, 2013, at which time they represented that Baby Jets would ship on December 31, 2013. Id. at ¶ 67. However, on December 29, 2013, the HashFast Entities sent another email stating that customers could initiate refunds to be paid in U.S. Dollars calculated at the Bitcoin exchange rate on the date of the refund. Id.

On December 31, 2013, the HashFast Entities sent out another email stating they still could not ship Baby Jets. Id. at ¶ 68. Attached to that email was an "onerous release form" that needed to be executed as a condition of obtaining a refund. Id. The release included a promise not to "disparage, libel, or criticize [the HashFast Entities] or publish any statement concerning [the HashFast Entities] that is critical." Id. at ¶ 69.

HashFast eventually purported to ship an item to Plaintiff, but the shipment was partial and too late in any event. Id. at ¶ 70. Although Plaintiff cancelled his order, the HashFast Entities have failed to provide a refund in Bitcoin. Id.

Plaintiff initiated this action on January 7, 2014. After the stay was lifted as to them, Simon and Barber moved to dismiss the Complaint. See Docket Item No. 34. The court granted that motion with leave to amend on February 27, 2015. See Docket Item No. 58. Plaintiff filed the FAC on March 16, 2015. See Docket Item No. 59. This motion followed.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

Fraud requires more detail. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). These allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.2007). In other words, claims of fraudulent conduct must generally contain more specific facts than is necessary to

support other causes of action.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir.2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

## III. DISCUSSION

### A. Barber's Request for Judicial Notice

Along with the motion to dismiss, Barber has submitted a request for judicial notice with two documents attached: (1) the purported SOW between the HashFast Entities and Uniquify, dated July 1, 2013, and (2) Plaintiff's order confirmation and terms of sale. Plaintiff objects to consideration of these documents.

Under Federal Rule of Evidence 201(b), the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In addition, the court may consider for a motion to dismiss "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." United States ex rel. Lee v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011). However, the court cannot notice "facts that may be 'subject to reasonable dispute.'" Id. (quoting Lee, 250 F.3d at 689). "More specifically, [the court] may not, on the

7

Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed." Id.

Here, the court can consider the existence of the SOW since Plaintiff expressly refers to the document in the FAC and thereby "necessarily relies" on it as part of his fraud allegations.[3] In fact, the SOW forms a critical part of Plaintiff's fraud theory. Nonetheless, the court may not, based only on the SOW, draw the factual conclusion that Barber asserts: that because the SOW lists an early tape-out date of August 12, 2013, commencing shipments of Baby Jets by October 30, 2013, was a realistic possibility. Whether or not August 12th was a viable "tape-out" date is an open question subject to reasonable dispute and will require further factual development, including inquiry into what other information was known to Barber at the time he stated that Baby Jets would ship in October, 2013. The court cannot resolve the issue now because it "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of" Plaintiff, not Barber. Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014).

Accordingly, Barber's request for judicial notice of the SOW is GRANTED insofar as the existence of that document is acknowledged. It is also GRANTED as to the existence of Plaintiff's order confirmation since the FAC relies on that document as well. But since this is not a motion for summary judgment and will not be converted into one, the sufficiency of Plaintiff's allegations will ultimately determine this motion's outcome.

### B. The Fraud Claim

The court now addresses Plaintiff's renewed fraud allegations. This claim was dismissed previously due to an overall lack of particularity. As the court explained, the original Complaint did not differentiate between defendants such that each was adequately advised of what personal conduct was at issue. Nor did the original Complaint establish Plaintiff's reliance on any

---

[3] He also submitted a declaration from Robert Smith, Senior Vice President of Uniquify, authenticating the SOW. See Docket Item No. 81.

8
Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

statements attributed to Barber and deCastro. In this motion, Barber again challenges the fraud claim as both implausible and insufficiently-pled under Rule 9(b)'s heightened pleading standard. The court agrees with Barber in part, but rejects the majority of his arguments.

### i. Shipping Date

"A plaintiff alleging fraud under California law must plead facts demonstrating five elements: (1) a misrepresentation; (2) the speaker's knowledge of falsity; (3) the intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage." Morici v. Hashfast Techs. LLC, No. 5:14-cv-00087-EJD, 2015 WL 906005, at *3 (N.D. Cal. Feb. 27, 2015) (citing Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996)). "In federal court, it is undisputed that these elements, save for perhaps certain aspects of the second and third, must be plead with particularity." Id.; see Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

In contrast to the original Complaint, the allegations in the FAC state a claim for fraud against Barber for statements made concerning the Baby Jet shipping date. According to Plaintiff, Barber made a misrepresentation on August 8, 2013; specifically, that Baby Jet shipments would commence between October 20th and October 30, 2013. Plaintiff alleges that Barber knew this statement was false based on the Uniquify SOW, since the production schedule outlined in that document would not have permitted Baby Jet shipments to begin until two months after a September 15th "tape-out" date.

Plaintiff further alleges that Barber intended to defraud customers. The FAC implies that because the HashFast Entities were undercapitalized, Barber and deCastro needed to use the payments received on early orders to finance Baby Jet production. To carry out that plan, Barber purposely misrepresented the shipping date, knowing that timing was important to Bitcoin miners and would induce customers like Plaintiff to place orders for Baby Jets sooner rather than later.

As to the remaining elements, Plaintiff's reliance on Barber's statement was justifiable since he was not aware of any contradictory shipping or production information at the time he

9
Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

placed the order. Finally, Plaintiff suffered damages because he did not receive the Baby Jets - machines that lose value at a rapid rate - within the timeframe promised.

Barber offers several reasons why the fraud claim based on the shipping date should again be dismissed. But they are each rendered unpersuasive against the FAC's detailed allegations. First, though Barber would like to it to be so, Plaintiff's theory is not tantamount to "fraud by hindsight." As Barber's own authorities provide, that concept only arises when a plaintiff asserting fraud attempts to infer the falsity of a prior statement by "simply seiz[ing] upon disclosures made later and alleg[ing] they should have been made earlier." Berliner v. Lotus Dev. Corp., 783 F. Supp. 708, 710 (D. Mass. 1992); see Borow v. nView Corp., 829 F. Supp. 828, 835 (E.D. Va. Aug. 12, 1993) ("According to plaintiffs, because defendants later announced that testing problems had occurred, they must have known of these testing problems in December, 1991, and, therefore, defendant's statements in the Preliminary Prospectus must have been intentionally false and misleading."). Here, Plaintiff points to more than just the subsequent delay to show that the October shipping date promised by Barber was fraudulent. Such allegations include a purported scheme by Barber and deCastro to finance Baby Jet production with payments from early orders, as well as the later "tape-out" dates listed in the Uniquify SOW, none of which would have permitted October shipments of Baby Jets. Thus, Plaintiff's fraud theory is not based solely on the benefit of hindsight.

Barber also argues that Plaintiff could not have relied on his August 8th statement concerning October shipments because Plaintiff's order confirmation and terms of service clarified that the shipping date was approximate, the only guaranteed delivery date being December 31, 2013. Barber is correct that such a statement is included on the order confirmation. It is also true, however, that the order confirmation is dated August 18, 2013, and Barber does not effectively explain how the after-the-fact statement on the order confirmation - made eight days after Plaintiff placed an order - somehow negates Plaintiff's alleged reliance on Barber's pre-order statement.

Furthermore, the court rejects Barber's challenge to Plaintiff's damages allegations. Here,

Plaintiff alleges he paid for a product that loses value daily. When he did not receive it on the date he was promised, he lost money. That is not a speculative theory.

Because Plaintiff has plead a sufficient claim for fraud against Barber based on alleged statements concerning the Baby Jet shipping date, the motion to dismiss that theory will be denied.

### ii. "In Stock"

Barber contends the FAC does not establish his personal liability for the allegedly fraudulent statement on the HashFast Entities' website that 503 of 550 Baby Jets were "in stock." Barber is correct.

The fraud claim based on the website's "in stock" statement was dismissed previously because Plaintiff did not specifically identify who or what was responsible for the statement. In the FAC, Plaintiff now attributes it to "the Site" and notably alleges that deCastro - not Barber - "had express control over the statements posted on that website." See FAC, at ¶ 35. Under Rule 9(b), these allegations are still insufficient to hold Barber liable for the alleged misrepresentation, even if he was aware of the true nature of Baby Jet inventory at the time that information was disclosed by "the Site." In fact, a plain reading of Plaintiff's allegations suggest that someone other than Barber was responsible for the content on the website, namely deCastro.

Thus, the motion to dismiss the fraud claim based on the "in stock" statement will be granted.

### iii. Refunds in Bitcoin

Barber finally argues the statement he posted on August, 10, 2013, concerning the availability of refunds in Bitcoin cannot support a claim for fraud because it constituted a nonactionable commitment to take action in the future. That argument is misplaced. Promises to take future action may be actionable if "the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 159 (1991). Here, Plaintiff alleges that when Barber made the statement concerning refunds, he knew the

11
Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

HashFast Entities "did not retain any of the Bitcoin it received in order to ensure that it would have the ability to refund customers in Bitcoin." See FAC, at ¶ 44. Instead, "the Bitcoin that HashFast received from purchasers were being paid out by HashFast to third parties, including manufacturers." Id. These alleged facts are enough to infer that Barber knew the refund statement was false at the time he made it because the HashFast Entities could not provide refunds in Bitcoin.

Barber also argues the FAC fails to establish Plaintiff's reliance on the refund statement. But Plaintiff does so allege. Id. at ¶ 43. And whether or not Plaintiff initially intended to pay for the Baby Jets in some manner other than Bitcoin is of no moment. Plaintiff did make payment to the HashFast Entities in Bitcoin and, based on Barber's statement, could reasonably expect to be refunded in Bitcoin.

Since Plaintiff has alleged reliance on Barber's allegedly false promise to make refunds in Bitcoin, the fraud claim based on that statement will not be dismissed.

### C.    The UCL Claim

The UCL prohibits three types of business practices: "acts or practices which are unlawful, or unfair, or fraudulent." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 618-19 (1993). Plaintiff's claim arises under the "unfair" prong. A business practice is "unfair" if it causes substantial consumer injury, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided. In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1040 (N.D. Cal. 2012).

Barber correctly argues that this claim must also satisfy the Rule 9(b) pleading standard because, as the court found previously, it is based on a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). But to the extent he relies here on pleading deficiencies asserted in relation to the fraud claim, those arguments fail for the same reasons explained above.

His other arguments are similarly unavailing. Contrary to Barber's characterization of the

claim, Plaintiff's amended allegations no longer suffer from a defendant-differentiation problem. Although the prior version failed to adequately describe the acts attributable to each defendant, Plaintiff now provides a list of allegedly unlawful business practices and states that Barber and deCastro "personally participated" in those practices. See FAC, at ¶ 86. That is sufficient factual matter for Barber to know what personal conduct is at issue.

Furthermore, the FAC extensively describes Barber's involvement with, and control of, the HashFast Entities and, in particular, the development and sales of the Baby Jet. See Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960 (2002) (holding that a defendant's liability under § 17200 "must be based on his personal 'participation in the unlawful practices' and 'unbridled control'" over those practices). While Barber may certainly dispute the extent of his knowledge and participation if discovery proves something other than what Plaintiff presents in the FAC, the court must nonetheless credit Plaintiff's allegations at this stage. The case cited by Barber, Accuimage Diagnostics Corporation v. Terarecon, Inc., 260 F. Supp. 2d 941 (N.D. Cal. 2003), and its discussion of director participation in relation to a trade secrets misappropriation claim, do not compel a different conclusion.

Finally, dismissal of the UCL claim is not appropriate solely because each of the statute's many remedies may not be imposed on Barber. With regard to restitution against Barber individually, Plaintiff contends that Barber personally benefitted from the unlawful business practices by taking salary bonuses from the proceeds received on undelivered Baby Jet orders. See FAC, at ¶ 73. Again, although the allegation may ultimately prove untrue, that determination must wait for another day.

**D.   Conclusion**

Based on the foregoing discussion, the court finds that Plaintiff has sufficiently pled a UCL claim against Barber. The court also finds the fraud claim sufficient insofar as it is based on statements Barber made regarding the Baby Jet shipping date and the availability of refunds in Bitcoin. Plaintiff's allegations, however, do not support liability against Barber for statements

13

Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

describing whether Baby Jets were "in stock." Nor can the court discern under these facts how liability could ever be imposed on Barber for that statement. Thus, those allegations will be dismissed as to Barber without further leave to amend. Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1129-30 (9th Cir.2013) ("A district court may deny leave to amend when amendment would be futile.").

## IV. ORDER

Barber's Motion to Dismiss (Docket Item No. 61) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to allegations made against Barber describing whether Baby Jets were "in stock," which allegations are DISMISSED WITHOUT LEAVE TO AMEND. The motion is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: August 14, 2015

EDWARD J. DAVILA
United States District Judge

14
Case No.: 5:14-cv-00087-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS