Venkat Balasubramani (SBN 189192)
FOCAL PLLC
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax:    (206) 260-3966
Email: venkat@focallaw.com
Attorneys for Plaintiff
PETE MORICI

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual,<br><br>Defendants. | Case No. 14-cv-00087-EJD<br><br>**DECLARATION OF PETE MORICI IN SUPPORT OF PLAINTIFF PETE MORICI'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT EDUARDO DECASTRO** |

Pete Morici declares as follows:

1. I make this declaration based on personal knowledge of facts about which I am competent to testify.

2. Bitcoin is a peer-to-peer payment network that uses digital currency known as "Bitcoin" (abbreviated as "BTC"). The Bitcoin network is decentralized, with no authority overseeing its operation, and uses open-source encryption software for transactions. Every Bitcoin transaction is permanently recorded and is maintained in a transparent public ledger. The original technical paper describing Bitcoin can be found here: http://bitcoin.org/bitcoin.pdf.

3. Payment transactions are processed by a network of private computers distributed throughout the world which, typically, have been specially configured for processing Bitcoin transactions. These computers are commonly referred to as "Bitcoin computers," and the

operators of such computers are known as "miners." Miners are compensated for the work they perform by receiving fees for the Bitcoin transactions that they process through their Bitcoin computers.

4. HashFast was an operation set up by Defendants Eduardo deCastro and Simon Barber, the original founders. They set up two HashFast entities: HashFast LLC, which would hold the intellectual property, and HashFast Technologies, which would conduct business operations. deCastro exercised control over all aspects of HashFast's business in his position as Chief Executive Officer (as well as through being a majority equity owner, exerting financial control, and otherwise having veto power over corporate decisions).

5. deCastro was intimately involved in the daily operations of HashFast, including, but not limited to: the raising of operating capital; procurement of material; setting production and distribution schedules; negotiating contracts with third-party vendors; and overseeing and implementing marketing plans. He tracked vendor activity closely, making joint decisions to approve invoices and designating which HashFast entity paid the invoices. deCastro also managed and directed the efforts of more than forty employees. He had knowledge of supply chain timing for BabyJet components because he managed all of the engineering resources, reviewed work, and approved invoices.

6. HashFast was capitalized with a total of $641,643 USD, a number that was grossly inadequate to undertake production and development of Bitcoin mining equipment (which would cost several millions of dollars). Nonetheless, deCastro solicited customer orders for Bitcoin equipment and, using the funds received from customers, paid vendors and other third parties who would ultimately produce the machines.

7. deCastro was privy to the negotiations with one such third party, Uniquify, as well as the resulting SOW I, and therefore knew that HashFast would not be able to provide BabyJets until, at the earliest, sometime in mid-November 2013. Indeed, HashFast and Uniquify shared office space and other resources, and deCastro had personal knowledge regarding whether HashFast would be able to meet its promised deadlines. Despite this knowledge, deCastro made

and caused to be made pointed assurances to prospective customers, including myself, that the delivery date would be earlier than was possible.

8.      In fact, he oversaw a wide-ranging marketing campaign designed to assure prospective customers regarding HashFast's ability to timely deliver, all while knowing that such delivery was impossible. For example on August 5, 2013, deCastro caused the following statement to be posted to Bitcoin Talk: "We will be shipping [the mining product] in October." A screenshot of this statement may also be viewed at: https://bitcointalk.org/index.php?topic=262052.msg2869011#msg2869011 and is also attached hereto as **Exhibit A**.

9.      At the time this statement was made, deCastro was aware that delivery in October 2013 was impossible given the timeline for development of the G1 chip agreed to in the Uniquify SOW I. Despite this, Hashfast employees—acting under the direction or supervision of deCastro—made the false statements on Bitcoin Talk. deCastro knew that the false statements would induce potential customers, including myself, to purchase BabyJets, and the statements were made for that purpose.

10.     Under deCastro's direction, HashFast even paid at least one third party, Marc A. Lowe (a/k/a "Cypherdoc"), to promote HashFast on the Bitcoin Talk forum and elsewhere, including specifically to quell customer concerns regarding HashFast's ability to deliver. deCastro also directly supervised John Skrodenis, HashFast's head of sales, who similarly made numerous false and misleading marketing statements and assurances.

11.     On August 10, 2013, I visited the HashFast website in the course of deciding whether to order a Bitcoin mining computer from HashFast. At that time, the Site advertised (1) that HashFast had BabyJet units "in stock," and (2) that shipments of BabyJets would occur by October 2013. These statements were false, as the G1 chip which was to be used in the BabyJets had not even been fully developed at this time. The statements were authorized by deCastro, who knew that the false statements would induce potential customers, including myself, to purchase BabyJets, and the statements were made for that purpose. Indeed, given that

1  deCastro had unique knowledge within the company of the delivery timeline and availability of
2  the BabyJets, such statements could only have originated with him or have been made by him or
3  at his direction. In choosing the BabyJet, I relied on the above representations regarding the
4  availability and delivery dates of the BabyJets.

5      12.    On the same day that I viewed the false statements regarding delivery dates on the
6  HashFast website, I placed an order with HashFast for two BabyJets at a total cost of $11,200
7  USD. Despite the promise of free shipping, HashFast also charged me $307.38 USD for
8  shipping, making the total transaction cost $11,507.38 USD. Payment on the transaction was to
9  be made in Bitcoin, with the cost amounting to 107.692308 BTC for the BabyJets and
10 2.95557692 BTC for shipping, for a total of 110.67773274 BTC. Expecting to receive the
11 shipment of BabyJets in October as promised, on September 23, 2013, I ordered the BabyJet
12 Upgrade Kit for $3,158.57 (25.75691103 BTC). As of September 23, 2013, my payments to
13 HashFast ultimately totaled 136.434643 BTC equating to $16,675.04 USD.

14     13.    On November 11, 2013, after HashFast failed to deliver the BabyJets by the
15 October deadline, I sent an email to HashFast canceling my order and requesting a full refund of
16 my deposit (in BTC, as agreed to by HashFast). The value of one Bitcoin in United States
17 Dollars (USD) on November 13, 2013 was $332.54. (Source: www.coindesk.com/price/.)

18     14.    On December 3, 2013, my counsel sent a letter to HashFast outlining the unfair
19 and deceptive trade practices of HashFast and demanding an immediate refund of the
20 136.40479603 BTC I had paid to HashFast. A true and correct copy of this letter is attached
21 hereto as **Exhibit B**. The value of one Bitcoin in United States Dollars (USD) on December 3,
22 2013 was $1090.22 USD. (Source: www.coindesk.com/price/.) To date I have not received a
23 refund of any kind.

24     15.    Bitcoin miners can expect to make approximately 10 percent profit on the
25 investment made by purchasing Bitcoin mining computers. I reasonably expected to make
26 approximately 14 BTC in profit through the use of the BabyJets. On December 3, 2013, the
27 value of 14 BTC would have equaled $15,389.08 USD.

DECLARATION OF PETE MORICI IN SUPPORT                                       Case No. 14-cv-00087-EJD
OF DEFAULT JUDGMENT - 4

1   I certify under penalty of perjury of the laws of the United States that the foregoing is
2   true and correct to the best of my knowledge.
3   Executed this 16th day of November, 2015, at Baltimore, Maryland.

_____
Pete Morici